1    IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF OHIO
2             EASTERN DIVISION

3                 - - -

4

5   William Ellis,              )
                                )
6            Plaintiffs,        )
                                )
7        vs.                    )   Case No: 1:22-cv-00815
                                )   Judge Solomon Oliver
8   Det. Jeffrey Yasenchack,    )
    et al.,                     )
9                               )
             Defendants.        )
10                 - - -

11

12

13        Videotaped deposition of William Ellis, the

14   plaintiff herein, called by the defendants for

15   cross-examination pursuant to the Ohio Rules of Civil

16   Procedure, taken before Constance Versagi, Notary

17   Public in and for the State of Ohio, at the Lake

18   Erie Correctional Institution, 501 Thompson Road,

19   Conneaut, Ohio on Tuesday, January 10, 2023,

20   commencing at 10:06 a.m.

21                 - - -

22

23

24

25

```
 1   APPEARANCES:

 2   On behalf of the Plaintiff:

 3

 4          Joseph Scott, Esq.
            Scott & Winters
 5          50 Public Square
            Suite 1900
 6          Cleveland, Ohio 44113
            216-446-8886
 7          Jscott@ohiowagelawyers.com

 8

 9   On behalf of the Defendant City of Cleveland:

10

11          Timothy J. Puin, Esq.
            City of Cleveland
12          Law Department
            601 Lakeside Avenue, Room 106
13          Cleveland, Ohio  44114
            216-664-2807
14          tpuin@clevelandohio.gov

15

16   On behalf of the Defendant Det. Jeffrey Yasenchack:

17

18          Craig Morice, Esq.
            City of Cleveland
19          Law Department
            601 Lakeside Avenue, Room 106
20          Cleveland, Oh
            216-664-2800
21          Cmorice@clevelandohio.gov

22

23   Also Present:

24   Steve Mengelkamp, Videographer

25                  - - -
```

```
 1                    INDEX
 2   WITNESS:              CROSS           RECROSS
 3   William Ellis
 4        By Mr. Puin      4                85
 5        By Mr. Morice   64
 6                       - - -
 7
 8                E X H I B I T S
 9   Exhibit:                          Marked
10
11   A                                 11
12   B                                 30
13   C                                 40
14   D                                 42
15   E                                 62
16
17                    - - -
18
19
20
21
22
23
24
25
```

        THE VIDEOGRAPHER: This is the

        deposition of William Ellis.  Today is

        January 10, 2023.  We're on the record at

        10:06.

                WILLIAM ELLIS

of lawful age, being first duly sworn, as

hereinafter certified, was examined and testified

as follows:

                CROSS-EXAMINATION

By Mr. Puin:

Q       Good morning, Mr. Ellis.

A       Good morning.

Q       My name is Tim Puin.  I'm an attorney for the

        City of Cleveland.  I'm here with another

        attorney at the City of Cleveland Law

        Department.  I represent the City of Cleveland

        in the lawsuit you filed.  Craig Morice next

        to me represents Detective Jeffrey Yashenchack

        in the same lawsuit.

A       Okay.

Q       We're here today to take your deposition in

        that case, prior to some court proceedings

        happening in February.

                We appreciate you making yourself

        available today to talk to us.

```
 1              I'm sure your attorney's probably gone
 2        over the ground rules for a deposition.  Have
 3        you ever been deposed before?
 4   A    No.
 5   Q    So it's just like testifying in court, except
 6        there is no judge or jury.  But everything you
 7        say is being taken down and recorded.
 8              We will assume if you answer a
 9        question, you understood it.  If you don't
10        understand it, just say so, we will rephrase
11        it.  If you need a break or anything like
12        that, just let us know, okay?
13   A    Okay.
14   Q    So, your name is William Ellis?
15   A    Yes.
16   Q    Is your number A791971?
17   A    Yes.
18   Q    We're here today at Lake Erie Correctional
19        Institution in Conneaut, Ohio?
20   A    Yes.
21   Q    You're here today under a sentence for
22        attempted failure to comply; is that correct?
23   A    Yes.
24   Q    What does that mean, attempted failure to
25        comply?
```

| | | |
|---|---|---|
| 1 | A | I don't want to answer it on the grounds I |
| 2 | | might incriminate myself. |
| 3 | Q | Does your stay at Lake Erie Correctional |
| 4 | | Institution have anything to do with your |
| 5 | | lawsuit against the City of Cleveland and |
| 6 | | Detective Yasenchack? |
| 7 | A | I'm not sure I want to answer that. I plead |
| 8 | | the Fifth. I will give you this, it's about |
| 9 | | a panic attack I had. |
| 10 | Q | Okay. |
| 11 | A | All right. |
| 12 | Q | You had a panic attack I guess with law |
| 13 | | enforcement? |
| 14 | A | Trying to illegally search me, even though I |
| 15 | | had license and insurance again. |
| 16 | Q | Okay. That is, as I understand it, that is |
| 17 | | unrelated to this lawsuit we're dealing with |
| 18 | | today? |
| 19 | A | Well, the lawsuit today is about Detective |
| 20 | | Jeffrey Yasenchack and retaliating against me |
| 21 | | and harassing me because I filed a PREA |
| 22 | | complaint about him pulling me over while I |
| 23 | | had a license and insurance, snatched me out |
| 24 | | of the car, handcuffing me, violating me |
| 25 | | physical and sexually, slamming me to the |

|     |   |                                                              |
| --- | - | ------------------------------------------------------------ |
| 1   |   | ground.  You can see him on video trying to                  |
| 2   |   | plant narcotics on me because he couldn't find               |
| 3   |   | none after searching me for numerous times.                  |
| 4   | Q | Thank you.  I do want to ask some follow-up                  |
| 5   |   | questions about what you just said.                          |
| 6   | A | I had to get mental health, physical, mental                 |
| 7   |   | treatment from doctors, and I lost                           |
| 8   |   | relationships with my kids.  That's what this                |
| 9   |   | is about, right?                                             |
| 10  | Q | I certainly want to hear what you have to say                |
| 11  |   | about those topics, but can we just sort of                  |
| 12  |   | answer for the record as to whether your                     |
| 13  |   | sentence here today has anything to do with                  |
| 14  |   | your claims against Detective Yasenchack?                    |
| 15  |   | THE WITNESS:      Do I got to answer                         |
| 16  |   | that?                                                         |
| 17  |   | MR. SCOTT:        If you can answer,                         |
| 18  |   | please.                                                      |
| 19  | A | I plead the Fifth because I don't know what's                |
| 20  |   | going on because that's for the lawyers to                   |
| 21  |   | deal with, right?                                            |
| 22  | Q | Well, we're just now trying to sort of figure                |
| 23  |   | out the claims that you're bringing in the                   |
| 24  |   | lawsuit, if --                                               |
| 25  | A | I plead the Fifth.                                           |

```
 1   Q    I understand.  I guess I just want to be clear
 2        for the record.  Your sentence for attempted
 3        failure to comply, did that have anything to
 4        do with Detective Yasenchack?
 5   A    I don't know.
 6   Q    The officers that said you failed to comply,
 7        were any of them Detective Yasenchack?
 8   A    No.
 9   Q    Were they from Cleveland Police?
10   A    I don't want to answer anymore questions about
11        that because I don't know who Detective
12        Yasenchack is calling.  I don't want to talk
13        about my mental state, how he violated me so
14        much and I have to see doctors all the time.
15        I prefer not to answer it, if you don't mind.
16   Q    I just want to get an answer on the record.
17        Sounds like you're saying --
18   A    Yes, it does because the panic attack stems
19        from Detective Yasenchack pulling me over,
20        snatching me out of my car illegally,
21        illegally violating me.  My anus still bothers
22        me to this day from him and it freaks me out
23        every time somebody try to violate my rights.
24   Q    Okay.  So you are saying that your current
25        state here is related because it is a
```

```
 1          result --
 2    A     The panic attack -- the panic attack that I
 3          had, I've been seeing doctors from ever since
 4          Detective Yasenchack violated me sexually and
 5          physically in broad daylight in the middle of
 6          East 156th Street by Glencoe, like that on
 7          video, on body cam you have, right?
 8    Q     Just so we're clear, I apologize --
 9    A     I don't know anymore.  I don't know if
10          Detective Yasenchack called him, told him to
11          pull me over and harass me, I don't know.  I
12          don't know.  The lawyers requested that
13          information.
14    Q     Okay.
15    A     You probably have that information so you
16          could tell me better.
17    Q     I don't know but where were you pulled over?
18    A     I was getting off the freeway at Eddy Road.
19    Q     It was in the City of Cleveland?
20    A     Yes.
21    Q     So the Shoreway, 90 east and Eddy Road?
22    A     Yes.
23    Q     That's the incident that lead to your being
24          here today?
25    A     Right.
```

```
 1   Q    Detective Yasenchack was not one of the

 2        officers, you don't know if he had called

 3        maybe called them, or talked to them on the

 4        radio?

 5   A    I don't know nothing about it.  What he did.

 6   Q    Whatever happened in that interaction at 90

 7        and Eddy Road between you and the officers,

 8        you relate that back to Detective Yasenchack

 9        because you're response, your panic attack was

10        a result of Detective Yasenchack's treatment

11        of you?

12   A    I just said -- I didn't blame him for nothing.

13        I said I had a panic attack due to the

14        treatment that I received from Detective

15        Yasenchack.

16   Q    Okay, okay.  I understand now.

17   A    With like some type of way.  I have a license

18        and insurance.  There is no alcohol, there is

19        no drugs, no nothing found in the car,

20        nothing.  But you want to snatch me out in the

21        middle of the road in traffic.  I would like

22        to get to a safe place where there is

23        witnesses.

24   Q    Understood.

25   A    That's all I would like to do.
```

| | | |
|---|---|---|
| 1 | Q | Okay.  I understand you're scheduled to -- |
| 2 | | your expected release date, parole eligibility |
| 3 | | date is February 18, 2023? |
| 4 | A | Yeah, I'm going to be released, straight |
| 5 | | released on the 8th. |
| 6 | Q | February 8th? |
| 7 | A | Yes. |
| 8 | Q | Let me go ahead and mark this. |
| 9 | A | No later than the 18th.  You can leave the |
| 10 | | 18th there. |
| 11 | Q | Okay.  We'll go ahead and mark that as |
| 12 | | Exhibit A. |
| 13 | | (Defendants' Exhibit A marked for |
| 14 | | identification.) |
| 15 | Q | Mr. Ellis, does this appear -- do you |
| 16 | | recognize this document? |
| 17 | A | Not really but I know what it is though.  I |
| 18 | | guess it's the sentence, right? |
| 19 | Q | I'll say for the record that this is a |
| 20 | | printout from the ODRC website.  Is that you |
| 21 | | pictured there? |
| 22 | A | Yes. |
| 23 | Q | So, your date of birth is September 18, 1978, |
| 24 | | correct? |
| 25 | A | Yes. |

```
 1   Q    Your admission date here was June 13, 2022,
 2        correct?
 3   A    Yes.
 4   Q    It says there you see the expected release
 5        date February 18th, correct?
 6   A    6-13.
 7   Q    Down at the bottom under sentence information.
 8   A    Yeah, the 18th.  I know I have received, I'm
 9        in programs, I'm a tutor.  I'm a tutor, I get
10        five good days.  I'm in another program where
11        I get another five good days.  I did the
12        Sinclair Program, that's why my out date went
13        from the 31st of March all the way to the
14        18th.  On the first of every month, I receive
15        earned credit.
16   Q    Okay.
17   A    After all of this, talking about Yasenchack, I
18        really don't want to tell you how much earned
19        credit I'm about to get.
20   Q    Okay.  So you've earned some time --
21   A    Yes.
22   Q    -- off for good behavior?
23   A    The first of every month.
24   Q    You said you were a tutor?
25   A    Yes.
```

```
 1   Q    What do you --
 2   A    GED tutor.
 3   Q    GED tutor.  So you tutor other incarcarees on
 4        the GED?
 5   A    Right.
 6   Q    Then what's the Sinclair Program?
 7   A    It's a Sinclair College Program, customer
 8        service that I got an A in.
 9             I got House Bill 49 good days.
10   Q    Is it Saint Clair, or Sinclair?
11   A    Sinclair, S-I-N.
12   Q    Okay.  Sinclair, S-I-N-C-L-A-I-R?
13   A    Yes.
14   Q    You say you took a class in I'm sorry what
15        topic, what field?
16   A    Customer service.
17   Q    Customer service.  Do you plan on working in
18        customer service going forward?
19   A    I'm not sure.
20   Q    Not sure.  Okay.
21             So, just some basics facts about you.
22        Do you have a current residential address
23        other than here?
24   A    I'm not sure.
25   Q    Have you ever lived at 638 East 127 Street in
```

|    |   |                                              |
|----|---|----------------------------------------------|
| 1  |   | Cleveland, Ohio?                             |
| 2  | A | Yes.                                         |
| 3  | Q | Is that still -- would you go back to that   |
| 4  |   | house after you leave here?                  |
| 5  | A | No.                                          |
| 6  | Q | How long did you live at 638 East 127th      |
| 7  |   | Street?                                      |
| 8  | A | I fixed the house up.  A friend of mine had  |
| 9  |   | bought it after it was -- I guess it was tore |
| 10 |   | up.  You know, multiple things happened there. |
| 11 |   | The family had left and they sold it cheap   |
| 12 |   | because it was like bullets and a bunch of   |
| 13 |   | things went wrong.  Furnace got stole and    |
| 14 |   | stuff.  I was there fixing the house up      |
| 15 |   | actually.  You know, I stayed there sometime. |
| 16 |   | Had friends over and stuff.  We would work   |
| 17 |   | together to fix the house up.  I had guys    |
| 18 |   | painting and plastering.  There was like 100 |
| 19 |   | shots in the house.  We painted and plastered |
| 20 |   | all the holes in the house, fixed the new    |
| 21 |   | furnace.  Did a lot of things; concrete work, |
| 22 |   | yard work, plumbing, laying tile.  We were   |
| 23 |   | really working on the house for renters      |
| 24 |   | because I was trying to rent it out for the  |
| 25 |   | guy.  But, I'm there a lot.                  |

| | | |
|---|---|---|
| 1 | Q | So you have some skills and abilities in sort |
| 2 | | of rehabbing homes kind of thing? |
| 3 | A | Yes. |
| 4 | Q | Have you done it at any other properties |
| 5 | | besides that one? |
| 6 | A | Yes. |
| 7 | Q | Like how many would you say? |
| 8 | A | I don't know.  Over five I guess. |
| 9 | Q | Would you describe that as your primary trade |
| 10 | | or profession, being a home rehaber, home |
| 11 | | remodeler? |
| 12 | A | I'm currently disabled.  I broke my arm.  I |
| 13 | | haven't really been able to work full time. |
| 14 | | When I feel good I do side jobs, sell cars, |
| 15 | | fix cars, work on houses.  Get people jobs |
| 16 | | working on houses.  I get a job and my guys do |
| 17 | | a lot of the work, so I don't have to hurt |
| 18 | | myself again.  My back will go out or |
| 19 | | something basically. |
| 20 | Q | Is there any sort of one job or occupation |
| 21 | | that you feel has been like the one you've |
| 22 | | done more than others, or are you sort of a |
| 23 | | jack of all trades?  Would you say car sales, |
| 24 | | home rehabbing? |
| 25 | A | I have an Associate's Degree in Geographic |

|    |   |                                                        |
|----|---|--------------------------------------------------------|
| 1  |   | Information Systems.                                    |
| 2  | Q | What school did you get that from?                     |
| 3  | A | University of Akron.                                    |
| 4  | Q | Was that the C&T College?  Community Technical          |
| 5  |   | College in Akron?                                       |
| 6  | A | No.  It's the -- not the business, but the             |
| 7  |   | Arts & Sciences, the Geography Department.              |
| 8  |   | It's like cartography where you make maps and          |
| 9  |   | stuff.  You deal with QPSs, locations, remote           |
| 10 |   | sensors, things like that, mapping.                    |
| 11 | Q | What year did you get that degree?                     |
| 12 | A | '04.                                                   |
| 13 | Q | Just more basic facts about you.  Where were          |
| 14 |   | you born?                                              |
| 15 | A | Cleveland, Ohio.                                        |
| 16 | Q | Did you ever live in Akron?                            |
| 17 | A | Yeah, I lived there when I was in school, yes.         |
| 18 | Q | Do you remember your address in Akron?                |
| 19 | A | No, not off hand.  I had a few.                        |
| 20 | Q | So you said you had kids.  How many kids do            |
| 21 |   | you have?                                               |
| 22 | A | I have a 16 year old daughter, a 15 year old          |
| 23 |   | daughter.  I have a 2 year old son that I lost         |
| 24 |   | custody of because I couldn't contend the             |
| 25 |   | adoption because I was in Youngstown Federal           |

| | | |
|---|---|---|
| 1 | | holding, being detained because of Detective |
| 2 | | Yasenchack. I never even got to meet him. I |
| 3 | | have a lawyer bill for trying to get DNA |
| 4 | | testing to reverse the adoption. |
| 5 | Q | So two daughters, one son? |
| 6 | A | (Nodding affirmatively.) |
| 7 | Q | Okay. Where did you graduate high school? |
| 8 | A | I have a GED. |
| 9 | Q | Okay. Did you drop out of high school then? |
| 10 | A | I was in a car accident and I wasn't able to |
| 11 | | graduate. I took the test. |
| 12 | Q | What high school were you attending at that |
| 13 | | time? |
| 14 | A | John F. Kennedy. |
| 15 | Q | Then you say you are disabled today, you broke |
| 16 | | your arm? |
| 17 | A | Yeah, I had broke my arm. I have, from when I |
| 18 | | was a child, I got robbed I have like a large |
| 19 | | bullet fragment at the base of my spine. My |
| 20 | | arm never healed up due to nerve damage. The |
| 21 | | Cleveland Clinic, you know, they have -- they |
| 22 | | can explain it better to you. For some reason |
| 23 | | I have this nerve damage. I'm always dropping |
| 24 | | things and falling. I have to a take lot of |
| 25 | | medications and get nerve blocks to stay out |

```
 1            of pain.
 2    Q       Were you ever on SSI or disability through the
 3            federal government, like did you ever get
 4            disability checks?
 5    A       Yes, that's what I do now.  That's what I'm
 6            doing, get a check, SSI.
 7    Q       You do, okay.  Can you tell us the amount of
 8            the check you get a month?
 9    A       I don't know.  I'm not sure.  I think it's
10            like 800.
11    Q       How many years have you been getting SSI?
12    A       I've only been getting it for about a year.
13            Like before I broke my arm I never had any
14            welfare, food stamps, disability, or anything.
15                   But Cleveland Clinic kept telling me I
16            won't be the same anymore.  I won't be able to
17            work.  I need to file for disability.
18                   Then I filed it.  Then I had the
19            situation with Yasenchack.  Then in the
20            process of appealing it.  Then he got the fake
21            search warrant in retaliation for the PREA
22            complaint.  Then, you know the rest.
23    Q       Just I think one last background fact if you
24            don't mind.  Are you married, or were you ever
25            married?
```

| | | |
|---|---|---|
| 1 | A | I had a girlfriend.  We were pretty close for |
| 2 | | like five years.  All of this, her mom was a |
| 3 | | CMHA officer retired, so this kind of scared |
| 4 | | her away, the Yasenchack situation. |
| 5 | Q | Was she the mother of any of your three kids? |
| 6 | A | No. |
| 7 | Q | So if you don't mind sharing with us, what |
| 8 | | tentative plans you have for February, March |
| 9 | | when you get out, what are you thinking to do? |
| 10 | A | I think I'm going to go to the Eden Shelter, |
| 11 | | try to get my life back together.  Get some |
| 12 | | help, because my life has been turned upside |
| 13 | | down by this situation.  Try to move on.  Try |
| 14 | | to, you know, DNA test, re-establish |
| 15 | | relationship with my children.  You know, |
| 16 | | trying to stay away from the Fifth District. |
| 17 | Q | Where is Eden -- is that E-D-E-N, like Garden |
| 18 | | of Eden? |
| 19 | A | Yeah.  It's a shelter, like a homeless |
| 20 | | shelter.  They have a reentry program. |
| 21 | Q | Where is that located? |
| 22 | A | It's in Madison I believe.  On Madison off -- |
| 23 | | on the west side like 73rd or something, or |
| 24 | | 93rd.  I'm not sure. |
| 25 | | Between them and Signature Health I |

| | | |
|---|---|---|
| 1 | | have to go get a reassessment, do some things |
| 2 | | that Eden and Signature Health, they will help |
| 3 | | me out.  Because no one wants to be around me |
| 4 | | after this situation, because, you know, the |
| 5 | | police sits in front of my house, follow me |
| 6 | | everywhere and stuff.  Nobody wants to deal |
| 7 | | with that.  Everybody is scared.  I'm scared, |
| 8 | | so I'm just going to go there and try to move |
| 9 | | forward with my life. |
| 10 | Q | For what it's worth, we wish you luck moving |
| 11 | | forward. |
| 12 | | Can you tell me what the reassessment |
| 13 | | at Signature Health is about? |
| 14 | A | Just a mental health assessment because I |
| 15 | | haven't been there in a while. |
| 16 | Q | Okay. |
| 17 | A | I've been going there since -- between |
| 18 | | Signature Health, Cleveland Clinic, and Circle |
| 19 | | Health, I've been going there since I broke my |
| 20 | | arm. |
| 21 | Q | Okay. |
| 22 | A | I've been going there more and more since the |
| 23 | | Yasenchack situation. |
| 24 | Q | So, Signature Health, Circle Health and |
| 25 | | Cleveland Clinic.  Did you go to all three of |

|     |   |                                              |
|-----|---|----------------------------------------------|
| 1   |   | those for --                                 |
| 2   | A | I go to Cleveland Clinic, started there with |
| 3   |   | pain management.  Then I went there for mental |
| 4   |   | health treatment.  They referred me to Circle |
| 5   |   | Health for medication.                       |
| 6   |   | Then recently I switched to Signature        |
| 7   |   | Health like last year in 2021, 2022.         |
| 8   | Q | Briefly can you give us an idea what the     |
| 9   |   | mental health concerns were at Cleveland     |
| 10  |   | Clinic?                                      |
| 11  | A | Post-traumatic Stress Disorder, severe       |
| 12  |   | depression or Bipolar Disorder, depression.  I |
| 13  |   | don't know.  PTSD, something bipolar and     |
| 14  |   | depression.                                  |
| 15  | Q | Have you been diagnosed with PTSD?           |
| 16  | A | Yes.                                         |
| 17  | Q | Do you relate that to your involvement with  |
| 18  |   | Detective Yasenchack?                        |
| 19  | A | Definitely.                                  |
| 20  | Q | Then you said severe bipolar, have you been  |
| 21  |   | diagnosed as that?                           |
| 22  | A | Yeah, I've been -- I can sign a release, and |
| 23  |   | you can get all the information from the     |
| 24  |   | doctors.                                     |
| 25  | Q | Okay.                                        |

| | | |
|---|---|---|
| 1 | A | Because I'm not the doctors.  So I don't know |
| 2 | | why they do what they do.  I can sign a |
| 3 | | release so you can get it. |
| 4 | Q | Great.  We will ask for a HIPAA release to be |
| 5 | | signed, to get like all of your medical |
| 6 | | info -- |
| 7 | A | I seen a doctor here.  Seen a doctor at CCA |
| 8 | | Youngstown.  I was on medication there too. |
| 9 | Q | That's the federal facility you are referring |
| 10 | | to? |
| 11 | A | Yes. |
| 12 | Q | Then also Circle Health, and Signature Health? |
| 13 | A | Right. |
| 14 | Q | Would there be any others we should get |
| 15 | | records from? |
| 16 | A | Cleveland Clinic.  Cuyahoga County Jail. |
| 17 | Q | Okay.  Can you tell me where Circle Health is |
| 18 | | located? |
| 19 | A | I believe right like on Euclid Avenue and like |
| 20 | | 40th, between 40th and 50th, 55th. |
| 21 | Q | Signature Health, did you say they are on the |
| 22 | | west side? |
| 23 | A | No, Beachwood.  I think I might go to one on |
| 24 | | the west side when I leave. |
| 25 | Q | Do you remember any doctors' names who have |

```
 1        seen you for your --
 2   A    One was Amanda Prince.  Dr. Mushkat at
 3        Cleveland Clinic, Stanley Firemen was a
 4        counselor, Rastoji at CCA.  For some reason
 5        they don't want me to see the doctor here.
 6   Q    Could you repeat those names just a little
 7        more slower.
 8   A    Mushkat at Cleveland Clinic.  Stanley Firemen
 9        at Cleveland Clinic.  Amanda Prince at
10        Signature Health.  I forgot the other doctor
11        at Circle Health.  I know one was Ryan Ward.
12        It was a lot I seen like at Circle Health.  I
13        don't know, I seen about five of them.  They
14        switch and they stop working, start back and
15        move to different job.
16   Q    Some of these are counselors and some are
17        doctors?
18   A    Mushkat and Stanley Firemen are counselors, I
19        believe, at Cleveland Clinic.
20   Q    Then you said the Lake Erie Correctional
21        Institute, LECI staff did not want you to see
22        a doctor here?
23   A    I'm trying to see the doctor.  I don't think
24        they have many programs here.  Rastoji I think
25        at Northeast Ohio Correctional Center, on the
```

|    |   |                                                      |
|----|---|------------------------------------------------------|
| 1  |   | Marshall side, Rastoji I think his name is. I        |
| 2  |   | saw him for 18 months.                               |
| 3  | Q | Do you know how to spell his name?                   |
| 4  | A | R-A-S-T-O-J-I.                                        |
| 5  | Q | Okay.                                                |
| 6  | A | I just guess.                                        |
| 7  | Q | So, because you're connecting your emotional,        |
| 8  |   | psycho, mental well-being to the incident in         |
| 9  |   | this lawsuit, I have to ask you, are you on          |
| 10 |   | any prescription drugs now currently?                |
| 11 | A | Yeah, I'm on Tegretol.                               |
| 12 | Q | Could you spell that?                                |
| 13 | A | I'd be guessing though.                              |
| 14 | Q | What is the name of it?                              |
| 15 | A | Integretol (sic).                                   |
| 16 | Q | Integretol.                                          |
| 17 | A | It's got another name, Casax -- it's supposed        |
| 18 |   | to have been like a mental health and a muscle       |
| 19 |   | like nerve pill for nerve damage and mental          |
| 20 |   | health in one they said. I'm not sure.               |
| 21 |   | Integretol, I-N-T-E-G-E-T-A.                         |
| 22 | Q | Do you take that every day?                          |
| 23 | A | Yes, two times a day.                                |
| 24 | Q | Two times a day. Okay. For what period of            |
| 25 |   | time have you taken Integretol two times a           |

|    |   |                                                         |
|----|---|---------------------------------------------------------|
| 1  |   | day?                                                    |
| 2  | A | You know, I miss every once in a while like             |
| 3  |   | during the blizzard, but for the most part I            |
| 4  |   | take it two times a day since like Lorain when          |
| 5  |   | I got here, like June or July, whenever they            |
| 6  |   | prescribed it, because it was prescribed to             |
| 7  |   | me.                                                     |
| 8  | Q | So, you started taking it in June or July of            |
| 9  |   | 2022?                                                   |
| 10 | A | When I was here, yeah.  When I got here.                 |
| 11 |   | Because before I got here, Cuyahoga County had          |
| 12 |   | me on Wellbutrin, Buspar and something else,            |
| 13 |   | Restoril.  They had me on different meds and            |
| 14 |   | Gabapentin.  Here, I don't know.  I don't               |
| 15 |   | think -- they say that they are not allowed to          |
| 16 |   | give out medication, or something, I don't              |
| 17 |   | know.  That's like the same I was getting at            |
| 18 |   | CCA Youngstown on the Marshall side.  Same so           |
| 19 |   | that's probably -- no, a couple more they were          |
| 20 |   | giving me.  But --                                      |
| 21 | Q | Were you ever on any medication for your                |
| 22 |   | conditions in the past, prior to the issues in          |
| 23 |   | this case with Detective Yasenchack, or did             |
| 24 |   | you just start getting on these medications             |
| 25 |   | more recently after?                                    |

| | | |
|---|---|---|
| 1 | A | You mean like as a kid or -- |
| 2 | Q | Yeah. |
| 3 | A | Years and years ago. |
| 4 | Q | Right. |
| 5 | A | Years, years, years ago.  I haven't really |
| 6 | | been going through anything to this. |
| 7 | | I got stabbed at CCA.  Like when I was |
| 8 | | talking to the nurse, getting my mask, |
| 9 | | somebody tried to stab me.  Tried to kill me I |
| 10 | | think.  Stabbed me in my arms.  I had to go to |
| 11 | | the hospital.  It was a lot going on. |
| 12 | Q | How long were you at CCA? |
| 13 | A | 16 months I think.  16, 17 months.  I know it |
| 14 | | wasn't 18, quite 18.  It was 16, 17 months I |
| 15 | | think. |
| 16 | Q | We ask every witness in every case to tell us |
| 17 | | about their criminal background, it's just a |
| 18 | | standard question. |
| 19 | A | I refuse.  You have to ask my attorney.  I |
| 20 | | invoke my Fifth Amendment rights.  I don't |
| 21 | | want to incriminate myself. |
| 22 | Q | I understand.  What I was really just asking |
| 23 | | was can you give us an idea of the times |
| 24 | | you've been incarcerated, for what reason over |
| 25 | | the course of your life? |

| | | |
|---|---|---|
| 1 | A | I invoke the Fifth Amendment. I don't want to |
| 2 | | incriminate myself. |
| 3 | | MR. PUIN: Counsel, do you |
| 4 | | think that's appropriate in response to this |
| 5 | | question? General questions about criminal |
| 6 | | background? |
| 7 | | MR. SCOTT: Well, let me suggest |
| 8 | | this. There's got to be a record. |
| 9 | | MR. PUIN: With all due respect |
| 10 | | though, the deponent's name is fairly -- it's |
| 11 | | not an uncommon name, like my last name, Puin, |
| 12 | | you won't find too many Tim Puins. There are |
| 13 | | a lot of William Ellises. We don't know all |
| 14 | | jurisdictions. We could search the court's |
| 15 | | website for Cuyahoga County, Summit County, we |
| 16 | | wouldn't necessarily know there may have been |
| 17 | | issues in Trumbull County for example. |
| 18 | | MR. SCOTT: So Mr. Ellis, you can |
| 19 | | tell them about other times when you were |
| 20 | | incarcerated without discussing the facts or |
| 21 | | reasons for your incarceration. |
| 22 | Q | That's fair, if you agree to do that. |
| 23 | A | I was incarcerated in Cuyahoga County. I did |
| 24 | | five years for kidnapping after the rest of |
| 25 | | the case was acquitted. My lawyer went to |

| | | |
|---|---|---|
| 1 | | jail.  I feel like I was cheated out of my |
| 2 | | freedom and I don't want to talk about it. |
| 3 | | It's in there.  It's all in the record. |
| 4 | Q | Thank you for answering these questions about |
| 5 | | your background first of all. |
| 6 | | Second of all, you say your lawyer went |
| 7 | | to jail? |
| 8 | A | Dea Character. |
| 9 | Q | What was the first name? |
| 10 | A | Dea Character. |
| 11 | Q | Dea Character? |
| 12 | A | Like the judge.  Her dad was a judge.  I think |
| 13 | | she went to college with my mom or something. |
| 14 | Q | Can you tell us how old you were when that |
| 15 | | happened? |
| 16 | A | I was in my prime, 27, 28. |
| 17 | Q | Was that your first experience with the |
| 18 | | criminal justice system? |
| 19 | A | I did eight years.  Five years on attempted |
| 20 | | felonious assault.  Judge Burnside, they |
| 21 | | didn't call my -- I had three trials or |
| 22 | | something, two trials and a preliminary |
| 23 | | hearing. |
| 24 | | The last one I told Burnside they |
| 25 | | refused to call my alibi witnesses, like the |

|    |   |                                                        |
|----|---|--------------------------------------------------------|
| 1  |   | same way they had in the first trial. You              |
| 2  |   | know, I feel like my rights were violated. I           |
| 3  |   | don't like to talk about that because it's a           |
| 4  |   | lot going on with that.                                |
| 5  | Q | I understand. When you say you did eight               |
| 6  |   | years, was that total, or was that eight years         |
| 7  |   | for the attempted felonious assault?                   |
| 8  | A | That's total for kidnapping. Attempted                 |
| 9  |   | felonious assault was like two years or                |
| 10 |   | something.                                             |
| 11 | Q | Okay. Judge Burnside --                                |
| 12 | A | For a witness that wasn't even there.                  |
| 13 | Q | Without getting into the details, just trying          |
| 14 |   | to get a general idea what your background --          |
| 15 | A | Detective Butler.                                      |
| 16 | Q | Okay.                                                  |
| 17 | A | Detective Butler was harassing me then.                |
| 18 | Q | From Cleveland Police?                                 |
| 19 | A | He got fired for something. I don't know.              |
| 20 |   | One of my relatives had a problem with him or          |
| 21 |   | something. Every time he goes up for appeal            |
| 22 |   | they start on him or got something. I don't            |
| 23 |   | know. I don't want to talk about it.                   |
| 24 | Q | Okay. So that all, just the last question              |
| 25 |   | about all that, and we can move on, that all           |

|    |   |                                                         |
|----|---|---------------------------------------------------------|
| 1  |   | happened before your involvement with                   |
| 2  |   | Detective Yasenchack?                                    |
| 3  | A | Yeah.  That happened in like '07.                       |
| 4  | Q | Okay.  So, we can move on to the facts of this          |
| 5  |   | case.  I'm just going to have discovery                 |
| 6  |   | responses marked as an exhibit.  This will              |
| 7  |   | be B.                                                    |
| 8  |   | (Defendants' Exhibit B marked for                       |
| 9  |   | identification.)                                        |
| 10 | Q | Are we going okay, sir?  Would you like to              |
| 11 |   | take five minutes off the record?                       |
| 12 | A | No, let's get it over with.                             |
| 13 | Q | Keep going?  Okay.                                       |
| 14 |   | So we've handed you what's been marked          |
| 15 |   | as Exhibit B.  I will represent that these are          |
| 16 |   | the discovery responses provided by your                |
| 17 |   | attorney in this case.  If you could just take          |
| 18 |   | a minute and look at them, let us know if                |
| 19 |   | you've seen them before, if you remember.               |
| 20 | A | I know I signed one.  I read one, yeah, the             |
| 21 |   | interrogatories.  I read the interrogatories            |
| 22 |   | and signed it.  Do I have to sign something             |
| 23 |   | again?                                                   |
| 24 | Q | No, no, I just wanted to put that in front of           |
| 25 |   | you.  You had the opportunity to look at these          |

|    |   |                                                      |
|----|---|------------------------------------------------------|
| 1  |   | questions and answers and you answered               |
| 2  |   | truthfully to all of these as you recall?            |
| 3  | A | Yes, I signed the interrogatories.  I read           |
| 4  |   | them over with my attorneys.  Got it                 |
| 5  |   | notarized.  I had it notarized too.                  |
| 6  | Q | What page are you looking at there?                  |
| 7  | A | I don't see my name on this one.  Yeah.              |
| 8  | Q | Page 14.  So you are saying you signed this in       |
| 9  |   | front of a notary?                                   |
| 10 | A | Yeah, I have a copy of it.                           |
| 11 | Q | So everything in there you believe would have        |
| 12 |   | been accurate and truthful as presented, as          |
| 13 |   | far as you know?                                     |
| 14 | A | As far as I know.                                    |
| 15 | Q | Understood.  We can put that one aside.              |
| 16 | A | Here is the interrogatories.                         |
| 17 | Q | Yes, exactly.                                         |
| 18 | A | Page 6.                                              |
| 19 | Q | Not just the interrogatories but the                 |
| 20 |   | admissions as well, the request for                  |
| 21 |   | admissions?                                          |
| 22 | A | I would think that would be -- I would think         |
| 23 |   | they would be okay.  I seen the                      |
| 24 |   | interrogatories.  I had it notarized.                |
| 25 | Q | So let's look for example in picking one out         |

|    |   |                                                        |
|----|---|--------------------------------------------------------|
| 1  |   | at random on page 9, if you don't mind.  Page          |
| 2  |   | 9, request for admission 5.                            |
| 3  | A | You want me to answer it again?                        |
| 4  | Q | Yeah.                                                  |
| 5  | A | You want me to --                                      |
| 6  | Q | I'll read it, then -- you know, you can read           |
| 7  |   | it and read the response, request for                 |
| 8  |   | admission 5 if you don't mind for the record.         |
| 9  |   | MR. SCOTT:        Let me just note an              |
| 10 |   | objection.                                             |
| 11 | Q | Go ahead and read that aloud.                         |
| 12 | A | Who?                                                   |
| 13 | Q | Request for admission 5.                              |
| 14 | A | Objection, discovery is still ongoing.                |
| 15 | Q | I'm sorry, right below that.  The next one,            |
| 16 |   | admit that on May 18, et cetera.  Do you see          |
| 17 |   | where I'm talking about, sir?                         |
| 18 | A | Denied.                                                |
| 19 | Q | So, request for admission 5:  Admit that on           |
| 20 |   | May 18, 2020 you had possession of a                   |
| 21 |   | Fentanyl-related compound at your residence.          |
| 22 |   | Did I read that correctly?  I'm on page 9.  I          |
| 23 |   | think you're on page 10.  Request for                  |
| 24 |   | admission 5.  I'm sorry, in the middle of the         |
| 25 |   | page there.  Admit that on May 18, 2020 you           |

1        had possession of a Fentanyl-related compound

2        at your residence.

3            Then your response was plaintiff admits

4        only that a Fentanyl-related compound was

5        taken from plaintiff's residence during --

6  A    Since we brought it up, like on the video,

7        right, you see a detective, right, with the

8        narcotics dog.  You had body camera videos,

9        right?  Yasenchack didn't wear one, right?

10       You notice that, right?

11  Q    Yeah, I'm sorry, I don't know.

12  A    He didn't wear one.  The judge said if he had

13       any integrity, he would pass the case along.

14          Anyway, his own partner, Kopchak,

15       caught him on his camera sneaking up, messing

16       with stuff.

17         Then the dog, the dude with the dog,

18       right, he found some Percocets.  I'm allowed

19       to take Percocets.  I get them from my doctor.

20       He took a picture of it, that he found in a

21       jacket, you know.  Then you see him on his

22       body cam doing this, right.

23         So he said Yasenchack, when I come back

24       from putting the dog up, I'm going to show you

25       what I fond, and where I found it.

1       He went to go put the dog up.  You see
2  him feeding the dog, giving him water and
3  stuff.  Then when he left out, before he did
4  that, Yasenchack shoots straight upstairs,
5  right.  Some other girl told him something.
6  Kopchak go get her some clothes and stuff.
7  You can see him like sneaking, looking all
8  sneaky there.
9       He don't have a body camera on or
10  anything, right.  So when dude come back,
11  Kopchak leave, Yasenchack is still up there.
12  Kopchak catch him going in the girl's purse,
13  this and that.  But he don't say nothing about
14  nothing, right.
15       So, but he got him on camera doing
16  this, all this illegal stuff with no body
17  camera.  So, he goes to -- Kopchak goes
18  downstairs to give her her clothes and stuff.
19  When dude come back with the dog, he already
20  took a picture of what he found.  He goes in
21  one room, right, says well, it was like the
22  dog scratched on top of this thing.  Something
23  with girl clothes in it.  Then he come in my
24  room, to the other room, he says he found a
25  jacket.  He found something in this jacket.

1　　　　　He went to show it to Yasenchack.

2　　　Yasenchack tried to grab it and pull out

3　　　something different.  It was so different that

4　　　they didn't even take a picture of it because

5　　　the officer with the K-9 had integrity.

6　　　　　　Then they were all in the sewers and

7　　　stuff because they didn't find anything.  It's

8　　　Captain Cain, that's her name.  Captain Cain

9　　　got Yasenchack on body cam because they have

10　　　to ride together, right.  Says yeah I think we

11　　　messed up, we didn't find anything, this and

12　　　that.  He said, oh, don't worry, I got plenty

13　　　and tapped his pocket.

14　　　　　　That's what's going on with this case.

15　　　But, yeah, I don't know nothing about nothing.

16　　　I don't want to sign nothing because I don't

17　　　want to incriminate myself.  But you all have

18　　　the body cam.  You all can see it like me.

19　Q　　　Okay.  Two quick follow-ups.  So that request

20　　　for admission on page 9, it says plaintiff

21　　　admits only that a Fentanyl-related compound

22　　　was taken from plaintiff's residence during an

23　　　illegal search of plaintiff's residence that

24　　　was predicated on the false statements of

25　　　Defendant Yasenchack.  Okay, that is an

1          admission that you made, right?  This
2          statement here is correct?
3                  THE WITNESS:        Talk to him.
4                  MR. SCOTT:          You can answer.
5     A    I don't know what they found.  I didn't test
6          anything.  All I know is one time I seen him
7          when he tried to plant some stuff.  Then even
8          on the video you can see, they were like it's
9          all 100 dollar bills.  She's like who got 20s,
10         you all got 20s?  Somebody give me some 20s
11         for these 100s, so they could make it look
12         like it's drug money.  I don't know if
13         anything was found it was minute.  Like real,
14         real small, like personal use.
15    Q    Before we move on to that, just for the
16         record, if these discovery --
17    A    In fact, they got it in the picture.  It's 10
18         Percocets, like 10 or 7 pink Percocets.
19    Q    Okay.
20    A    Then they had a picture of a few white Perc 5,
21         12 that I had.  That's not what I was in jail
22         for though, I don't think.
23    Q    Just before I put this exhibit aside, you're
24         saying these discovery responses that you and
25         your lawyer signed and were notarized, that

| | | |
|---|---|---|
| 1 | | you would have been truthful in answering |
| 2 | | these at the time, correct? |
| 3 | A | I mean I agreed with him when he answered |
| 4 | | them.  I agreed with anything.  I signed it. |
| 5 | Q | That's all.  We can put that aside.  That was |
| 6 | | Exhibit B I believe. |
| 7 | A | It's all on the body camera. |
| 8 | Q | Okay. |
| 9 | | MR. SCOTT:      Wait for a question. |
| 10 | Q | I did want to ask you about the body camera. |
| 11 | | Have you personally viewed the body camera |
| 12 | | from the search? |
| 13 | A | Yeah, I was stressed out in there looking at |
| 14 | | the body camera because I seen it, right.  I |
| 15 | | seen the little picture that the real -- the |
| 16 | | K-9, the narcotics dog, the K-9 dude and |
| 17 | | Captain Cain took pictures of.  I seen the |
| 18 | | real picture.  Then the picture Detective |
| 19 | | Yasenchack was claiming that he found was not |
| 20 | | there.  Nobody took that picture because I |
| 21 | | guess they had integrity and they didn't want |
| 22 | | to plant things on me.  The picture that he |
| 23 | | had, it was impossible that it could be what |
| 24 | | he was claiming that he found. |
| 25 | Q | I'm just trying to understand the basis for |

1   your testimony right now.  Did you look at the

2   body cam?

3 A   Yeah, I saw the body cam.

4       Say that they found this piece of

5   paper, right.  One piece of paper, right.  I'm

6   looking at the paper, right.  Yasenchack said

7   he found all that over there.  I'm looking at

8   that paper.  How did this equal to all of

9   that.  It's pictures and everything all in

10  discovery.

11      The federal, in the feds they real

12  like, they want to see everything, let you see

13  everything.  It's hard for them to plant

14  things.  Harder for them to get away with

15  doing stuff there.

16 Q  Just so I understand, you are saying that you

17  looked at the file in the federal criminal

18  case?

19 A  I put my disks in the computer, right.  I saw

20  my discovery, right.  It was something -- I'm

21  not saying it was as big as this paper or

22  anything.

23 Q  No, I understand.

24 A  I'm just comparing this one paper to all them

25  papers you got over there.

| | | |
|---|---|---|
| 1 | Q | Right, right. |
| 2 | A | I'm looking at the paper and I'm like where is |
| 3 | | the rest of the stuff at. |
| 4 | Q | So when you looked at the disk of discovery, |
| 5 | | did you see actual body cam footage, or did |
| 6 | | you -- |
| 7 | A | Yeah, I had body cam. |
| 8 | Q | You had body cam footage. |
| 9 | A | Other disk.  This is the discovery disk I'm |
| 10 | | talking about.  After we talking to the |
| 11 | | prosecutor, the ADA or the AUS, whatever it's |
| 12 | | called. |
| 13 | Q | Sure. |
| 14 | A | The lawyer asked him where is it.  Can't we |
| 15 | | see a picture of it.  So that's how I found |
| 16 | | that thing when he went in there and tried |
| 17 | | to -- the scene I just told you about with the |
| 18 | | dog and all that.  I had to rewind the disk to |
| 19 | | the certain part of the certain disk, I think |
| 20 | | it was the dog's disk.  There's like 20, 30 -- |
| 21 | | 20 some disks.  Then I seen what he was |
| 22 | | talking about when he tried to find it in the |
| 23 | | pocket after they already took the pictures. |
| 24 | Q | Okay, so now what we're talking about is what |
| 25 | | led to your lawsuit in this case, right?  What |

| | | |
|---|---|---|
| 1 | | you're talking about right now, that's about |
| 2 | | Yasenchack and about the Civil Rights lawsuit |
| 3 | | we're here today about, correct? |
| 4 | A | You say -- |
| 5 | Q | Is it, just so I understand? |
| 6 | A | You called me here.  I thought that's what you |
| 7 | | wanted to talk about. |
| 8 | Q | No, that is, that is, that is.  Just for the |
| 9 | | record, because people viewing this or reading |
| 10 | | this might not realize we're talking about |
| 11 | | Yasenchack now, right? |
| 12 | A | Yeah we're talking about Yasenchack, yeah. |
| 13 | Q | Good. |
| 14 | A | No body camera on there.  Tampering with the |
| 15 | | evidence and stuff, and getting caught by his |
| 16 | | own officer's body cam.  Doing illegal things |
| 17 | | and stuff, yeah, that's what I'm talking |
| 18 | | about. |
| 19 | Q | Let's mark your complaint as Exhibit C. |
| 20 | A | Do I have to worry about Yasenchack still |
| 21 | | bothering me when I get out?  You know I think |
| 22 | | he had a case on me, I'm right to -- I don't |
| 23 | | know.  I'm kind of concerned about that. |
| 24 | | (Defendants' Exhibit C marked for |
| 25 | | identification.) |

```
 1   A      What do you think, sir?
 2          MR. SCOTT:        They get to ask the
 3   questions today.
 4          MR. MORICE:       Exactly.  We ask the
 5   questions, you give us the answers.
 6          THE WITNESS:      Whatever.  I guess I
 7   understand why you wouldn't want to answer
 8   that question.
 9          MR. PUIN:         So, was the witness
10   handed Exhibit C?
11   Q      If you don't mind, you are looking at A there.
12   So that's C.  C is a copy of your complaint
13   for Civil Rights violations that we're here
14   today about; is that correct?
15   A      Yes.
16   Q      If you want to take a second and make sure it
17   looks familiar.
18   A      I haven't read it yet but it looks good to me.
19   Q      Okay.  So what you've just been telling us
20   about, the incident that you viewed on the
21   disk with Captain Cain's body cam, and the K-9
22   and the activity that you described.
23   A      Agent Kopchak's body cam too.
24   Q      Okay.  So all that is about the facts that are
25   the basis for this complaint?
```

| | | |
|---|---|---|
| 1 | A | You can see them on body cam if you look at |
| 2 | | them. |
| 3 | Q | So what we're talking about in this case is on |
| 4 | | May 14, 2020 Detective Yasenchack executed an |
| 5 | | affidavit and got a search warrant to search |
| 6 | | your residence; is that your understanding? |
| 7 | A | I think the judge said he wants to know |
| 8 | | because it wasn't a stamp on there.  You |
| 9 | | supposed to have the time/date stamp on there. |
| 10 | | Especially in federal court.  Especially if |
| 11 | | you're going to call Kopchak to put me in the |
| 12 | | feds.  She said something like she wanted to |
| 13 | | know if he did this before or after they |
| 14 | | journalized the dismissing of the appeal. |
| 15 | Q | I can see we have a little bit to talk about |
| 16 | | with this stuff.  But let me just, one last |
| 17 | | exhibit to throw your way, then we can move on |
| 18 | | to talk about why we're here today in |
| 19 | | particular.  This would be D. |
| 20 | | (Defendants' Exhibit D marked for |
| 21 | | identification.) |
| 22 | | MR. PUIN:          Can we go off the |
| 23 | | record for a minute, talk about Exhibit D? |
| 24 | | THE VIDEOGRAPHER: We're off the record |
| 25 | | at 10:50. |

```
 1              (Discussion had off the record.)
 2              THE VIDEOGRAPHER: We're back on the
 3         record at 10:57.
 4    BY MR. PUIN:
 5    Q    Sir, we're back on the record and again, thank
 6         you for your time today.  It's with the case
 7         management schedule the court imposed, we had
 8         to get your deposition done now, as opposed to
 9         waiting until, you know, March, when you were
10         in Cleveland, because there's some proceedings
11         in February that your deposition has to be
12         taken before.  Otherwise, we wouldn't have
13         bothered you here today.
14              So we marked -- I think we marked
15         Exhibit D.
16    A    D, yes.
17    Q    Interrogatory responses.  We're just going to
18         run through some of these basic questions
19         before we get to the facts of this case if you
20         don't mind.  Just to get this stuff on the
21         record.  These cases, as you know, can
22         sometimes go on for a little while.  So when
23         we have the chance to talk to you, we have to
24         get these answers in the record.
25              So, if you could just read along with
```

```
 1            me, starting at page 6 on Exhibit D.  We
 2            there?  Okay, cool.
 3                   You told us about being at JFK and then
 4            University of Akron, where you got the
 5            Associate's in the Global Positioning?  I'm
 6            sorry, what was it, GIS?
 7   A        Geographic Information Systems.
 8   Q        GIS, okay.  Then you told us you're still
 9            taking some classes.  Are you currently
10            enrolled in any other classes?
11   A        No, I'm a tutor here.
12   Q        Okay.
13                   If we turn the page, over here we are
14            just going to run through and try to answer
15            these questions.
16                   This one says, please describe all
17            written or oral statements you gave to any
18            person about your case.
19                   Other than conversations with your
20            attorney or conversations, you know, in the
21            criminal case, have you given sort of any
22            statement, written or oral statements about
23            this case to anybody other than your
24            attorneys?
25   A        PREA.
```

|    |   |                                                    |
|----|---|----------------------------------------------------|
| 1  | Q | Say it again, I'm sorry.                           |
| 2  | A | PREA, Prisoner Rape Intervention Elimination       |
| 3  |   | Act.                                               |
| 4  | Q | What is that?                                      |
| 5  | A | It's like when he violated me, while I was --      |
| 6  |   | when he pulled me over.  He violated me, I         |
| 7  |   | filed a complaint with PREA.                       |
| 8  | Q | I want to get into the violation you're            |
| 9  |   | talking about put PREA interviewed about this      |
| 10 |   | case?                                              |
| 11 | A | I think they might have, yeah.  I think they       |
| 12 |   | did.                                               |
| 13 | Q | Okay.                                              |
| 14 | A | I know I contacted them a few times.  Then I       |
| 15 |   | talked to the City of Cleveland -- what's the      |
| 16 |   | thing across the street from the Justice           |
| 17 |   | Center.  Citizen -- I made a complaint with        |
| 18 |   | the --                                             |
| 19 | Q | OPS?                                               |
| 20 | A | With the City of Cleveland.                        |
| 21 | Q | CPRB or OPS?                                       |
| 22 | A | What's it called.  It's called --                  |
| 23 | Q | Office of Professional Standards?                  |
| 24 | A | Yeah, the Office of Professional Standards,        |
| 25 |   | right.                                             |

| | | |
|---|---|---|
| 1 | Q | Okay. So there is an OPS complaint out there. |
| 2 | | Then PREA is the name of an Act.  But like who |
| 3 | | actually interviewed you, if you remember? |
| 4 | A | I don't know.  That was 2019. |
| 5 | Q | Any other statements can you think of that you |
| 6 | | would have given besides OPS and the PREA |
| 7 | | statement? |
| 8 | A | Like the government officials?  No, I talked |
| 9 | | to the guy, Martin Flask, for the Mayor, Frank |
| 10 | | Jackson about my OPS or whatever you call it |
| 11 | | claim, complaint or whatever.  Other than |
| 12 | | that. |
| 13 | Q | Okay, so you talked to Martin Flask at -- |
| 14 | A | I talked to the judge. |
| 15 | Q | Okay. |
| 16 | A | Talked to the judges. |
| 17 | Q | Okay.  So, outside of your attorneys or the |
| 18 | | court process, you talked to Martin Flask? |
| 19 | A | You mean like newspaper and stuff, reporters? |
| 20 | Q | Yeah, right. |
| 21 | A | No. |
| 22 | Q | So Martin Flask, OPS, and the PREA statement, |
| 23 | | and other than that it would have just been in |
| 24 | | this case, right? |
| 25 | A | Yeah. |

```
 1   Q    So number 5, 4 and 5 talk about physical and
 2        psychological injuries that you're claiming
 3        for damages from this lawsuit.  We got into
 4        that a little bit.  You gave me the name of
 5        some doctors.  That was mainly psychological
 6        as I recall.  Physical, like what physical --
 7   A    Cleveland Clinic.
 8   Q    Cleveland Clinic would be physical injuries.
 9        What physical injuries are you claiming as a
10        result of this case?  Not psychological but
11        physical, like broken arm or --
12   A    I had complications with my foot when he first
13        trip slammed me, whatnot.  But I suffer from
14        nerve damage, neuropathy issues due to all
15        this being in jail and things, real pain for
16        me.  I live in pain every day.  It's like
17        torture.  Like cruel and unusual punishment
18        actually, you know, for somebody in my
19        condition.
20             I need surgery now.  I'm stuck here.  I
21        should have had surgery two years ago, but I'm
22        stuck here.  They don't even give you a double
23        mattress.  They don't even give you meds for
24        your pain.  It's cruel and unusual punishment.
25   Q    I apologize for the sort of unnatural format
```

|    |   |                                                    |
|----|---|----------------------------------------------------|
| 1  |   | where we ask questions, you give the answers.      |
| 2  |   | Like I said, it's like a court proceeding.         |
| 3  |   | You know, nothing personal, just trying to get     |
| 4  |   | these answers out on the record.                   |
| 5  |   | You didn't break your arm from anything             |
| 6  |   | with Yasenchack, correct?                           |
| 7  | A | My arm was broken -- actually when Yasenchack       |
| 8  |   | slammed me, it was like right after they took       |
| 9  |   | the plate, it was still healing from then           |
| 10 |   | taking the plates out of my arm.  I just came       |
| 11 |   | from surgery like a month before, maybe a           |
| 12 |   | month and a half from taking the plates.  It        |
| 13 |   | was still healing.  I might even had my arm         |
| 14 |   | brace on still.  I believe so.                      |
| 15 | Q | So you didn't break your arm with Yasenchack,       |
| 16 |   | but he aggravated a pre-existing arm injury is      |
| 17 |   | what you are saying, he caused pain to your --      |
| 18 | A | He slammed, yeah.  He caused a lot of pain.  I      |
| 19 |   | mean it is the nerve pain.  I got the sciatic       |
| 20 |   | nerve damage.  Are you familiar with that?          |
| 21 | Q | Yes.                                                |
| 22 | A | So all this that I'm dealing with, I have           |
| 23 |   | sciatic pain going on.  You know how painful        |
| 24 |   | that can be, right?                                 |
| 25 | Q | Right.                                              |

| | | |
|---|---|---|
| 1 | A | So there. |
| 2 | Q | Is that from -- |
| 3 | A | Diagnosed at Cleveland Clinic.  They gave me |
| 4 | | nerve blocks for it, so I can try to take care |
| 5 | | of my kids. |
| 6 | Q | Is the nerve pain a result of this lawsuit? |
| 7 | A | I had the nerve pain before the lawsuit.  But |
| 8 | | it didn't do it any good. |
| 9 | Q | Okay. |
| 10 | A | I haven't even been able to -- what is it |
| 11 | | called -- rehab it or rehabilitate it |
| 12 | | properly.  Like the day that he came in my |
| 13 | | house, I was supposed to go to aqua therapy |
| 14 | | and try to get myself back together.  I had an |
| 15 | | appointment with Cleveland Clinic aqua therapy |
| 16 | | on Lakeshore, 185th.  I was unable to make it. |
| 17 | | I go to those appointments regularly.  Trying |
| 18 | | to get my life back together.  Disability is |
| 19 | | no way to live.  It's not enough. |
| 20 | Q | So, not trying to put words in your mouth. |
| 21 | | Just trying to sum up.  You had some |
| 22 | | neuropathy.  You had some sciatica.  You had |
| 23 | | some arm issues.  These all pre-existed your |
| 24 | | interaction with Yasenchack, but because of |
| 25 | | your interactions with him it either got worse |

|    |   |                                                          |
|----|---|----------------------------------------------------------|
| 1  |   | or you weren't able to seek treatment?                   |
| 2  | A | Both, right.                                             |
| 3  | Q | Is there any -- I know you said complications,           |
| 4  |   | you had some complications from your foot.  Is           |
| 5  |   | that something that has cleared up?                      |
| 6  | A | I believe, I forgot what they called it.  I              |
| 7  |   | had a little foot brace on.  All it is due to            |
| 8  |   | my nerve injury.  Due to my neuropathy                   |
| 9  |   | injuries.                                                |
| 10 |   | I can hit my hand on this, right.  You                   |
| 11 |   | might hit your hand and be cool.  My arm might           |
| 12 |   | just break because of the nerves are messed              |
| 13 |   | up.                                                      |
| 14 | Q | Does that go back at all to your auto accident           |
| 15 |   | you had when you were a kid that you had to              |
| 16 |   | drop out of JFK?                                         |
| 17 | A | No, I didn't have to drop out of JFK.  I just            |
| 18 |   | tested out because I was in the hospital.                |
| 19 | Q | From the car accident?                                   |
| 20 | A | I tested out.                                            |
| 21 | Q | Gotcha.  Gotcha.  So you didn't drop out.  You           |
| 22 |   | weren't able to finish because of the car                |
| 23 |   | accident?                                                |
| 24 | A | I tested out because I didn't want to go to              |
| 25 |   | class in pain every day.                                 |

| | | |
|---|---|---|
| 1 | Q | Is the nerve pain, did it originate with that |
| 2 | | car accident?  Is that when it first started? |
| 3 | A | I mean I had a little numbness and tingling, |
| 4 | | minor stuff.  I could still play sports a |
| 5 | | little bit then.  I was rehabbing.  I was in |
| 6 | | shape.  I was playing sports.  When I broke my |
| 7 | | arm, my nerve damage went crazy.  It's all in |
| 8 | | the records at Cleveland Clinic. |
| 9 | Q | Just real quick how did you break your arm |
| 10 | | again?  I'm sorry if you've already answered |
| 11 | | this. |
| 12 | A | I was working helping a lady with her car in |
| 13 | | the snow and I fell and broke my arm on the |
| 14 | | ice helping an old lady. |
| 15 | Q | Do you remember about what year that was? |
| 16 | A | I don't know but it's dated in there. |
| 17 | | Probably '16, December.  It was like a |
| 18 | | Christmas present.  I had surgery January 1st |
| 19 | | or something. |
| 20 | Q | It was a Christmas present. |
| 21 | A | Yeah. |
| 22 | Q | You must have been bad that year, right? |
| 23 | A | I don't know what happened with it.  It's |
| 24 | | been -- it drove my body insane since.  I'll |
| 25 | | just say that.  Falling the dropping things, |

```
 1            not being able to move, my back going out all
 2            the time.  Cold weather making me not be able
 3            to move.  It's just something else I never
 4            experienced in my life.
 5   Q        So, have you told us about all the physical
 6            and psychological injuries that you're
 7            claiming damages for in this case?
 8   A        I think so.  But, whatever you need should be
 9            on the record at Cleveland Clinic.
10   Q        Understood.
11   A        I know I got a tailbone injury and it bothers
12            me a lot.  I don't know if that's more mental,
13            or physical, or both.  It bothers me.  I have
14            tailbone pains a lot.  It bothers me.  Every
15            time it bothers me physically, it bothers me
16            mentally too.
17   Q        So other than that stabbing you were talking
18            about in Youngstown, have you been injured at
19            all while incarcerated?
20   A        My back went out a time or two.  I had minor
21            injuries.  Nothing like that life-threatening.
22            But I had minor injuries.  My back would go
23            out.  I can't walk for a minute.  I have to
24            stay in bed for some days.
25   Q        Okay.  I should have asked you this way back
```

```
 1            when I was asking you about prescription
 2            drugs.  I apologize.
 3                  Just for the record, the prescription
 4            drugs that you take, do those affect your
 5            ability to testify today truthfully and
 6            accurately, or no?
 7     A      No, I don't think so.
 8     Q      So the next interrogatory we were asking was
 9            about your money damages, not for the injuries
10            that we were talking about but your damages
11            from like a lost job or inability --
12     A      Working and stuff.  I had a few checks I put
13            in my account.  You all have access to that.
14     Q      Okay.
15     A      I had access to it when I was in the feds.  I
16            probably still have access to it.  I worked
17            minor mechanic and stuff.  I haven't been able
18            to work my full -- I haven't been able to work
19            as such since that happened.  And on top of
20            people not wanting to hire me because of him,
21            and you know, I've been in more pain since
22            then, which is like a reaggravation of a
23            terrible injury.
24     Q      Okay.  I'm hearing two things.  One is we
25            should talk to your lawyer about your economic
```

| | | |
|---|---|---|
| 1 | | damages, checks that you deposited, that kind |
| 2 | | of thing, right? |
| 3 | A | I mean, yeah, if that is what you are asking |
| 4 | | about. |
| 5 | Q | Yes. |
| 6 | | Then the second thing I'm hearing is |
| 7 | | that you weren't like an employee of a single |
| 8 | | company for a certain period of time. You |
| 9 | | were more self-employed, entrepreneurial, did |
| 10 | | things for different people and there is not |
| 11 | | like one company -- |
| 12 | A | I was a mechanic before I broke my arm, right? |
| 13 | Q | Where was that at? |
| 14 | A | How can a mechanic -- Jay's Auto. How can a |
| 15 | | mechanic work when he can't -- when he's |
| 16 | | dropping things all the time. I drive cars |
| 17 | | from the auction, and things like that. I had |
| 18 | | a few jobs. Running the car wash and things |
| 19 | | like that. But, I mean, I haven't been able |
| 20 | | to do much since my injuries. Since I broke |
| 21 | | my arm, I haven't been able to do as much. |
| 22 | | After that, after the situation with |
| 23 | | Yasenchack, I haven't been able to do as much. |
| 24 | | And, people are scared of me. |
| 25 | Q | So you told us before about -- moving on to |

|    |   |                                                              |
|----|---|--------------------------------------------------------------|
| 1  |   | the next interrogatory number 7 here, it's on                |
| 2  |   | page 8.  You told us before you get SSI about                |
| 3  |   | 800 a month, right?                                           |
| 4  | A | Yeah.                                                         |
| 5  | Q | You also have health insurance for these                     |
| 6  |   | injuries you've been talking about, or they                  |
| 7  |   | have been handled through the state system or                |
| 8  |   | federal system?                                              |
| 9  | A | I assume, United Health Care.  Can I see that?               |
| 10 | Q | No.  United Health Care would have been your                 |
| 11 |   | insurance company?                                           |
| 12 | A | Or Care Source -- no, United Health Care.                    |
| 13 | Q | Or Care Source, okay.                                         |
| 14 |   | Do you have any sort of medical bills                        |
| 15 |   | out there that you're aware of that haven't                  |
| 16 |   | been paid?                                                   |
| 17 | A | I'm not sure.  But if it was, probably all                   |
| 18 |   | done.  Maybe 50 or 60 somewhere disputed.                    |
| 19 | Q | So these next interrogatories 8, 9, 10, and                  |
| 20 |   | 11, these go to the Section 1983 claim against               |
| 21 |   | the City of Cleveland for Civil Rights                       |
| 22 |   | violation.  So I realize that, you know, of                  |
| 23 |   | course your attorney drafted the complaint.                  |
| 24 |   | You're not an attorney, we should, you know,                 |
| 25 |   | talk to him.                                                 |

| | | |
|---|---|---|
| 1 | A | I appreciate it. |
| 2 | Q | Do you like sitting here today, I have to ask, |
| 3 | | do you have any opinion as to -- other than |
| 4 | | what Yasenchack did, take him out of the |
| 5 | | picture. |
| 6 | A | Equal protection under the law. |
| 7 | Q | Yeah, like what about the City -- |
| 8 | A | Cruel and unusual punishment. Violation of my |
| 9 | | prisoner rights, Civil Rights. Yeah, I |
| 10 | | understand. |
| 11 | Q | I know it's hard to separate, but can you sort |
| 12 | | of separate what your claim would be against |
| 13 | | the City, capital C, versus Yasenchack? |
| 14 | A | I think you should talk to my lawyer about it, |
| 15 | | right? |
| 16 | | MR. SCOTT: That's fine. |
| 17 | Q | You're not sitting here today saying I'm |
| 18 | | aware -- |
| 19 | A | I guess they didn't investigate it properly, |
| 20 | | they didn't do what they were supposed to do, |
| 21 | | negligence, stuff like that. |
| 22 | Q | Okay. |
| 23 | A | I think you should talk to the attorney about |
| 24 | | it. |
| 25 | Q | Understood. |

| | | |
|---|---|---|
| 1 | A | Are there anymore questions that I have to |
| 2 | | answer? |
| 3 | Q | Well, yeah, I'm afraid we have to go through a |
| 4 | | few -- |
| 5 | A | Are you sure that my lawyer can't answer? |
| 6 | Q | I will just ask one follow-up about this and |
| 7 | | I'll move on to a different topic. |
| 8 | | As you sit here today, you're not aware |
| 9 | | of any policy, training, legislative |
| 10 | | enactment, anything specific in your mind that |
| 11 | | was related to your case? |
| 12 | A | I mean, well, you know, body cavity search in |
| 13 | | broad daylight on the streets of Cleveland |
| 14 | | 156th and Glencoe, Corisca or whatever, I know |
| 15 | | that's not legal. |
| 16 | Q | Okay. |
| 17 | A | With no doctor. With no -- none of hat. None |
| 18 | | of the proper things. He assaulted me while |
| 19 | | he was doing it. |
| 20 | Q | Right. You mentioned this a few times and I'm |
| 21 | | not -- |
| 22 | A | Being on the ground on my face -- |
| 23 | Q | Yeah, I do want to ask -- |
| 24 | A | -- no body camera. |
| 25 | Q | Right. I want to get your side of that out. |

| | | |
|---|---|---|
| 1 | A | Making up search warrants without getting a |
| 2 | | proper time/date stamps and stuff. |
| 3 | Q | Okay. |
| 4 | A | Without using false information and reckless |
| 5 | | information. |
| 6 | Q | Okay.  I definitely what to get to all that. |
| 7 | | When you talk about -- just real quick and |
| 8 | | then and will move on.  When you talk about |
| 9 | | the body cavity search at 156th and Glencoe -- |
| 10 | A | Twice. |
| 11 | Q | By Yasenchack both times? |
| 12 | A | You can see it.  It's on video, sir. |
| 13 | Q | This is what you were talking about when you |
| 14 | | were saying the sexual assault by Yasenchack? |
| 15 | A | It's on video, sir. |
| 16 | Q | This is the same deal though, right? |
| 17 | A | You can see it.  I really don't want to relive |
| 18 | | it every five minutes. |
| 19 | Q | Okay.  No, yeah, this is our one chance to |
| 20 | | talk to you. |
| 21 | A | When I think about it, my tailbone hurt and |
| 22 | | stuff. |
| 23 | Q | I apologize.  I know it's traumatic to relive |
| 24 | | certain instances in your past.  It's true for |
| 25 | | everybody.  It's just that we only have one |

| | | |
|---|---|---|
| 1 | | shot. |
| 2 | A | You would mind if it was you, right? |
| 3 | Q | Right. |
| 4 | A | Or anybody else driving down the street. No |
| 5 | | matter what you are doing, that you wouldn't |
| 6 | | have experienced it. So this is a little bit |
| 7 | | of racism, all of that. |
| 8 | Q | Understood. |
| 9 | A | I really, you know, it's all ready enough |
| 10 | | racial tension. |
| 11 | Q | Understood. Let's move on real quick about |
| 12 | | witnesses. |
| 13 | | So I believe you said in response to |
| 14 | | the interrogatories that we looked at earlier |
| 15 | | that the witnesses would be all the people |
| 16 | | identified in like the police file or the |
| 17 | | government's file, things like that. |
| 18 | | Do you have any friends, family, people |
| 19 | | that were helping you rehab the house, anybody |
| 20 | | you would call at trial as a witness? |
| 21 | A | I'm not sure yet. |
| 22 | Q | When you find that out, will you let us know? |
| 23 | A | Sure. I have to talk to my attorney, see what |
| 24 | | they want to do. |
| 25 | Q | You're not aware, along the same lines, as you |

|     |   |                                                          |
|-----|---|----------------------------------------------------------|
| 1   |   | sit here today, you're not aware of any expert           |
| 2   |   | witnesses, or any exhibits you might bring to            |
| 3   |   | trial, stuff like that, that's all for your              |
| 4   |   | attorney?                                                |
| 5   | A | I'm not sure.                                            |
| 6   | Q | I'm going to ask you interrogatory 18. If you            |
| 7   |   | want to take a minute and read it first before          |
| 8   |   | we put it on the record. That's on page 10.             |
| 9   |   | So interrogatory 18 is near the bottom                   |
| 10  |   | of the page, near the middle bottom there.              |
| 11  |   | MR. SCOTT:      I'm going to pose an                     |
| 12  |   | objection, instruct him not to answer it but            |
| 13  |   | you will have to state.                                  |
| 14  | Q | We'll get this on the record.                            |
| 15  | A | I do not want to -- pose an objection. I                |
| 16  |   | don't want to incriminate myself. Invoke my             |
| 17  |   | right to a Fifth Amendment right.                        |
| 18  | Q | I completely understand. I'm not trying to be           |
| 19  |   | difficult. I just want the record to be clear           |
| 20  |   | so I'm going to ask the interrogatory and               |
| 21  |   | we'll have you answer it just as a formality,           |
| 22  |   | okay?                                                    |
| 23  |   | On May 18, 2020 did you have in your                     |
| 24  |   | possession, custody, or control at your                 |
| 25  |   | residence located at East 127th Street in               |

```
 1          Cleveland any Percocet pills, a Smith & Wesson
 2          .38 caliber revolver, ammunition, drug
 3          paraphernalia, carfentanil, heroin, fentanyl,
 4          cocaine and tramadol?
 5                  MR. SCOTT:        Objection.  Instruct
 6          you not to answer.  You need to state it on
 7          the record.
 8    A     I invoke my right to the Fifth Amendment.
 9                  THE WITNESS:      Didn't we talk about
10          that earlier?
11                  MR. SCOTT:      He's just matching it
12          up with this specific question.
13                  THE WITNESS:      On body cam.
14                  MR. PUIN:       Counsel, I think for
15          the record we've talked about this.  This
16          being a civil case, we maintain there is an
17          adverse inference due to the pleading of the
18          Fifth.  Also think that it would be
19          inappropriate in this situation, given these
20          facts are at issue in this case.
21                  MR. SCOTT:        Okay.
22                  THE WITNESS:      What did he say?
23                  MR. SCOTT:        We're going to fight
24          about it later.
25                  THE WITNESS:      Cool.
```

1   Q     So there is one last exhibit here that I'll

2          ask you about.

3              MR. PUIN:        If we can go off the

4          record and talk about the exhibit before we

5          present it to the witness.

6              THE VIDEOGRAPHER:  We're off the record

7          at 11:17.

8           (Defendants' Exhibit E marked for

9                identification.)

10         THE VIDEOGRAPHER: We're back on the

11        record at 11:21.

12  BY MR. PUIN:

13  Q     Mr. Ellis, you've been handed a copy of

14         Exhibit E.  Do you mind taking a look at that

15         and letting us know if -- you can flip through

16         it.  Have you ever seen it before?

17  A     Search warrant affidavit, Judge Benita Pearson

18         said that Detective Jeffrey Yasenchack used

19         knowingly false -- knowingly and recklessly

20         used false information to get a search.

21  Q     You do recognize this document then?

22  A     Yeah.

23  Q     Let me ask you a couple of questions about it.

24           Did you ever drive a black Ford

25         Explorer with Ohio plate HYH 8894?

| | | |
|---|---|---|
| 1 | A | I think I don't want to answer anymore |
| 2 | | questions about it.  I want to invoke my right |
| 3 | | to the Fifth Amendment if you don't mind. |
| 4 | Q | Okay.  So the record is clear, you're refusing |
| 5 | | to answer any questions about the documents |
| 6 | | that are Bates labeled CLE 000050 through 56 |
| 7 | | and that have been marked as Exhibit E here |
| 8 | | today? |
| 9 | A | The judge ruled that false -- ruled him |
| 10 | | uncredible (sic) and I'm not sure what my |
| 11 | | attorneys have planned to do with this so I |
| 12 | | don't want to answer or say anything. |
| 13 | | MR. PUIN:        So, counsel, just so |
| 14 | | the record is clear, are you instructing the |
| 15 | | witness not to answer any questions about |
| 16 | | Defendants' Exhibit E? |
| 17 | | MR. SCOTT:        That's correct.  On |
| 18 | | the grounds it may incriminate him, yes. |
| 19 | | MR. PUIN:        We would simply say |
| 20 | | three things for the record. |
| 21 | | One, that we believe there is an |
| 22 | | adverse inference in a civil case. |
| 23 | | Two, that these facts were put at issue |
| 24 | | by the lawsuit. |
| 25 | | And three, that any invocation of the |

1    Fifth Amendment was waived today by the

2    witness discussing the facts in the affidavit

3    already on the record.

4         Having said that, we will move on.  I

5    don't have any additional questions for you at

6    this time.  Mr. Morice may.

7         MR. MORICE:     I do but are we back

8  on?

9         MR. PUIN:     Yes, we're on the

10    record.

11         MR. MORICE:     Can we take two

12    minutes?

13         MR. SCOTT:     Absolutely.

14         THE VIDEOGRAPHER: We're off the record

15    at 11:23.

16              (Recess taken.)

17         THE VIDEOGRAPHER: We're back on the

18    record at 11:31.

19              CROSS-EXAMINATION

20  BY MR. MORICE:

21  Q    Mr. Ellis, I've introduced myself to you.  My

22    name is Craig Morice.  I work for the City of

23    Cleveland, but I'm representing Mr. Yasenchack

24    in connection with the lawsuit that Mr. Scott

25    and Mr. Sidoti brought on your behalf.  I've

| | | |
|---|---|---|
| 1 | | got a few question for you.  Nothing too |
| 2 | | terribly painful or troubling I'm hoping. |
| 3 | | You've made mention a couple of times |
| 4 | | to being assaulted and slammed to the ground |
| 5 | | and sexually assaulted allegedly by -- |
| 6 | A | While I was handcuffed. |
| 7 | Q | -- by Detective Yasenchack.  Was that in the |
| 8 | | course of him executing on the warrant at |
| 9 | | East 127th? |
| 10 | A | No, that was when he first pulled me over like |
| 11 | | March 3, 2019. |
| 12 | Q | Okay. |
| 13 | A | Then he lied and they suppressed the evidence. |
| 14 | | Found him uncredible.  Then he lied about that |
| 15 | | case and that warrant right there that you all |
| 16 | | just passed, Exhibit E, on top of having lying |
| 17 | | about informants and other things and stuff. |
| 18 | Q | Who says he's lying, you? |
| 19 | A | Judge Pearson. |
| 20 | Q | You're confusing me. |
| 21 | A | Judge Pearson said it at the end of the |
| 22 | | evidence, she said well they -- |
| 23 | Q | Judge Pearson in the federal case? |
| 24 | A | Right, federal case said he was lying about -- |
| 25 | Q | So what case came out of the alleged assault |

```
 1          in 2019?
 2     A    Judge Deborah Turner.
 3     Q    So that was a state case?
 4     A    Right.
 5     Q    So, any allegations that you're making about
 6          any assault allegedly committed by Detective
 7          Yasenchack has nothing to do with this case,
 8          does it?
 9     A    I'm not sure.  Are they two different cases?
10     Q    Yeah, they are.
11     A    Well, I don't know.  My lawyers probably did
12          it for a reason.  I'm not sure.
13     Q    Well you are the one bringing the claim.  You
14          would have information about that.  I'm just
15          trying to be clear.  So anything having to do
16          with the alleged assault doesn't have anything
17          to do --
18     A    I thought it was a continuous problem.
19     Q    No.  That's not the way it's been pled in the
20          lawsuit.
21     A    Well, I have to talk to them about it, if you
22          don't mind.
23     Q    I do mind, because we're here one time.  We've
24          got all sorts of paper, we've got all sorts of
25          information.  I'm asking you the questions
```

|   |   |   |
|---|---|---|
| 1 |   | because you are the one that's brought the |
| 2 |   | lawsuit. |
| 3 | A | I can't answer you because you just told me |
| 4 |   | something I knew nothing about. |
| 5 | Q | So, just so we're clear, what allegedly |
| 6 |   | happened to you in 2019 at the hands of |
| 7 |   | Detective Yasenchack, had nothing to do with |
| 8 |   | the federal case; is that accurate? |
| 9 |   | MR. SCOTT:        Objection.  You can |
| 10 |   | answer. |
| 11 | A | I don't think so.  Because in the warrant he |
| 12 |   | says that he has this case from 2019 and |
| 13 |   | that's the reason that I filed a PREA |
| 14 |   | complaint against Detective Yasenchack in |
| 15 |   | 2019.  That's the reason he manufactured the |
| 16 |   | search warrant and came to my house, harassed |
| 17 |   | me, and put me in feds.  It talks about it in |
| 18 |   | the search warrant. |
| 19 | Q | Go back to Defense Exhibit E.  Take a couple |
| 20 |   | minutes, let me know where there is any |
| 21 |   | reference to anything happening in 2019. |
| 22 | A | It talks about it -- |
| 23 | Q | I see it. |
| 24 | A | You see it? |
| 25 | Q | On page 5, paragraph three. |

| | | |
|---|---|---|
| 1 | A | Here is page 1.  See this April 2020, right, |
| 2 | | this is when the case started to fall apart. |
| 3 | | Then he claims he has a concerned citizen. |
| 4 | | Then the concerned citizen was a dude he |
| 5 | | pulled over on a bike and he threatened him to |
| 6 | | try to make him say something about me. |
| 7 | Q | Who said he threatened him? |
| 8 | A | You can see in on the video.  It's on the DVD. |
| 9 | Q | Who's saying that? |
| 10 | A | Judge Pearson. |
| 11 | Q | Judge Pearson said that? |
| 12 | A | Yes. |
| 13 | Q | Based on what? |
| 14 | A | The video, the body cam.  Then, before he even |
| 15 | | said anything, he cuts the body cam off. |
| 16 | Q | So if we go to paragraph -- |
| 17 | A | Here it is right here in paragraph three.  He |
| 18 | | says he claims he arrested me for marijuana in |
| 19 | | 2019, and this case is open and currently in |
| 20 | | appeals court.  The day he submitted it was |
| 21 | | the day that -- it was already dismissed in |
| 22 | | appeals court.  The day he submitted the |
| 23 | | warrant she said she wanted to know if he |
| 24 | | submitted it before or after they journalized |
| 25 | | the dismissal in the case. |

1  Q    But the statement there that says that he

2         arrested you in 2019, that's accurate,

3         correct?

4  A    Yeah.  But he omitted the fact that Judge

5         Deborah Turner found that he was uncredible.

6         Omissions they say -- this is what Judge

7         Pearson put it.

8  Q    Those are questions of law, not questions of

9         fact, correct?

10  A    I don't want to argue about it because I don't

11         know.  I don't know but this is what Judge

12         Pearson put it.  Omissions are the same as

13         lies.  So he knowingly and recklessly lied and

14         left out things, and made omissions in the

15         search warrant affidavit.

16  Q    So, you were not engaging in any of the

17         activity involving any of the --

18  A    No.

19  Q    -- items that are listed in the --

20  A    No and some of the informants came and

21         testified at the suppression hearing that

22         Yasenchack was not --

23  Q    Let's back up a tiny bit here, okay.  I'm

24         asking the questions.  Then you give the

25         answers.  So while I'm asking the question, if

1        you would try not to answer. That would help

2        the process, and keep things clear.

3  A    I don't want to answer anymore questions. I'm

4        done going over it over and over again. I

5        answered the question so many times. I plead

6        the Fifth. I would like you to ask to talk to

7        my lawyer about it. Is that alright?

8  Q    No, it's not all right, but if Mr. Scott would

9        to take a few moments to speak with you,

10       because it sounds to me like you are

11       attempting to terminate this deposition.

12 A    I already have back pain. I've been sitting

13       here for a long time. I got never damage.

14       You want to subject me to more painful

15       environment --

16           MR. SCOTT:      Do you mind --

17           MR. PUIN:       We're off the

18       record.

19           THE VIDEOGRAPHER: We're off the record

20       at 11:38.

21           (Discussion had off the record.)

22           THE VIDEOGRAPHER: We're back on the

23       record at 11:45.

24 BY MR. MORICE:

25  Q    We went off for a moment, to try to take care

1       of some issues relevant to some day-to-day

2       stuff involving Mr. Ellis.  We're back to

3       answer some more questions hopefully.

4               With regard to Defense Exhibit C,

5       which is a copy of the complaint that forms

6       the basis of this lawsuit, you testified that

7       you had not seen this document before; is that

8       accurate?

9  A     All I seen were the interrogatories that I

10      signed.

11  Q     You have not seen this document that was

12      marked as Defense C?

13  A     No.

14  Q     As part of this lawsuit, the basis -- as part

15      of the basis for this lawsuit, there is an

16      allegation that the 15 months between the time

17      that you were arrested and the federal case,

18      and the eventual dismissal by the United

19      States of the case against you constituted the

20      deprivation of your Civil Rights, is that your

21      understanding of at least part of the basis of

22      the lawsuit?

23  A     Yes.

24  Q     As it relates to the case, federal criminal

25      case that was before Judge Benita Pearson in

|    |   |                                                              |
|----|---|--------------------------------------------------------------|
| 1  |   | Youngstown, were you represented by private                  |
| 2  |   | counsel, or was counsel appointed for you?                   |
| 3  | A | Counsel was appointed for me.                                |
| 4  | Q | Was that the federal defender's office?                      |
| 5  | A | Yes.                                                         |
| 6  | Q | Taking a look at the docket on that particular               |
| 7  |   | case.  I didn't make an extra copy or                        |
| 8  |   | introduce it, but it seems that there was a                  |
| 9  |   | number of continuances in the case sought by                 |
| 10 |   | your counsel; is that accurate, if you recall?               |
| 11 | A | Not that I recall.                                           |
| 12 | Q | Do you recall executing a waiver of your                     |
| 13 |   | speedy trial rights at any time during that                  |
| 14 |   | case?                                                        |
| 15 | A | I remember I complained about it.  I wanted to               |
| 16 |   | fire my attorney because I thought we could                  |
| 17 |   | have got it over faster.  But he wanted the                  |
| 18 |   | government -- we had to continue the case so                 |
| 19 |   | many times because the government refused to                 |
| 20 |   | give him access to the alleged informants.                   |
| 21 |   | Probably because they were fake though.  But                 |
| 22 |   | they refused to give them to him.  I know                    |
| 23 |   | that's why I was there for so long.                          |
| 24 | Q | That wasn't my question.  Do you recall                      |
| 25 |   | executing a waiver of your speedy trial rights               |

| | | |
|---|---|---|
| 1 | | on two separate occasions during that case? |
| 2 | A | Definitely not on two separate occasions |
| 3 | | because I almost fired him for waiving my |
| 4 | | speedy trial rights. |
| 5 | Q | So the docket of this case as maintained by |
| 6 | | United States District Court for the Northern |
| 7 | | District of Ohio Eastern Division is not |
| 8 | | accurate, is that what you are saying? |
| 9 | A | I mean I never seen it. I don't know. I |
| 10 | | never seen it. I'm just going by what you are |
| 11 | | telling me. |
| 12 | Q | Did your lawyer explain to you that you needed |
| 13 | | to waive your right to a speedy trial? |
| 14 | A | My lawyer and the judge said that's the only |
| 15 | | way that I was going to be able to -- I |
| 16 | | believe that. |
| 17 | Q | Finish that thought, what the judge and the |
| 18 | | lawyer say to you. |
| 19 | A | I'm going to explain it to you, right. |
| 20 | | So the prosecutor wouldn't -- the |
| 21 | | government, the prosecutor, AUSA or whatever, |
| 22 | | he would not give my lawyer the opportunity to |
| 23 | | interview the alleged informants. So that is |
| 24 | | why I was waiting all that time. He |
| 25 | | threatened me with 262 to 300 and some months |

| | | |
|---|---|---|
| 1 | | if he interviewed the informants. |
| 2 | Q | Who threatened you? |
| 3 | A | The AUSA, Stephen whatever his name was. |
| 4 | | That's what was taking so long. He said -- I |
| 5 | | had an email. He said if I go to a |
| 6 | | suppression hearing, he is going to supercede |
| 7 | | me with 924(c), career offender me, I'm going |
| 8 | | to be facing up to 362 months. Or 328 months |
| 9 | | or something. |
| 10 | Q | What did that have to do with you executing |
| 11 | | two speedy trial waivers? |
| 12 | A | My lawyer still told him he wanted to |
| 13 | | interview the informants and he took forever |
| 14 | | with it. That's why we took so long. If he |
| 15 | | would have gave us the information in 2020, I |
| 16 | | would of had my suppression hearing in 2020. |
| 17 | Q | Were you aware that the judge continued your |
| 18 | | trial based on the General Order having to do |
| 19 | | with COVID-19 pandemic, was that explained to |
| 20 | | you? |
| 21 | A | No, I don't know anything about that. All I |
| 22 | | know is I was waiting on the informant |
| 23 | | information. That's what they told me. We |
| 24 | | had a big thing where I thought he didn't need |
| 25 | | all the informant information, he could just |

| | | |
|---|---|---|
| 1 | | go with the affidavits he already had.  The |
| 2 | | testimony from the alleged informant he |
| 3 | | already had.  He wanted to make sure they were |
| 4 | | actually the informants. |
| 5 | Q | So I'm going to ask you a third time.  I would |
| 6 | | like a straight yes or no answer to this. |
| 7 | | Do you recall waiving your right to a |
| 8 | | speedy trial on no less than two occasions in |
| 9 | | connection with your federal criminal case? |
| 10 | A | No. |
| 11 | Q | You don't recall, or you didn't do it? |
| 12 | A | No, I do not recall.  I think I recall one |
| 13 | | time so we can get these informants. |
| 14 | Q | One time you waived your right to a speedy |
| 15 | | trial? |
| 16 | A | To get the informants. |
| 17 | Q | Yes or no? |
| 18 | A | Yeah, I think waived it one time, to get the |
| 19 | | informants because she said without the |
| 20 | | informants we have to go to trial and you're |
| 21 | | not going to have a suppression hearing.  So |
| 22 | | it was like they were buffaloing me or |
| 23 | | whatever.  Bullying me. |
| 24 | Q | Some of these -- |
| 25 | A | It was really stressful. |

| | | |
|---|---|---|
| 1 | Q | Let me know when you are done. |
| 2 | A | It was real stressful.  It was like a |
| 3 | | nightmare.  I remember reliving it again right |
| 4 | | now, you know, if that's what you want me to |
| 5 | | do. |
| 6 | Q | Yes I do, because that's what the lawsuit's |
| 7 | | about so we're going to talk about it.  You're |
| 8 | | going to think about it.  You are going to |
| 9 | | have it roll around in your head for a little |
| 10 | | while. |
| 11 | | Are you done talking about -- |
| 12 | A | Next question. |
| 13 | Q | Yeah, are you ready? |
| 14 | A | Yeah. |
| 15 | Q | So as it relates to any of the events you |
| 16 | | talked about here, going on as between the |
| 17 | | Assistant U.S. Attorney and your lawyer from |
| 18 | | the Federal Defender's Office, did Detective |
| 19 | | Yasenchack compel you to waive your right to a |
| 20 | | speedy trial? |
| 21 | A | No. |
| 22 | Q | Did Detective Yasenchack explain to your |
| 23 | | lawyer how things were going to go in the |
| 24 | | conduct of that lawsuit? |
| 25 | A | No.  He just got me there. |

| | | |
|---|---|---|
| 1 | Q | So what part of the delay in this lawsuit -- |
| 2 | A | It was Yasenchack's fault. |
| 3 | Q | -- in this criminal case has to do with |
| 4 | | anything other than the pandemic and your |
| 5 | | waiving your right to a speedy trial? |
| 6 | A | Oh, I can explain that. |
| 7 | | MR. SCOTT: Go ahead and answer. |
| 8 | A | He wouldn't release the information. I still |
| 9 | | don't have -- |
| 10 | Q | Who is he? |
| 11 | A | -- the body cam from the one informant. One |
| 12 | | of them. He wouldn't release any body cams. |
| 13 | | He barely released the names. It took him |
| 14 | | over a year to release the names of the |
| 15 | | informants. |
| 16 | Q | Who is he? |
| 17 | A | Detective Jeffrey Yasenchak and Agent Kopchak. |
| 18 | Q | Who is this Agent Kopchak? |
| 19 | A | The guy that said he never met any of the |
| 20 | | informants at the preliminary hearing, or |
| 21 | | pretrial. |
| 22 | Q | Who is he, who does he work for? |
| 23 | A | He's the one Detective Yasenchack called to |
| 24 | | purposely charge me federally. |
| 25 | Q | Are you saying this guy is a federal agent? |

|    |   |                                                      |
|----|---|------------------------------------------------------|
| 1  | A | Yeah, a detective that works for Yasenchack,         |
| 2  |   | yeah.                                                |
| 3  | Q | But what agency does he work for?                    |
| 4  | A | ATF.                                                 |
| 5  | Q | Not DEA?                                              |
| 6  | A | No. DEA?  I don't even have a history of             |
| 7  |   | drugs, nothing.                                      |
| 8  | Q | Just asking if you know.                             |
| 9  | A | Oh, okay.                                            |
| 10 |   | Does Yasenchack have a history of doing              |
| 11 |   | this stuff?  Charging people federally               |
| 12 |   | whenever he feel like it?  Calling Kopchak,          |
| 13 |   | here, charge this guy federal, I'm sick of           |
| 14 |   | him?                                                 |
| 15 | Q | You testified earlier that you had spent some        |
| 16 |   | time incarcerated on prior occasions; is that        |
| 17 |   | correct?                                             |
| 18 | A | Yes.                                                 |
| 19 | Q | Were all of your previous incarcerations out         |
| 20 |   | of Cuyahoga County cases, or any other cases         |
| 21 |   | in the State of Ohio?                                |
| 22 | A | Cuyahoga.  Maybe I went to County for a              |
| 23 |   | misdemeanor or somewhere or something maybe.         |
| 24 | Q | I've got a list here of 13 cases that you were       |
| 25 |   | involved in.  Some were dismissed.  Some you         |

| | | |
|---|---|---|
| 1 | | were sentenced to terms of probation, then |
| 2 | | there was the five years on the felonious |
| 3 | | assault and the GSI kidnapping; does that ring |
| 4 | | a bell? |
| 5 | A | Five years was on.  There was no felonious |
| 6 | | assault. |
| 7 | Q | There was felonious assault -- |
| 8 | A | Attempted felonious assault -- well, you |
| 9 | | know -- |
| 10 | Q | There's felonious assault, criminal damaging, |
| 11 | | gross sexual imposition and kidnapping. |
| 12 | A | Eight years. |
| 13 | Q | Those went to the jury. |
| 14 | A | Here, let's do it right. |
| 15 | Q | That's served consecutive with the five years |
| 16 | | for the kidnapping and GSI. |
| 17 | A | Let's do it right.  Kidnapping and GSI, five |
| 18 | | years, right?  I was acquitted of rape though. |
| 19 | Q | Right. |
| 20 | A | By the jury.  Three years of attempted |
| 21 | | felonious assault, I thought I was acquitted |
| 22 | | of a felonious assault. |
| 23 | Q | Those ran -- |
| 24 | A | Attempted felonious assault, yeah.  Attempted |
| 25 | | felonious assault on a victim that never even |

| | | |
|---|---|---|
| 1 | | showed up or filed a complaint. |
| 2 | Q | But you were convicted? |
| 3 | A | Never even injured.  Yeah, you know, Judge |
| 4 | | Burnside.  I mean that's Cleveland.  They let |
| 5 | | Detective Yasenchack do this and that, I mean. |
| 6 | | They didn't even charge him.  They didn't even |
| 7 | | charge him for the video.  That was a PREA |
| 8 | | complaint. |
| 9 | Q | So you did eight? |
| 10 | A | Straight. |
| 11 | Q | When were you released? |
| 12 | A | 2015.  Then they put me back in. |
| 13 | Q | Then you caught the case in '19 that was |
| 14 | | dismissed by -- |
| 15 | A | You're missing.  I went back in 2016 for |
| 16 | | allegedly spanking my daughter for being in a |
| 17 | | drug neighborhood environment. |
| 18 | Q | Where did that occur? |
| 19 | A | They told me that because Judge Burnside put |
| 20 | | me in jail, I don't have parental rights for |
| 21 | | my child.  She was in a 797, what they call a |
| 22 | | 7R area with her cousin, at my drug addict |
| 23 | | cousin's house. |
| 24 | Q | Did that result in a felony case or a |
| 25 | | misdemeanor case? |

| | | |
|---|---|---|
| 1 | A | They put me in jail, revoked my bond or |
| 2 | | whatever, I mean my probation violation. |
| 3 | | Probation -- parole violation. |
| 4 | Q | They counted that -- |
| 5 | A | Parole violation, yeah. |
| 6 | Q | Parole, okay.  How much time did you do coming |
| 7 | | off that? |
| 8 | A | I don't know.  I did about 90 days.  They said |
| 9 | | I'm not guilty of hurting my daughter, but I |
| 10 | | spanked her without her mom's permission and |
| 11 | | that I don't have any parental rights. |
| 12 | Q | That was a PV.  It wasn't a separate case, |
| 13 | | correct? |
| 14 | A | Yeah, an example of what is going on in |
| 15 | | Cleveland, and stuff, that's all.  And the |
| 16 | | system. |
| 17 | Q | You're here now on a failure to comply, |
| 18 | | failure to comply with a lawful order of a |
| 19 | | police officer? |
| 20 | A | Right.  Right. |
| 21 | Q | What was the circumstance on that? |
| 22 | A | I plead the Fifth. |
| 23 | Q | With regard to why you're here now? |
| 24 | A | I refuse to, what is it -- I don't want to |
| 25 | | incriminate myself.  Is that okay? |

```
1              I didn't know that this case has
2        nothing do with the body cam.
3              MR. SCOTT:        Hang on.  Wait for a
4        question.
5    Q   Early on when Mr. Puin was asking you
6        questions, you confirmed that you've got a
7        release date sometime next month; either the
8        8th or the 18th, is that --
9    A   Correct.
10   Q   Is that accurate?  Okay.  You indicated you
11       were going to go to some sort of program.
12   A   Shelter.  Homeless shelter.
13   Q   Is any part of that dependent on employment?
14       Do you have any sort of plans for what you
15       intend to do in terms of earning a living once
16       you get out?
17   A   I don't know, but I know I'll need somewhere
18       to stay when I first get out.
19   Q   But do you have a plan in terms of trying to
20       secure employment?
21   A   Well, yeah, actually I'm going to try, of
22       course.
23   Q   I understand you'll try.  But I mean do you
24       have a plan?
25   A   I'm on Monster.com and Career Board so
```

1    hopefully I can get a job part time.  Then

2    I'll be back and have surgery.  Probably the

3    first month I get out I'll have surgery.  Then

4    I'll rehab and any type of job that I can do

5    while I'm recovering, I'll do it.

6  Q    You indicated you have an Associate's Degree

7    in Geographic Information Systems.

8  A    Yes.

9  Q    Have you ever tried to secure employment in

10    that business niche?

11  A    Yes.

12  Q    Have you ever worked in that, using that?

13  A    I worked for the City of Cleveland -- I mean

14    the City of Akron doing Y2K patches.  I worked

15    a lot of different jobs in my lifetime.

16  Q    Have you done anything involving GIS systems?

17  A    That involves it.

18  Q    As it relates to the lawsuit itself that

19    you've indicated that you had not seen, you

20    are looking -- there are claims in here for,

21    you know, malicious prosecution and

22    deprivation of Civil Rights, things of that

23    nature.

24  A    Yeah.

25  Q    What are you trying to accomplish with this

| | | |
|---|---|---|
| 1 | | lawsuit? |
| 2 | A | I plead the Fifth. |
| 3 | Q | That really doesn't work here. |
| 4 | A | One, I would like Detective Yasenchack to stop |
| 5 | | sexually and physically assaulting people in |
| 6 | | Cleveland Fifth District.  That would be |
| 7 | | wonderful.  That would be amazing. |
| 8 | Q | What does that have to do with the lawsuit |
| 9 | | that you filed against Detective Yasenchack |
| 10 | | and the City of Cleveland? |
| 11 | A | I think that's what -- I think that's what he |
| 12 | | -- it was my understanding that was part of |
| 13 | | the lawsuit. |
| 14 | | I don't understand that.  You would |
| 15 | | have to argue with my lawyers about it.  I |
| 16 | | have to read it.  I never read it. |
| 17 | Q | So you don't have an opinion or any idea as to |
| 18 | | what you're trying to accomplish with this |
| 19 | | lawsuit? |
| 20 | | MR. SCOTT:          Objection.  You can |
| 21 | | answer. |
| 22 | A | I don't want to answer it.  Let my lawyers -- |
| 23 | | talk to my lawyers about it. |
| 24 | Q | Okay, fair enough. |
| 25 | A | But I definitely would like for him to, your |

1       client, not being able to violate people's rights

2       whenever he want, put people in jail and plant

3       drugs and stuff on them, all that whenever he

4       feels like it.  I would like for that to stop.

5       That's definitely like number one.  That's even

6       more important than money.

7              MR. MORICE:      Let me take two minutes.

8              THE VIDEOGRAPHER:  We're off the record at

9       12:01.

10                    (Recess taken.)

11             THE VIDEOGRAPHER:  We're back on the

12      record at 12:03.

13             MR. MORICE:      Mr. Ellis, I appreciate

14      the conversation that we had here today.  I'm

15      finished asking questions of you.  Mr. Puin has a

16      couple of quick things for you and then we

17      should --

18             THE WITNESS:      Go to lunch.

19             MR. PUIN:         Thank you.  I hope so.

20                    RECROSS-EXAMINATION

21   BY MR. PUIN:

22   Q      Couple quick follow-ups.  Did you ever meet

23          Detective Jeffrey Yasenchack prior to March 2019

24          when you were pulled over?

25   A      No.

| | | |
|---|---|---|
| 1 | Q | You didn't know anything about him prior to March |
| 2 | | 2019? |
| 3 | A | No. |
| 4 | Q | This sexual assault or the rape that you have |
| 5 | | been referring to, is this the incident where |
| 6 | | Detective Yasenchack reached his hand inside your |
| 7 | | pants and said he found drugs inside your pants? |
| 8 | A | The illegal body cavity search on the streets, |
| 9 | | yeah. |
| 10 | Q | This is in the like the rear -- |
| 11 | A | 2019.  No, now you can see it.  Listen, listen, I |
| 12 | | wish you would have seen the video.  You wouldn't |
| 13 | | even ask me.  You can see him trying to force me |
| 14 | | to bend over so he can -- over the car.  Then he |
| 15 | | come and trip slams me, put me on -- this is all |
| 16 | | while I'm handcuffed like.  He grabbed me like |
| 17 | | this and he said lean over, lean over.  You can |
| 18 | | hear him yelling it, pushing my face into the |
| 19 | | trunk so he can violate me easier. |
| 20 | Q | But your pants were still up, they weren't pulled |
| 21 | | down? |
| 22 | A | No, they weren't pulled down.  He was in the area |
| 23 | | -- he was inside of them. |
| 24 | Q | With his hand? |
| 25 | A | Yes. |

1        MR. PUIN:      Okay.  We're just going

2   to, for the record, reserve the right to reopen

3   the depo based on the invocation of the Fifth

4   Amendment under the circumstances of this case.

5   Then I have no further questions.  Craig?

6        MR. MORICE:     No. I would join in the

7   reopening in light of the invocation of

8   privilege.  So other than that, I think we're

9   done.

10       MR. SCOTT:     We'll read it.

11       THE VIDEOGRAPHER: Off the record at

12   12:06.

13       (Deposition concluded at 12:06 p.m.;

14        signature not waived.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                    SIGNATURE PAGE

 2

 3   In Re:       William Ellis vs. Det. Jeffrey Yasenchack,

 4   et al.

 5   Case Number:  1:22-cv-00815

 6   Deponent:    William Ellis

 7   Date:        January 10, 2023

 8

 9   To the Reporter:

10        I have read the entire transcript of my

11   Deposition taken in the captioned matter or the same

12   has been read to me.  I request that the following

13   changes be entered upon the record for the reasons

14   indicated.

15        I have signed my name to the Errata Sheet and the

16   appropriate Certificate and authorize you to attach

17   both to the original transcript.

18

19

20                         _____
                            William Ellis

21        Subscribed and sworn to before me this

22   _____day of _____, 2023.

23

24                         _____
                            Notary Public

25        My commission expires:_____.
```

1    I have read the foregoing transcript from page 1

2  through page 91 and note the following corrections:

3  PAGE-LINE        REQUESTED CHANGE              REASON FOR CHANGE

4

5

6                          CERTIFICATE:     February 23, 2023

7
                          Attorney Joseph Scott was notified via letter
8                          sent January 18, 2023, that the transcript of the
                          deposition of William Ellis, taken January 10,
9                          2023, was ready for examination and
                          signature.

10
                          I certify that over thirty days have elapsed and
11                          the witness has not signed the errata page.

12

13

14        _____
          Melissa Tripi
15        Notary Public in and for
          the State of Ohio.
16        My comm. expires 03/22/2027

17

18

19

20

21

22

23

24

25  _____        _____
    William Ellis                       Date

```
 1   State of Ohio,        )
                           ) SS:  CERTIFICATE
 2   County of Cuyahoga,   )
```

 3   I, Constance Versagi, Court Reporter and

 4 Notary Public in and for the State of Ohio, duly

 5 commissioned and qualified, do hereby certify that

 6 the within named witness, William Ellis, was by me

 7 First duly sworn to testify the truth, the whole

 8 truth, and nothing but the truth in the cause

 9 aforesaid; that the testimony then given by him was

10 by me reduced to stenotypy/computer in the presence

11 of said witness, afterward transcribed, and that the

12 foregoing is a true and correct transcript of the

13 testimony so given by him as aforesaid.

14   I do further certify that the testimony given

15 by the witness was recorded by video/audio tape and

16 that the videotape hereto attached is a true and

17 correct visual and audio reproduction of the

18 testimony given by him.

19   I do further certify that this deposition was

20 taken at Lake Erie Correctional, on January 10,

21 2023, commencing at 10:06 a.m. and was concluded.

22   I do further certify that I am not a relative,

23 counsel, or attorney of either party, or otherwise

24 interested in the event of this action.

25   IN WITNESS WHEREOF, I have hereunto set my

hand and affixed my seal of office at Cleveland,

Ohio, on this 18th day of January, 2023.

_____
Constance Versagi, Court Reporter and
Notary Public in and for the State of Ohio.
My Commission expires January 14, 2028.

## A

**A791971 (1)**
5:16
**abilities (1)**
15:1
**ability (1)**
53:5
**able (15)**
15:13;17:10;18:16;
49:10;50:1,22;52:1,
2;53:17,18;54:19,21,
23;73:15;85:1
**Absolutely (1)**
64:13
**access (4)**
53:13,15,16;72:20
**accident (5)**
17:10;50:14,19,23;
51:2
**accomplish (2)**
83:25;84:18
**account (1)**
53:13
**accurate (7)**
31:12;67:8;69:2;
71:8;72:10;73:8;
82:10
**accurately (1)**
53:6
**acquitted (3)**
27:25;79:18,21
**across (1)**
45:16
**Act (2)**
45:3;46:2
**activity (2)**
41:22;69:17
**actual (1)**
39:5
**actually (6)**
14:15;46:3;47:18;
48:7;75:4;82:21
**ADA (1)**
39:11
**addict (1)**
80:22
**additional (1)**
64:5
**address (2)**
13:22;16:18
**admission (8)**
12:1;32:2,8,13,19,
24;35:20;36:1
**admissions (2)**
31:20,21
**admit (3)**
32:16,19,25
**admits (2)**
33:3;35:21
**adoption (2)**
16:25;17:4
**adverse (2)**
61:17;63:22
**affect (1)**
53:4
**affidavit (4)**
42:5;62:17;64:2;
69:15
**affidavits (1)**
75:1
**affirmatively (1)**
17:6
**afraid (1)**
57:3
**again (9)**
6:15;15:18;30:23;
32:3;43:5;45:1;
51:10;70:4;76:3
**against (8)**
6:5,20;7:14;55:20;
56:12;67:14;71:19;
84:9
**age (1)**
4:6
**agency (1)**
78:3
**Agent (4)**
41:23;77:17,18,25
**aggravated (1)**
48:16
**ago (3)**
26:3,5;47:21
**agree (1)**
27:22
**agreed (2)**
37:3,4
**ahead (4)**
11:8,11;32:11;77:7
**Akron (6)**
16:3,5,16,18;44:4;
83:14
**alcohol (1)**
10:18
**alibi (1)**
28:25
**allegation (1)**
71:16
**allegations (1)**
66:5
**alleged (5)**
65:25;66:16;72:20;
73:23;75:2
**allegedly (4)**
65:5;66:6;67:5;
80:16
**allowed (2)**
25:15;33:18
**almost (1)**
73:3
**along (3)**
33:13;43:25;59:25
**aloud (1)**
32:11
**alright (1)**

70:7
**always (1)**
17:23
**Amanda (2)**
23:2,9
**amazing (1)**
84:7
**Amendment (7)**
26:20;27:1;60:17;
61:8;63:3;64:1;87:4
**ammunition (1)**
61:2
**amount (1)**
18:7
**answered (4)**
31:1;37:3;51:10;
70:5
**anus (1)**
8:21
**anymore (6)**
8:10;9:9;18:16;
57:1;63:1;70:3
**apart (1)**
68:2
**apologize (4)**
9:8;47:25;53:2;
58:23
**appeal (2)**
29:21;42:14
**appealing (1)**
18:20
**appeals (2)**
68:20,22
**appear (1)**
11:15
**appointed (2)**
72:2,3
**appointment (1)**
49:15
**appointments (1)**
49:17
**appreciate (3)**
4:24;56:1;85:13
**appropriate (1)**
27:4
**April (1)**
68:1
**aqua (2)**
49:13,15
**area (2)**
80:22;86:22
**argue (2)**
69:10;84:15
**arm (20)**
15:12;17:16,17,20;
18:13;20:20;47:11;
48:5,7,10,13,15,16;
49:23;50:11;51:7,9,
13;54:12,21
**arms (1)**
26:10
**around (2)**
20:3;76:9

**arrested (3)**
68:18;69:2;71:17
**Arts (1)**
16:7
**aside (3)**
31:15;36:23;37:5
**assault (17)**
28:20;29:7,9;
58:14;65:25;66:6,16;
79:3,6,7,8,10,21,22,
24,25;86:4
**assaulted (3)**
57:18;65:4,5
**assaulting (1)**
84:5
**assessment (1)**
20:14
**Assistant (1)**
76:17
**Associate's (3)**
15:25;44:5;83:6
**assume (2)**
5:8;55:9
**ATF (1)**
78:4
**attack (7)**
6:9,12;8:18;9:2,2;
10:9,13
**attempted (10)**
5:22,24;8:2;28:19;
29:7,8;79:8,20,24,24
**attempting (1)**
70:11
**attending (1)**
17:12
**attorney (12)**
4:13,15;26:19;
30:17;44:20;55:23,
24;56:23;59:23;60:4;
72:16;76:17
**attorneys (4)**
31:4;44:24;46:17;
63:11
**attorney's (1)**
5:1
**auction (1)**
54:17
**AUS (1)**
39:11
**AUSA (2)**
73:21;74:3
**auto (2)**
50:14;54:14
**available (1)**
4:25
**Avenue (1)**
22:19
**aware (6)**
55:15;56:18;57:8;
59:25;60:1;74:17
**away (3)**
19:4,16;38:14

## B

**back (29)**
10:8;14:3;15:18;
19:11;23:14;33:23;
34:10,19;43:2,5;
49:14,18;50:14;52:1,
20,22,25;62:10;64:7,
17;67:19;69:23;
70:12,22;71:2;80:12,
15;83:2;85:11
**background (5)**
18:23;26:17;27:6;
28:5;29:14
**bad (1)**
51:22
**barely (1)**
77:13
**base (1)**
17:19
**Based (3)**
68:13;74:18;87:3
**basic (2)**
16:13;43:18
**basically (1)**
15:19
**basics (1)**
13:21
**basis (6)**
37:25;41:25;71:6,
14,15,21
**Bates (1)**
63:6
**Beachwood (1)**
22:23
**bed (1)**
52:24
**behalf (1)**
64:25
**behavior (1)**
12:22
**bell (1)**
79:4
**below (1)**
32:15
**bend (1)**
86:14
**Benita (2)**
62:17;71:25
**besides (2)**
15:5;46:6
**better (2)**
9:16;17:22
**big (2)**
38:21;74:24
**bike (1)**
68:5
**Bill (2)**
13:9;17:3
**bills (2)**
36:9;55:14
**Bipolar (3)**

21:12,13,20
**birth (1)**
  11:23
**bit (5)**
  42:15;47:4;51:5;
  59:6;69:23
**black (1)**
  62:24
**blame (1)**
  10:12
**blizzard (1)**
  25:3
**blocks (2)**
  17:25;49:4
**Board (1)**
  82:25
**body (32)**
  9:7;33:8,22;34:9,
  16;35:9,18;37:7,10,
  11,14;38:2,3;39:5,7,
  8;40:14,16;41:21,23;
  42:1;51:24;57:12,24;
  58:9;61:13;68:14,15;
  77:11,12;82:2;86:8
**bond (1)**
  81:1
**born (1)**
  16:14
**Both (3)**
  50:2;52:13;58:11
**bothered (1)**
  43:13
**bothering (1)**
  40:21
**bothers (6)**
  8:21;52:11,13,14,
  15,15
**bottom (3)**
  12:7;60:9,10
**bought (1)**
  14:9
**brace (2)**
  48:14;50:7
**break (5)**
  5:11;48:5,15;
  50:12;51:9
**Briefly (1)**
  21:8
**bring (1)**
  60:2
**bringing (2)**
  7:23;66:13
**broad (2)**
  9:5;57:13
**broke (9)**
  15:12;17:15,17;
  18:13;20:19;51:6,13;
  54:12,20
**broken (2)**
  47:11;48:7
**brought (3)**
  33:6;64:25;67:1
**buffaloing (1)**

75:22
**bullet (1)**
  17:19
**bullets (1)**
  14:12
**Bullying (1)**
  75:23
**bunch (1)**
  14:12
**Burnside (5)**
  28:20,24;29:11;
  80:4,19
**business (2)**
  16:6;83:10
**Buspar (1)**
  25:12
**Butler (2)**
  29:15,17

## C

**C&T (1)**
  16:4
**Cain (3)**
  35:8,8;37:17
**Cain's (1)**
  41:21
**caliber (1)**
  61:2
**call (6)**
  28:21,25;42:11;
  46:10;59:20;80:21
**called (10)**
  9:10;10:2,3;39:12;
  40:6;45:22,22;49:11;
  50:6;77:23
**calling (2)**
  8:12;78:12
**cam (18)**
  9:7;33:22;35:9,18;
  38:2,3;39:5,7,8;
  40:16;41:21,23;42:1;
  61:13;68:14,15;
  77:11;82:2
**came (5)**
  48:10;49:12;65:25;
  67:16;69:20
**camera (11)**
  33:8,15;34:9,15,
  17;37:7,10,11,14;
  40:14;57:24
**cams (1)**
  77:12
**can (55)**
  7:1,11,17;11:9;
  17:22;18:7;20:12;
  21:8,22,23;22:2,3,17;
  26:23;27:18;28:14;
  29:25;30:4;31:15;
  32:6;34:7;35:18;
  36:4,8;37:5;42:1,15,
  17,22;43:21;46:5;
  48:24;49:4;50:19;

54:14,14;55:9;56:11;
58:12,17;62:3,15;
64:11;67:9;68:8;
75:13;77:6;83:1,4;
84:20;86:11,13,14,
17,19
**capital (1)**
  56:13
**Captain (4)**
  35:8,8;37:17;41:21
**car (11)**
  6:24;8:20;10:19;
  15:23;17:10;50:19,
  22;51:2,12;54:18;
  86:14
**care (7)**
  49:4;55:9,10,12,12,
  13;70:25
**career (2)**
  74:7;82:25
**carfentanil (1)**
  61:3
**cars (3)**
  15:14,15;54:16
**cartography (1)**
  16:8
**Casax (1)**
  24:17
**case (54)**
  4:22;25:23;26:16;
  27:25;30:5,17;33:13;
  35:14;38:18;39:25;
  40:22;42:3;43:6,19;
  44:18,21,23;45:10;
  46:24;47:10;52:7;
  57:11;61:16,20;
  63:22;65:15,23,24,
  25;66:3,7;67:8,12;
  68:2,19,25;71:17,19,
  24,25;72:7,9,14,18;
  73:1,5;75:9;77:3;
  80:13,24,25;81:12;
  82:1;87:4
**cases (5)**
  43:21;66:9;78:20,
  20,24
**catch (1)**
  34:12
**caught (5)**
  33:15;40:15;80:13
**caused (2)**
  48:17,18
**cavity (3)**
  57:12;58:9;86:8
**CCA (5)**
  22:7;23:4;25:18;
  26:7,12
**Center (2)**
  23:25;45:17
**certain (4)**
  39:19,19;54:8;
  58:24
**certainly (1)**

7:10
**certified (1)**
  4:7
**cetera (1)**
  32:16
**chance (2)**
  43:23;58:19
**Character (3)**
  28:8,10,11
**charge (4)**
  77:24;78:13;80:6,7
**Charging (1)**
  78:11
**cheap (1)**
  14:11
**cheated (1)**
  28:1
**check (2)**
  18:6,8
**checks (3)**
  18:4;53:12;54:1
**child (2)**
  17:18;80:21
**children (1)**
  19:15
**Christmas (2)**
  51:18,20
**Circle (7)**
  20:18,24;21:4;
  22:12,17;23:11,12
**circumstance (1)**
  81:21
**circumstances (1)**
  87:4
**Citizen (3)**
  45:17;68:3,4
**City (14)**
  4:14,15,16;6:5;
  9:19;45:15,20;55:21;
  56:7;13;64:22;83:13,
  14;84:10
**Civil (8)**
  40:2;41:13;55:21;
  56:9;61:16;63:22;
  71:20;83:22
**claim (4)**
  46:11;55:20;56:12;
  66:13
**claiming (5)**
  37:19,24;47:2,9;
  52:7
**claims (5)**
  7:14,23;68:3,18;
  83:20
**Clair (1)**
  13:10
**class (2)**
  13:14;50:25
**classes (2)**
  44:9,10
**CLE (1)**
  63:6
**clear (8)**

8:1;9:8;60:19;63:4,
14;66:15;67:5;70:2
**cleared (1)**
  50:5
**Cleveland (38)**
  4:14,15,16;6:5;8:9;
  9:19;14:1;16:15;
  17:21;18:15;20:18,
  25;21:2,9;22:16;
  23:3,8,9,19;29:18;
  43:10;45:15,20;47:7,
  8;49:3,15;51:8;52:9;
  55:21;57:13;61:1;
  64:23;80:4;81:15;
  83:13;84:6,10
**client (1)**
  85:1
**Clinic (17)**
  17:21;18:15;20:18,
  25;21:2,10;22:16;
  23:3,8,9,19;47:7,8;
  49:3,15;51:8;52:9
**close (1)**
  19:1
**clothes (3)**
  34:6,18,23
**CMHA (1)**
  19:3
**cocaine (1)**
  61:4
**Cold (1)**
  52:2
**College (4)**
  13:7;16:4,5;28:13
**coming (1)**
  81:6
**committed (1)**
  66:6
**Community (1)**
  16:4
**company (3)**
  54:8,11;55:11
**comparing (1)**
  38:24
**compel (1)**
  76:19
**complained (1)**
  72:15
**complaint (14)**
  6:22;18:22;40:19;
  41:12,25;45:7,17;
  46:1,11;55:23;67:14;
  71:5;80:1,8
**completely (1)**
  60:18
**complications (3)**
  47:12;50:3,4
**comply (6)**
  5:22,25;8:3,6;
  81:17,18
**compound (4)**
  32:21;33:1,4;35:21
**computer (1)**

38:19
concerned (3)
40:23;68:3,4
concerns (1)
21:9
concluded (1)
87:13
concrete (1)
14:21
condition (1)
47:19
conditions (1)
25:22
conduct (1)
76:24
confirmed (1)
82:6
confusing (1)
65:20
Conneaut (1)
5:19
connecting (1)
24:7
connection (2)
64:24;75:9
consecutive (1)
79:15
constituted (1)
71:19
contacted (1)
45:14
contend (1)
16:24
continuances (1)
72:9
continue (1)
72:18
continued (1)
74:17
continuous (1)
66:18
control (1)
60:24
conversation (1)
85:14
conversations (2)
44:19,20
convicted (1)
80:2
cool (3)
44:2;50:11;61:25
copy (5)
31:10;41:12;62:13;
71:5;72:7
Corisca (1)
57:14
Correctional (4)
5:18;6:3;23:20,25
correctly (1)
32:22
Counsel (7)
27:3;61:14;63:13;
72:2,2,3,10

counselor (1)
23:4
counselors (2)
23:16,18
counted (1)
81:4
County (8)
22:16;25:11;27:15,
15,17,23;78:20,22
couple (6)
25:19;62:23;65:3;
67:19;85:16,22
course (4)
26:25;55:23;65:8;
82:22
court (9)
4:22;5:5;42:10;
43:7;46:18;48:2;
68:20,22;73:6
court's (1)
27:14
cousin (1)
80:22
cousin's (1)
80:23
COVID-19 (1)
74:19
CPRB (1)
45:21
Craig (3)
4:17;64:22;87:5
crazy (1)
51:7
credit (2)
12:15,19
criminal (9)
26:17;27:5;28:18;
38:17;44:21;71:24;
75:9;77:3;79:10
CROSS-EXAMINATION (2)
4:9;64:19
cruel (3)
47:17,24;56:8
current (2)
8:24;13:22
currently (4)
15:12,24;10;44:9;
68:19
custody (2)
16:24;60:24
customer (4)
13:7,16,17,18
cuts (1)
68:15
Cuyahoga (6)
22:16;25:11;27:15,
23;78:20,22

**D**

dad (1)
28:12
damage (7)

17:20,23;24:19;
47:14;48:20;51:7;
70:13
damages (5)
47:3;52:7;53:9,10;
54:1
damaging (1)
79:10
date (7)
11:2,3,23;12:1,5,
12;82:7
dated (1)
51:16
daughter (4)
16:22,23;80:16;
81:9
daughters (1)
17:5
day (12)
8:22;24:22,23,24;
25:1,4;47:16;49:12;
50:25;68:20,21,22
daylight (2)
9:5;57:13
days (5)
12:10,11;13:9;
52:24;81:8
day-to-day (1)
71:1
Dea (5)
28:8,10,11;78:5,6
deal (4)
7:21;16:9;20:6;
58:16
dealing (2)
6:17;48:22
Deborah (2)
66:2;69:5
December (1)
51:17
Defendant (1)
35:25
Defendants' (6)
11:13;30:8;40:24;
42:20;62:8;63:16
defender's (2)
72:4;76:18
Defense (3)
67:19;71:4,12
Definitely (5)
21:19;58:6;73:2;
84:25;85:5
Degree (3)
15:25;16:11;83:6
delay (1)
77:1
Denied (1)
32:18
Department (2)
4:16;16:7
dependent (1)
82:13
depo (1)

87:3
deponent's (1)
27:10
deposed (1)
5:3
deposited (1)
54:1
deposition (7)
4:2,21;5:2;43:8,11;
70:11;87:13
depression (3)
21:12,12,14
deprivation (2)
71:20;83:22
describe (2)
15:9;44:16
described (1)
41:22
details (1)
29:13
detained (1)
17:1
Detective (38)
4:18;6:6,19;7:14;
8:4,7,11,19;9:4,10;
10:1,8,10,14;17:1;
21:18;25:23;29:15,
17;30:2;33:7;37:18;
42:4;62:18;65:7;
66:6;67:7,14;76:18,
22;77:17,23;78:1;
80:5;84:4,9;85:23;
86:6
diagnosed (3)
21:15,21;49:3
different (8)
23:15;25:13;35:3,
3;54:10;57:7;66:9;
83:15
difficult (1)
60:19
disability (5)
18:2,4,14,17;49:18
disabled (2)
15:12;17:15
discovery (9)
30:5,16;32:14;
36:16,24;38:10,20;
39:4,9
discussing (2)
27:20;64:2
Discussion (2)
43:1;70:21
disk (7)
39:4,9,9,18,19,20;
41:21
disks (2)
38:19;39:21
dismissal (2)
68:25;71:18
dismissed (3)
68:21;78:25;80:14
dismissing (1)

42:14
Disorder (2)
21:11,12
disputed (1)
55:18
District (4)
19:16;73:6,7;84:6
Division (1)
73:7
DNA (2)
17:3;19:14
docket (2)
72:6;73:5
doctor (8)
22:7,7;23:5,10,22,
23;33:19;57:17
doctors (7)
7:7,8;14:9;3;
21:24;22:1;23:17;
47:5
doctors' (1)
22:25
document (4)
11:16;62:21;71:7,
11
documents (1)
63:5
dog (10)
33:8,17,17,24;34:1,
2,19,22;37:16;39:18
dog's (1)
39:20
dollar (1)
36:9
done (9)
15:4,22;43:8;
55:18;70:4;76:1,11;
83:16;87:9
double (1)
47:22
down (6)
5:7;12:7;19:13;
59:4;86:21,22
downstairs (1)
34:18
Dr (1)
23:2
drafted (1)
55:23
drive (2)
54:16;62:24
driving (1)
59:4
drop (4)
17:9;50:16,17,21
dropping (3)
17:23;51:25;54:16
drove (1)
51:24
drug (4)
36:12;61:2;80:17,
22
drugs (7)

10:19;24:10;53:2,
4;78:7;85:3;86:7
**dude (5)**
33:17;34:10,19;
37:16;68:4
**due (7)**
10:13;17:20;27:9;
47:14;50:7,8;61:17
**duly (1)**
4:6
**during (5)**
25:3;33:5;35:22;
72:13;73:1
**DVD (1)**
68:8

### E

**earlier (3)**
59:14;61:10;78:15
**Early (1)**
82:5
**earned (3)**
12:15,18,20
**earning (1)**
82:15
**easier (1)**
86:19
**East (6)**
9:6,21;13:25;14:6;
60:25;65:9
**Eastern (1)**
73:7
**economic (1)**
53:25
**Eddy (3)**
9:18,21;10:7
**Eden (4)**
19:10,17,18;20:2
**E-D-E-N (1)**
19:17
**eight (5)**
28:19;29:5,6;
79:12;80:9
**either (2)**
49:25;82:7
**eligibility (1)**
11:2
**Elimination (1)**
45:2
**Ellis (10)**
4:2,5,11;5:14;
11:15;27:18;62:13;
64:21;71:2;85:13
**Ellises (1)**
27:13
**else (3)**
25:12;52:3;59:4
**email (1)**
74:5
**emotional (1)**
24:7
**employee (1)**

54:7
**employment (3)**
82:13,20;83:9
**enactment (1)**
57:10
**end (1)**
65:21
**enforcement (1)**
6:13
**engaging (1)**
69:16
**enough (3)**
49:19;59:9;84:24
**enrolled (1)**
44:10
**entrepreneurial (1)**
54:9
**environment (2)**
70:15;80:17
**equal (2)**
38:8;56:6
**Erie (3)**
5:18;6:3;23:20
**Especially (2)**
42:10,10
**et (1)**
32:16
**Euclid (1)**
22:19
**even (17)**
6:14;17:2;29:12;
35:4;36:7;47:22,23;
48:13;49:10;68:14;
78:6;79:25;80:3,6,6;
85:5;86:13
**events (1)**
76:15
**eventual (1)**
71:18
**Everybody (2)**
20:7;58:25
**everywhere (1)**
20:6
**evidence (3)**
40:15;65:13,22
**exactly (2)**
31:17;41:4
**examined (1)**
4:7
**example (3)**
27:17;31:25;81:14
**except (1)**
5:5
**executed (1)**
42:4
**executing (4)**
65:8;72:12,25;
74:10
**Exhibit (24)**
11:12,13;30:6,8,
15;36:23;37:6;40:19,
24;41:10;42:17,20,
23;43:15;44:1;

4,8,14;63:7,16;65:16;
67:19;71:4
**exhibits (1)**
60:2
**expected (2)**
11:2;12:4
**experience (1)**
28:17
**experienced (2)**
52:4;59:6
**expert (1)**
60:1
**explain (5)**
17:22;73:12,19;
76:22;77:6
**explained (1)**
74:19
**Explorer (1)**
62:25
**extra (1)**
72:7

### F

**face (2)**
57:22;86:18
**facility (1)**
22:9
**facing (1)**
74:8
**fact (4)**
18:23;36:17;69:4,9
**facts (9)**
13:21;16:13;27:20;
30:4;41:24;43:19;
61:20;63:23;64:2
**failed (1)**
8:6
**failure (5)**
5:22,24;8:3;81:17,
18
**fair (2)**
27:22;84:24
**fairly (1)**
27:10
**fake (2)**
18:20;72:21
**fall (1)**
68:2
**falling (2)**
17:24;51:25
**false (5)**
35:24;58:4;62:19,
20;63:9
**familiar (2)**
41:17;48:20
**family (2)**
14:11;59:18
**far (2)**
31:13,14
**faster (1)**
72:17
**fault (1)**

77:2
**February (6)**
4:23;11:3,6;12:5;
19:8;43:11
**Federal (17)**
16:25;18:3;22:9;
38:11,17;42:10;55:8;
65:23,24;67:8;71:17,
24;72:4;75:9;76:18;
77:25;78:13
**federally (2)**
77:24;78:11
**feds (4)**
38:11;42:12;53:15;
67:17
**feeding (1)**
34:2
**feel (5)**
15:14,21;28:1;
29:2;78:12
**feels (1)**
85:4
**fell (1)**
51:13
**felonious (12)**
28:20;29:7,9;79:2,
5,7,8,10,21,22,24,25
**felony (1)**
80:24
**fentanyl (1)**
61:3
**Fentanyl-related (4)**
32:21;33:1,4;35:21
**few (9)**
16:19;36:20;45:14;
53:12;54:18;57:4,20;
65:1;70:9
**field (1)**
13:15
**Fifth (16)**
6:8;7:19,25;19:16;
26:20;27:1;60:17;
61:8,18;63:3;64:1;
70:6;81:22;84:2,6;
87:3
**fight (1)**
61:23
**figure (1)**
7:22
**file (4)**
18:17;38:17;59:16,
17
**filed (7)**
4:17;6:21;18:18;
45:7;67:13;80:1;84:9
**find (6)**
7:2;27:12;35:7,11;
39:22;59:22
**fine (1)**
56:16
**finish (2)**
50:22;73:17
**finished (1)**

85:15
**fire (1)**
72:16
**fired (2)**
29:19;73:3
**Firemen (3)**
23:3,8,18
**first (13)**
4:6;12:14,23;28:5,
9,17;29:1;47:12;
51:2;60:7;65:10;
82:18;83:3
**five (13)**
12:10,11;15:8;
19:2;23:13;27:24;
28:19;30:11;58:18;
79:2,5,15,17
**fix (2)**
14:17;15:15
**fixed (2)**
14:8,20
**fixing (1)**
14:14
**Flask (3)**
46:9,13,18,22
**flip (1)**
62:15
**follow (1)**
20:5
**follows (1)**
4:8
**follow-up (2)**
7:4;57:6
**follow-ups (2)**
35:19;85:22
**fond (1)**
33:25
**food (1)**
18:14
**foot (3)**
47:12;50:4,7
**footage (2)**
39:5,8
**force (1)**
86:13
**Ford (1)**
62:24
**forever (1)**
74:13
**forgot (2)**
23:10;50:6
**formality (1)**
60:21
**format (1)**
47:25
**forms (1)**
71:5
**forward (3)**
13:18;20:9,11
**found (17)**
10:19;33:18,20,25;
34:20,24,25;36:5,13;
37:19,24;38:4,7;

39:15;65:14;69:5;
86:7
**fragment (1)**
17:19
**Frank (1)**
46:9
**freaks (1)**
8:22
**freedom (1)**
28:2
**freeway (1)**
9:18
**friend (1)**
14:8
**friends (2)**
14:16;59:18
**front (3)**
20:5;30:24;31:9
**full (2)**
15:13;53:18
**Furnace (2)**
14:13,21
**further (1)**
87:5

## G

**Gabapentin (1)**
25:14
**Garden (1)**
19:17
**gave (4)**
44:17;47:4;49:3;
74:15
**GED (4)**
13:2,3,4;17:8
**General (3)**
27:5;29:14;74:18
**Geographic (3)**
15:25;44:7;83:7
**Geography (1)**
16:7
**girl (2)**
34:5,23
**girlfriend (1)**
19:1
**girl's (1)**
34:12
**GIS (3)**
44:6,8;83:16
**given (3)**
44:21;46:6;61:19
**giving (2)**
25:20;34:2
**Glencoe (3)**
9:6;57:14;58:9
**Global (1)**
44:5
**goes (4)**
29:21;34:17,17,20
**Good (10)**
4:11,12;12:10,11,
22;13:9;15:14;40:13;

**Gotcha (2)**
50:21,21
**government (5)**
18:3;46:8;72:18,
19;73:21
**government's (1)**
59:17
**grab (1)**
35:2
**grabbed (1)**
86:16
**graduate (2)**
17:7,11
**Great (1)**
22:4
**gross (1)**
79:11
**ground (4)**
5:2;7:1;57:22;65:4
**grounds (2)**
6:1;63:18
**GSI (3)**
79:3,16,17
**guess (9)**
6:12;8:1;11:18;
14:9;15:8;24:6;
37:21;41:6;56:19
**guessing (1)**
24:13
**guilty (1)**
81:9
**guy (5)**
14:25;46:9;77:19,
25;78:13
**guys (2)**
14:17;15:16

## H

**half (1)**
48:12
**hand (5)**
16:19;50:10,11;
86:6,24
**handcuffed (2)**
65:6;86:16
**handcuffing (1)**
6:24
**handed (3)**
30:14;41:10;62:13
**handled (1)**
55:7
**hands (1)**
67:6
**Hang (1)**
82:3
**happened (8)**
10:6;14:10;28:15;
30:1,3;51:23;53:19;
67:6
**happening (2)**
4:23;67:21

**harass (1)**
9:11
**harassed (1)**
67:16
**harassing (2)**
6:21;29:17
**hard (2)**
38:13;56:11
**Harder (1)**
38:14
**hat (1)**
57:17
**head (1)**
76:9
**healed (1)**
17:20
**healing (2)**
48:9,13
**health (26)**
7:6;19:25;20:2,13,
14,18,19,24,24;21:4,
5,7,9;22:12,12,17,21;
23:10,11,12;24:18,
20;55:5,9,10,12
**hear (2)**
7:10;86:18
**hearing (8)**
28:23;53:24;54:6;
69:21;74:6,16;75:21;
77:20
**help (3)**
19:12;20:2;70:1
**helping (3)**
51:12,14;59:19
**hereinafter (1)**
4:7
**heroin (1)**
61:3
**high (3)**
17:7,9,12
**HIPAA (1)**
22:4
**hire (1)**
53:20
**history (2)**
78:6,10
**hit (2)**
50:10,11
**holding (1)**
17:1
**holes (1)**
14:20
**home (3)**
15:10,10,24
**homeless (2)**
19:19;82:12
**homes (1)**
15:2
**hope (1)**
85:19
**hopefully (2)**
71:3;83:1
**hoping (1)**

65:2
**hospital (2)**
26:11;50:18
**House (13)**
13:9;14:4,8,14,17,
19,20,23;20:5;49:13;
59:19;67:16;80:23
**houses (2)**
15:15,16
**hurt (2)**
15:17;58:21
**hurting (1)**
81:9
**HYH (1)**
62:25

## I

**ice (1)**
51:14
**idea (4)**
21:8;26:23;29:14;
84:17
**identification (5)**
11:14;30:9;40:25;
42:21;62:9
**identified (1)**
59:16
**illegal (4)**
34:16;35:23;40:16;
86:8
**illegally (3)**
6:14;8:20,21
**important (1)**
85:6
**imposed (1)**
43:7
**imposition (1)**
79:11
**impossible (1)**
37:23
**inability (1)**
53:11
**inappropriate (1)**
61:19
**incarcarees (1)**
13:3
**incarcerated (5)**
26:24;27:20,23;
52:19;78:16
**incarceration (1)**
27:21
**incarcerations (1)**
78:19
**incident (4)**
9:23;24:8;41:20;
86:5
**incriminate (7)**
6:2;26:21;27:2;
35:17;60:16;63:18;
81:25
**indicated (3)**
82:10;83:6,19

**inference (2)**
61:17;63:22
**info (1)**
22:6
**informant (4)**
74:22,25;75:2;
77:11
**informants (13)**
65:17;69:20;72:20;
73:23;74:1,13;75:4,
13,16,19,20;77:15,20
**information (16)**
9:13,15;12:7;16:1;
21:23;44:7;58:4,5;
62:20;66:14,25;
74:15,23,25;77:8;
83:7
**injured (2)**
52:18;80:1
**injuries (10)**
47:2,8,9;50:9;52:6,
21,22;53:9;54:20;
55:6
**injury (4)**
48:16;50:8;52:11;
53:23
**insane (1)**
51:24
**inside (3)**
86:6,7,23
**instances (1)**
58:24
**Institute (1)**
23:21
**Institution (2)**
5:19;6:4
**instruct (2)**
60:12;61:5
**instructing (1)**
63:14
**insurance (5)**
6:15,23;10:18;
55:5,11
**I-N-T-E-G-E-T-A (1)**
24:21
**Integretol (4)**
24:15,16,21,25
**integrity (3)**
33:13;35:5;37:21
**intend (1)**
82:15
**interaction (1)**
10:6;49:24
**interactions (1)**
49:25
**interrogatories (9)**
30:21,21;31:3,16,
19,24;55:19;59:14;
71:9
**Interrogatory (6)**
43:17;53:8;55:1;
60:6,9,20
**Intervention (1)**

45:2
interview (2)
73:23;74:13
interviewed (3)
45:9;46:3;74:1
into (4)
29:13;45:8;47:3;
86:18
introduce (1)
72:8
introduced (1)
64:21
investigate (1)
56:19
invocation (3)
63:25;87:3,7
invoke (5)
26:20;27:1;60:16;
61:8;63:2
involved (1)
78:25
involvement (2)
21:17;30:1
involves (1)
83:17
involving (3)
69:17;71:2;83:16
issue (2)
61:20;63:23
issues (5)
25:22;27:17;47:14;
49:23;71:1
items (1)
69:19

**J**

jack (1)
15:23
jacket (3)
33:21;34:25,25
Jackson (1)
46:10
Jail (8)
22:16;28:1,7;
36:21;47:15;80:20;
81:1;85:2
January (2)
4:3;51:18
Jay's (1)
54:14
Jeffrey (5)
4:18;6:20;62:18;
77:17;85:23
JFK (3)
44:3;50:16,17
job (6)
15:16,20;23:15;
53:11;83:1,4
jobs (4)
15:14,15;54:18;
83:15
John (1)

17:14
join (1)
87:6
journalized (2)
42:14;68:24
judge (25)
5:6;28:12,12,20;
29:11;33:12;42:7;
46:14;62:17;63:9;
65:19,21,23;66:2;
68:10,11;69:4,6,11;
71:25;73:14,17;
74:17;80:3,19
judges (1)
46:16
July (2)
25:5,8
June (3)
12:1;25:5,8
jurisdictions (1)
27:14
jury (3)
5:6;79:13,20
justice (2)
28:18;45:16

**K**

K-9 (4)
35:5;37:16,16;
41:21
Keep (2)
30:13;70:2
Kennedy (1)
17:14
kept (1)
18:15
kid (2)
26:1;50:15
kidnapping (6)
27:24;29:8;79:3,
11,16,17
kids (5)
7:8;16:20,20;19:5;
49:5
kill (1)
26:9
kind (4)
15:2;19:3;40:23;
54:1
knew (1)
67:4
knowingly (3)
62:19,19;69:13
Kopchak (9)
33:14;34:6,11,12,
17;42:11;77:17,18;
78:12
Kopchak's (1)
41:23

**L**

labeled (1)
63:6
lady (2)
51:12,14
Lake (3)
5:18;6:3;23:20
Lakeshore (1)
49:16
large (1)
17:18
last (7)
18:23;21:7;27:11;
28:24;29:24;42:16;
62:1
later (2)
11:9;61:24
Law (4)
4:15;6:12;56:6;
69:8
lawful (2)
4:6;81:18
lawsuit (27)
4:17,19;6:5,17,19;
7:24;24:9;39:25;
40:2;47:3;49:6,7;
63:24;64:24;66:20;
67:2;71:6,14,15,22;
76:24;77:1;83:18;
84:1,8,13,19
lawsuit's (1)
76:6
lawyer (16)
17:3;27:25;28:6;
36:25;39:14;53:25;
56:14;57:5;70:7;
73:12,14,18,22;
74:12;76:17,23
lawyers (6)
7:20;9:12;66:11;
84:15,22,23
laying (1)
14:22
lead (1)
9:23
lean (2)
86:17,17
least (1)
71:21
leave (4)
11:9;14:4;22:24;
34:11
LECI (1)
23:21
led (1)
39:25
left (3)
14:11;34:3;69:14
legal (1)
57:15
legislative (1)
57:9
less (1)
75:8

letting (1)
62:15
license (3)
6:15,23;10:17
lied (3)
65:13,14;69:13
lies (1)
69:13
life (6)
19:11,12;20:9;
26:25;49:18;52:4
life-threatening (1)
52:21
lifetime (1)
83:15
light (1)
87:7
lines (1)
59:25
list (1)
78:24
listed (1)
69:19
listen (2)
86:11,11
little (10)
23:6;37:15;42:15;
43:22;47:4;50:7;
51:3,5;59:6;76:9
live (4)
14:6;16:16;47:16;
49:19
lived (2)
13:25;16:17
living (1)
82:15
located (3)
19:21;22:18;60:25
locations (1)
16:9
long (6)
14:6;26:12;70:13;
72:23;74:4,14
look (8)
30:18,25;31:25;
36:11;38:1;42:1;
62:14;72:6
looked (3)
38:17;39:4;59:14
looking (8)
31:6;34:7;37:13;
38:6,7;39:2;41:11;
83:20
looks (2)
41:17,18
Lorain (1)
25:4
lost (3)
7:7;16:23;53:11
lot (12)
14:21,25;15:17;
17:24;23:12;26:11;
27:13;29:4;48:18;

52:12,14;83:15
luck (1)
20:10
lunch (1)
85:18
lying (3)
65:16,18,24

**M**

Madison (2)
19:22,22
mainly (1)
47:5
maintain (1)
61:16
maintained (1)
73:5
making (4)
4:24;52:2;58:1;
66:5
malicious (1)
83:21
management (2)
21:3;43:7
manufactured (1)
67:15
many (7)
15:7;16:20;18:11;
23:24;27:12;70:5;
72:19
mapping (1)
16:10
maps (1)
16:8
March (6)
12:13;19:8;43:9;
65:11;85:23;86:1
marijuana (1)
68:18
mark (3)
11:8,11;40:19
marked (11)
11:13;30:6,8,14;
40:24;42:20;43:14,
14;62:8;63:7;71:12
married (2)
18:24,25
Marshall (2)
24:1;25:18
Martin (2)
46:9,13,18,22
mask (1)
26:8
matching (1)
61:11
matter (1)
59:5
mattress (1)
47:23
may (8)
27:16;32:16,20,25;
42:4;60:23;63:18;

64:6
maybe (5)
10:3;48:11;55:18;
78:22,23
**Mayor (1)**
46:9
**mean (15)**
5:24;26:1;37:3;
46:19;48:19;51:3;
54:3,19;57:12;73:9;
80:4,5;81:2;82:23;
83:13
**mechanic (4)**
53:17;54:12,14,15
**medical (2)**
22:5;55:14
**medication (4)**
21:5;22:8;25:16,21
**medications (2)**
17:25;25:24
**meds (2)**
25:13;47:23
**meet (2)**
17:2;85:22
**mental (10)**
7:6,6;8:13;20:14;
21:3,9;24:8,18,19;
52:12
**mentally (1)**
52:16
**mention (1)**
65:3
**mentioned (1)**
57:20
**messed (2)**
35:11;50:12
**messing (1)**
33:15
**met (1)**
77:19
**middle (4)**
9:5;10:21;32:24;
60:10
**might (8)**
6:2;22:23;40:10;
45:11;48:13;50:11,
11;60:2
**mind (14)**
8:15;18:24;19:7;
32:1,8;41:11;43:20;
57:10;59:2;62:14;
63:3;66:22,23;70:16
**mine (1)**
14:8
**minor (4)**
51:4;52:20,22;
53:17
**minute (5)**
30:18;36:13;42:23;
52:23;60:7
**minutes (5)**
30:11;58:18;64:12;
67:20;85:7

**misdemeanor (2)**
78:23;80:25
**miss (1)**
25:2
**missing (1)**
80:15
**mom (2)**
19:2;28:13
**moment (1)**
70:25
**moments (1)**
70:9
**mom's (1)**
81:10
**money (3)**
36:12;53:9;85:6
**Monstercom (1)**
82:25
**month (8)**
12:14,23;18:8;
48:11,12;55:3;82:7;
83:3
**months (8)**
24:2;26:13,13,14;
71:16;73:25;74:8,8
**more (13)**
15:22;16:13;20:22,
22;23:7;25:19,25;
52:12;53:21;54:9;
70:14;71:3;85:6
**Morice (11)**
4:17;41:4;64:6,7,
11,20,22;70:24;85:7,
13;87:6
**morning (2)**
4:11,12
**most (1)**
25:3
**mother (1)**
19:5
**mouth (1)**
49:20
**move (13)**
19:13;20:8;23:15;
29:25;30:4;36:15;
42:17;52:1,3;57:7;
58:8;59:11;64:4
**moving (2)**
20:10;54:25
**much (6)**
8:14;12:18;54:20,
21,23;81:6
**multiple (1)**
14:10
**muscle (1)**
24:18
**Mushkat (3)**
23:2,8,18
**must (1)**
51:22
**myself (9)**
6:2;15:18;26:21;
27:2;35:17;49:14;

60:16;64:21;81:25

## N

**name (16)**
4:13;5:14;24:1,3,
14,17;27:10,11,11;
28:9;31:7;35:8;46:2;
47:4;64:22;74:3
**names (4)**
22:25;23:6;77:13,
14
**narcotics (3)**
7:2;33:8;37:16
**nature (1)**
83:23
**near (2)**
60:9,10
**necessarily (1)**
27:16
**need (7)**
5:11;18:17;47:20;
52:8;61:6;74:24;
82:17
**needed (1)**
73:12
**negligence (1)**
56:21
**neighborhood (1)**
80:17
**nerve (14)**
17:20,23,25;24:19,
19;47:14;48:19,20;
49:4,6,7;50:8;51:1,7
**nerves (1)**
50:12
**neuropathy (3)**
47:14;49:22;50:8
**new (1)**
14:20
**newspaper (1)**
46:19
**next (7)**
4:17;32:15;53:8;
55:1,19;76:12;82:7
**niche (1)**
83:10
**nightmare (1)**
76:3
**Nobody (2)**
20:6;37:20
**Nodding (1)**
17:6
**none (3)**
7:3;57:17,17
**Northeast (1)**
23:25
**Northern (1)**
73:6
**notarized (4)**
31:5,5,24;36:25
**notary (1)**
31:9

**note (1)**
32:9
**notice (1)**
33:10
**number (5)**
5:16;47:1;55:1;
72:9;85:5
**numbness (1)**
51:3
**numerous (1)**
7:3
**nurse (1)**
26:8

## O

**objection (7)**
32:10,14;60:12,15;
61:5;67:9;84:20
**occasions (4)**
73:1,2;75:8;78:16
**occupation (1)**
15:20
**occur (1)**
80:18
**ODRC (1)**
11:20
**off (19)**
9:18;12:22;16:19;
19:22;30:11;42:22,
24;43:1;62:3,6;
64:14;68:15;70:17,
19,21,25;81:7;85:8;
87:11
**offender (1)**
74:7
**Office (4)**
45:23,24;72:4;
76:18
**officer (1)**
19:3;35:5;81:19
**officers (3)**
8:6;10:2,7
**officer's (1)**
40:16
**officials (1)**
46:8
**Ohio (7)**
5:19;14:1;16:15;
23:25;62:25;73:7;
78:21
**old (5)**
16:22,22,23;28:14;
51:14
**Omissions (3)**
69:6,12,14
**omitted (1)**
69:4
**once (2)**
25:2;82:15
**one (45)**
10:1;15:5,20,21;
17:5;18:23;20:3;

22:23;23:2,11;24:20;
28:24;29:20;30:20,
20;31:7,15,25;32:15;
33:9;12;34:21;36:6;
38:5,24;42:16;44:16;
53:24;54:11;57:6;
58:19,25;62:1;63:21;
66:13,23;67:1;75:12,
14,18;77:11,11,23;
84:4;85:5
**ongoing (1)**
32:14
**only (5)**
18:12;33:4;35:21;
58:25;73:14
**open (1)**
68:19
**opinion (2)**
56:3;84:17
**opportunity (2)**
30:25;73:22
**opposed (1)**
43:8
**OPS (6)**
45:19,21;46:1,6,10,
22
**oral (2)**
44:17,22
**Order (2)**
74:18;81:18
**originate (1)**
51:1
**others (2)**
15:22;22:14
**Otherwise (1)**
43:12
**out (41)**
6:23;7:23;8:20,22;
10:20;12:12;14:24;
15:18;17:9,25;19:9;
20:3;25:16;28:1;
31:25;34:3;35:2;
37:13;40:21;46:1;
48:4,10;50:16,17,18,
20,21,24;52:1,20,23;
55:15;56:4;57:25;
59:22;65:25;69:14;
78:19;82:16,18;83:3
**outside (1)**
46:17
**over (26)**
5:2;6:22;8:19;9:11,
17;14:16;15:8;26:24;
30:12;31:4;38:7,25;
44:13;45:6;65:10;
68:5;70:4,4,4;72:17;
77:14;85:24;86:14,
14,17,17
**own (2)**
33:14;40:16

## P

**page (16)**
31:6,8,18;32:1,1,
22,23,25;35:20;44:1,
13;55:2;60:8,10;
67:25;68:1
**paid (1)**
55:16
**pain (15)**
18:1;21:3;47:15,
16,24;48:17,18,19,
23;49:6,7;50:25;
51:1;53:21;70:12
**painful (3)**
48:23;65:2;70:14
**pains (1)**
52:14
**painted (1)**
14:19
**painting (1)**
14:18
**pandemic (2)**
74:19;77:4
**panic (7)**
6:9,12;8:18;9:2,2;
10:9,13
**pants (3)**
86:7,7,20
**paper (8)**
38:5,5,6,8,21,24;
39:2;66:24
**papers (1)**
38:25
**paragraph (3)**
67:25;68:16,17
**paraphernalia (1)**
61:3
**parental (2)**
80:20;81:11
**parole (4)**
11:2;81:3,5,6
**part (9)**
25:3;39:19;71:14,
14,21;77:1;82:13;
83:1;84:12
**particular (2)**
42:19;72:6
**partner (1)**
33:14
**pass (1)**
33:13
**passed (1)**
65:16
**past (2)**
25:22;58:24
**patches (1)**
83:14
**Pearson (9)**
62:17;65:19,21,23;
68:10,11;69:7,12;
71:25
**people (10)**
15:15;40:9;53:20;
54:10,24;59:15,18;

78:11;84:5;85:2
**people's (1)**
85:1
**Perc (1)**
36:20
**Percocet (1)**
61:1
**Percocets (4)**
33:18,19;36:18,18
**period (2)**
24:24;54:8
**permission (1)**
81:10
**person (1)**
44:18
**personal (2)**
36:14;48:3
**personally (1)**
37:11
**physical (10)**
6:25;7:6;47:1,6,6,
8,9,11;52:5,13
**physically (3)**
9:5;52:15;84:5
**picking (1)**
31:25
**picture (12)**
33:20;34:20;35:4;
36:17,20;37:15,18,
18,20,22;39:15;56:5
**pictured (1)**
11:21
**pictures (3)**
37:17;38:9;39:23
**piece (2)**
38:4,5
**pill (1)**
24:19
**pills (1)**
61:1
**pink (1)**
36:18
**place (1)**
10:22
**plaintiff (2)**
33:3;35:20
**plaintiff's (3)**
33:5;35:22,23
**plan (3)**
13:17;82:19,24
**planned (1)**
63:11
**plans (2)**
19:8;82:14
**plant (5)**
7:2;36:7;37:22;
38:13;85:2
**plastered (1)**
14:19
**plastering (1)**
14:18
**plate (2)**
48:9;62:25

plates (2)
48:10,12
**play (1)**
51:4
**playing (1)**
51:6
**plead (6)**
6:7;7:19,25;70:5;
81:22;84:2
**pleading (1)**
61:17
**please (2)**
7:18;44:16
**pled (1)**
66:19
**plenty (1)**
35:12
**plumbing (1)**
14:22
**pm (1)**
87:13
**pocket (2)**
35:13;39:23
**Police (5)**
8:9;20:5;29:18;
59:16;81:19
**policy (1)**
57:9
**pose (2)**
60:11,15
**Positioning (1)**
44:5
**possession (3)**
32:20;33:1;60:24
**Post-traumatic (1)**
21:11
**PREA (11)**
6:21;18:21;44:25;
45:2,7,9;46:2,6,22;
67:13;80:7
**predicated (1)**
35:24
**pre-existed (1)**
49:23
**pre-existing (1)**
48:16
**prefer (1)**
8:15
**preliminary (2)**
28:22;77:20
**prescribed (2)**
25:6,6
**prescription (3)**
24:10;53:1,3
**present (3)**
51:18,20;62:5
**presented (1)**
31:12
**pretrial (1)**
77:21
**pretty (1)**
19:1
**previous (1)**

78:19
**primary (1)**
15:9
**prime (1)**
28:16
**Prince (2)**
23:2,9
**printout (1)**
11:20
**prior (5)**
4:22;25:22;78:16;
85:23;86:1
**Prisoner (2)**
45:2;56:9
**private (1)**
72:1
**privilege (1)**
87:8
**probably (9)**
5:1;9:15;25:19;
51:17;53:16;55:17;
66:11;72:21;83:2
**probation (3)**
79:1;81:2,3
**problem (2)**
29:20;66:18
**proceeding (1)**
48:2
**proceedings (2)**
4:22;43:10
**process (3)**
18:20;46:18;70:2
**profession (1)**
15:10
**Professional (2)**
45:23,24
**program (6)**
12:10,12;13:6,7;
19:20;82:11
**programs (2)**
12:9;23:24
**proper (2)**
57:18;58:2
**properly (2)**
49:12;56:19
**properties (1)**
15:4
**prosecution (1)**
83:21
**prosecutor (3)**
39:11;73:20,21
**protection (1)**
56:6
**provided (1)**
30:16
**psycho (1)**
24:8
**psychological (4)**
47:2,5,10;52:6
**PTSD (2)**
21:13,15
**Puin (20)**
4:10,13;27:3,9,11;

41:9;42:22;43:4;
61:14;62:3,12;63:13,
19;64:9;70:17;82:5;
85:15,19,21;87:1
**Puins (1)**
27:12
**pull (2)**
9:11;35:2
**pulled (7)**
9:17;45:6;65:10;
68:5;85:24;86:20,22
**pulling (1)**
6:22;8:19
**punishment (3)**
47:17,24;56:8
**purposely (1)**
77:24
**purse (1)**
34:12
**pushing (1)**
86:18
**put (20)**
30:24;31:15;34:1;
36:23;37:5;38:19;
42:11;45:9;49:20;
53:12;60:8;63:23;
67:17;69:7,12;80:12,
19;81:1;85:2;86:15
**putting (1)**
33:24
**PV (1)**
81:12

## Q

**QPSs (1)**
16:9
**quick (6)**
35:19;51:9;58:7;
59:11;85:16,22
**quite (1)**
26:14

## R

**racial (1)**
59:10
**racism (1)**
59:7
**radio (1)**
10:4
**ran (1)**
79:23
**random (1)**
32:1
**Rape (3)**
45:2;79:18;86:4
**Rastoji (3)**
23:4,24;24:1
**R-A-S-T-O-J-I (1)**
24:4
**reached (1)**
86:6

read (14)
30:20,21;31:3;
32:6,6,7,11,22;41:18;
43:25;60:7;84:16,16;
87:10
reading (1)
40:9
ready (2)
59:9;76:13
reaggravation (1)
53:22
real (10)
36:13,14;37:15,18;
38:11;47:15;51:9;
58:7;59:11;76:2
realize (2)
40:10;55:22
really (10)
11:17;12:18;14:23;
15:13;26:5,22;58:17;
59:9;75:25;84:3
rear (1)
86:10
reason (6)
17:22;23:4;26:24;
66:12;67:13,15
reasons (1)
27:21
reassessment (2)
20:1,12
recall (10)
31:2;47:6;72:10,
11,12,24;75:7,11,12,
12
receive (1)
12:14
received (2)
10:14;12:8
recently (2)
21:6;25:25
Recess (2)
64:16;85:10
reckless (1)
58:4
recklessly (2)
62:19;69:13
recognize (2)
11:16;62:21
record (44)
4:3;7:12;8:2,16;
11:19;27:8;28:3;
30:11;32:8;36:16;
40:9;42:23,24;43:1,3,
5,21,24;48:4;52:9;
53:3;60:8,14,19;61:7,
15;62:4,6,11;63:4,14,
20;64:3,10,14,18;
70:18,19,21,23;85:8,
12;87:2,11
recorded (1)
5:7
records (2)
22:15;51:8

recovering (1)
83:5
RECROSS-EXAMINATION (1)
85:20
reentry (1)
19:20
re-establish (1)
19:14
reference (1)
67:21
referred (1)
21:4
referring (2)
22:9;86:5
refuse (2)
26:19;81:24
refused (3)
28:25;72:19,22
refusing (1)
63:4
regard (2)
71:4;81:23
regularly (1)
49:17
rehab (3)
49:11;59:19;83:4
rehabbing (3)
15:2,24;51:5
rehaber (1)
15:10
rehabilitate (1)
49:11
relate (2)
10:8;21:17
related (2)
8:25;57:11
relates (3)
71:24;76:15;83:18
relationship (1)
19:15
relationships (1)
7:8
relatives (1)
29:20
release (9)
11:2;12:4;21:22;
22:3,4;77:8,12,14;
82:7
released (4)
11:4,5;77:13;80:11
relevant (1)
71:1
relive (2)
58:17,23
reliving (1)
76:3
remember (7)
16:18;22:25;30:19;
46:3;51:15;72:15;
76:3
remodeler (1)
15:11
remote (1)

16:9
rent (1)
14:24
renters (1)
14:23
reopen (1)
87:2
reopening (1)
87:7
repeat (1)
23:6
rephrase (1)
5:10
reporters (1)
46:19
represent (2)
4:16;30:15
represented (1)
72:1
representing (1)
64:23
represents (1)
4:18
request (7)
31:20;32:2,7,13,19,
23;35:19
requested (1)
9:12
reserve (1)
87:2
residence (7)
32:21;33:2,5;
35:22,23;42:6;60:25
residential (1)
13:22
respect (1)
27:9
response (5)
10:9;27:4;32:7;
33:3;59:13
responses (4)
30:6,16;36:24;
43:17
rest (3)
18:22;27:24;39:3
Restoril (1)
25:13
result (5)
9:1;10:10;47:10;
49:6;80:24
retaliating (1)
6:20
retaliation (1)
18:21
retired (1)
19:3
reverse (1)
17:4
revoked (1)
81:1
revolver (1)
61:2
rewind (1)

39:18
ride (1)
35:10
right (79)
6:11;7:9,21;9:7,25;
11:18;13:5;22:13,19;
26:4;32:15;33:7,7,9,
9,10,18,22;34:5,10,
14,21;35:10;36:1;
37:14;38:1,5,5,6,19,
20;39:1,1,25;40:1,11,
22;45:25;46:20,24;
48:8,24,25;50:2,10;
51:22;54:2,12;55:3;
56:15;57:20,25;
58:16;59:2,3;60:17,
17;61:8;63:2;65:15,
24;66:4;68:1,17;
70:8;73:13,19;75:7,
14;76:3,19;77:5;
79:14,17,18,19;
81:20,20;87:2
rights (16)
8:23;26:20;29:2;
40:2;41:13;55:21;
56:9,9;71:20;72:13,
25;73:4;80:20;81:11;
83:22;85:1
ring (1)
79:3
Road (4)
9:18,21;10:7,21
robbed (1)
17:18
roll (1)
76:9
room (3)
34:21,24,24
ruled (2)
63:9,9
rules (1)
5:2
run (2)
43:18;44:14
Running (1)
54:18
Ryan (1)
23:11

S

safe (1)
10:22
Saint (1)
13:10
sales (1)
15:23
same (8)
4:19;18:16;25:17,
18;29:1;58:16;59:25;
69:12
saw (3)
24:2;38:3,19

saying (12)
8:17,24;31:8;
36:24;38:16,21;
48:17;56:17;58:14;
68:9;73:8;77:25
scared (4)
19:3;20:7,7;54:24
scene (1)
39:17
schedule (1)
43:7
scheduled (1)
11:1
school (5)
16:2,17;17:7,9,12
sciatic (2)
48:19,23
sciatica (1)
49:22
Sciences (1)
16:7
SCOTT (23)
7:17;27:7,18;32:9;
36:4;37:9;41:2;
56:16;60:11;61:5,11,
21,23;63:17;64:13,
24;67:9;70:8,16;
77:7;82:3;84:20;
87:10
scratched (1)
34:22
search (16)
6:14;18:21;27:14;
35:23;37:12;42:5,5;
57:12;58:1,9;62:17,
20;67:16,18;69:15;
86:8
searching (1)
7:3
Second (3)
28:6;41:16;54:6
Section (1)
55:20
secure (2)
82:20;83:9
seeing (1)
9:3
seek (1)
50:1
seems (1)
72:8
self-employed (1)
54:9
sell (1)
15:14
sensors (1)
16:10
sentence (5)
5:21;7:13;8:2;
11:18;12:7
sentenced (1)
79:1
separate (5)

56:11,12;73:1,2;
81:12
**September (1)**
11:23
**served (1)**
79:15
**service (4)**
13:8,16,17,18
**severe (2)**
21:11,20
**sewers (1)**
35:6
**sexual (3)**
58:14;79:11;86:4
**sexually (4)**
6:25;9:4;65:5;84:5
**shape (1)**
51:6
**sharing (1)**
19:7
**Shelter (5)**
19:10,19,20;82:12,
12
**shoots (1)**
34:4
**Shoreway (1)**
9:21
**shot (1)**
59:1
**shots (1)**
14:19
**show (2)**
33:24;35:1
**showed (1)**
80:1
**sic (2)**
24:15;63:10
**sick (1)**
78:13
**side (7)**
15:14;19:23;22:22,
24;24:1;25:18;57:25
**Sidoti (1)**
64:25
**sign (4)**
21:22;22:2;30:22;
35:16
**Signature (10)**
19:25;20:2,13,18,
24;21:6;22:12,21;
23:10;87:14
**signed (8)**
22:5;30:20,22;
31:3,8;36:25;37:4;
71:10
**simply (1)**
63:19
**S-I-N (1)**
13:11
**Sinclair (6)**
12:12;13:6,7,10,11,
12
**S-I-N-C-L-A-I-R (1)**

13:12
**single (1)**
54:7
**sit (2)**
57:8;60:1
**sits (1)**
20:5
**sitting (3)**
56:2,17;70:12
**situation (7)**
18:19;19:4,13;
20:4,23;54:22;61:19
**skills (1)**
15:1
**slammed (4)**
47:13;48:8,18;65:4
**slamming (1)**
6:25
**slams (1)**
86:15
**slower (1)**
23:7
**small (1)**
36:14
**Smith (1)**
61:1
**snatch (1)**
10:20
**snatched (1)**
6:23
**snatching (1)**
8:20
**sneaking (2)**
33:15;34:7
**sneaky (1)**
34:8
**snow (1)**
51:13
**sold (1)**
14:11
**somebody (4)**
8:23;26:9;36:10;
47:18
**sometime (2)**
14:15;82:7
**sometimes (1)**
43:22
**somewhere (3)**
55:18;78:23;82:17
**son (2)**
16:23;17:5
**sorry (7)**
13:14;32:15,24;
33:11;44:6;45:1;
51:10
**sort (11)**
7:11,22;15:1,20,
22;44:21;47:25;
55:14;56:11;82:11,
14
**sorts (2)**
66:24,24
**sought (1)**

72:9
**Sounds (2)**
8:17;70:10
**Source (2)**
55:12,13
**spanked (1)**
81:10
**spanking (1)**
80:16
**speak (1)**
70:9
**specific (2)**
57:10;61:12
**speedy (9)**
72:13,25;73:4,13;
74:11;75:8,14;76:20;
77:5
**spell (2)**
24:3,12
**spent (1)**
78:15
**spine (1)**
17:19
**sports (2)**
51:4,6
**SSI (4)**
18:2,6,11;55:2
**stab (1)**
26:9
**stabbed (2)**
26:7,10
**stabbing (1)**
52:17
**staff (1)**
23:21
**stamp (2)**
42:8,9
**stamps (2)**
18:14;58:2
**standard (1)**
26:18
**Standards (2)**
45:23,24
**Stanley (3)**
23:3,8,18
**start (3)**
23:14;25:24;29:22
**started (4)**
21:2;25:8;51:2;
68:2
**starting (1)**
44:1
**state (7)**
8:13,25;55:7;
60:13;61:6;66:3;
78:21
**statement (5)**
36:2;44:22;46:7,
22;69:1
**statements (4)**
35:24;44:17,22;
46:5
**States (2)**

71:19;73:6
**stay (5)**
6:3;17:25;19:16;
52:24;82:18
**stayed (1)**
14:15
**stems (1)**
8:18
**Stephen (1)**
74:3
**still (14)**
8:21;14:3;32:14;
34:11;40:20;44:8;
48:9,13,14;51:4;
53:16;74:12;77:8;
86:20
**stole (1)**
14:13
**stop (3)**
23:14;84:4;85:4
**straight (4)**
11:4;34:4;75:6;
80:10
**Street (6)**
9:6;13:25;14:7;
45:16;59:4;60:25
**streets (2)**
57:13;86:8
**Stress (1)**
21:11
**stressed (1)**
37:13
**stressful (2)**
75:25;76:2
**stuck (2)**
47:20,22
**stuff (30)**
14:14,16;16:9;
20:6;33:16;34:3,6,16,
18;35:7;36:7;38:15;
39:3;40:15,17;42:16;
43:20;46:19;51:4;
53:12,17;56:21;58:2,
22;60:3;65:17;71:2;
78:11;81:15;85:3
**subject (1)**
70:14
**submitted (3)**
68:20,22,24
**suffer (1)**
47:13
**suggest (1)**
27:7
**sum (1)**
49:21
**Summit (1)**
27:15
**supercede (1)**
74:6
**supposed (4)**
24:17;42:9;49:13;
56:20
**suppressed (1)**

65:13
**suppression (4)**
69:21;74:6,16;
75:21
**sure (19)**
5:1;6:7;13:19,20,
24;18:9;19:24;24:20;
39:13;41:16;55:17;
57:5;59:21,23;60:5;
63:10;66:9,12;75:3
**surgery (6)**
47:20,21;48:11;
51:18;83:2,3
**switch (1)**
23:14
**switched (1)**
21:6
**sworn (1)**
4:6
**system (4)**
28:18;55:7,8;81:16
**Systems (1)**
16:1;44:7;83:7,16

**T**

**tailbone (3)**
52:11,14;58:21
**talk (26)**
4:25;8:12;28:2;
29:3,23;36:3;40:7;
42:15,18,23;43:23;
47:1;53:25;55:25;
56:14,23;58:7,8,20;
59:23;61:9;62:4;
66:21;70:6;76:7;
84:23
**talked (9)**
10:3;45:15;46:8,
13,14,16,18;61:15;
76:16
**talking (18)**
12:17;26:8;32:17;
39:10,10,22,24;40:1,
10,12,17;42:3;45:9;
52:17;53:10;55:6;
58:13;76:11
**talks (2)**
67:17,22
**Tampering (1)**
40:14
**tapped (1)**
35:13
**Technical (1)**
16:4
**Tegretol (1)**
24:11
**telling (3)**
18:15;41:19;73:11
**tension (1)**
59:10
**tentative (1)**
19:8

**terminate (1)**
70:11
**terms (3)**
79:1;82:15,19
**terrible (1)**
53:23
**terribly (1)**
65:2
**test (3)**
17:11;19:14;36:5
**tested (3)**
50:18,20,24
**testified (4)**
4:7;69:21;71:6;
78:15
**testify (1)**
53:5
**testifying (1)**
5:5
**testimony (2)**
38:1;75:2
**testing (1)**
17:4
**therapy (2)**
49:13,15
**thinking (1)**
19:9
**third (1)**
75:5
**though (8)**
6:14;11:17;24:13;
27:10;36:22;58:16;
72:21;79:18
**thought (6)**
40:6;66:18;72:16;
73:17;74:24;79:21
**threatened (4)**
68:5,7;73:25;74:2
**three (8)**
19:5;20:25;28:21;
63:20,25;67:25;
68:17;79:20
**throw (1)**
42:17
**tile (1)**
14:22
**Tim (2)**
4:13;27:12
**time/date (2)**
42:9;58:2
**times (13)**
7:3;24:23,24,25;
25:4;26:23;27:19;
45:14;57:20;58:11;
65:3;70:5;72:19
**tingling (1)**
51:3
**tiny (1)**
69:23
**Today (24)**
4:2,21,25;5:18,21;
6:18,19;7:13;9:24;
17:15;40:3;41:3,14;

42:18;43:6,13;53:5;
56:2,17;57:8;60:1;
63:8;64:1;85:14
**together (5)**
14:17;19:11;35:10;
49:14,18
**told (13)**
9:10;28:24;34:5;
39:17;44:3,8;52:5;
54:25;55:2;67:3;
74:12,23;80:19
**took (11)**
13:14;17:11;33:20;
34:20;37:17,20;
39:23;48:8;74:13,14;
77:13
**top (3)**
34:22;53:19;65:16
**topic (2)**
13:15;57:7
**topics (1)**
7:11
**tore (1)**
14:9
**torture (1)**
47:17
**total (2)**
29:6,8
**trade (1)**
15:9
**trades (1)**
15:23
**traffic (1)**
10:21
**training (1)**
57:9
**tramadol (1)**
61:4
**traumatic (1)**
58:23
**treatment (5)**
7:7;10:10,14;21:4;
50:1
**trial (14)**
29:1;59:20;60:3;
72:13,25;73:4,13;
74:11,18;75:8,15,20;
76:20;77:5
**trials (2)**
28:21,22
**Tried (7)**
26:9,9;35:2;36:7;
39:16,22;83:9
**trip (2)**
47:13;86:15
**troubling (1)**
65:2
**true (1)**
58:24
**Trumbull (1)**
27:17
**trunk (1)**
86:19

**truthful (2)**
31:12;37:1
**truthfully (2)**
31:2;53:5
**try (13)**
8:23;19:11,13,13;
20:8;44:14;49:4,14;
68:6;70:1,25;82:21,
23
**Trying (19)**
6:14;7:1,22;14:24;
17:3;19:16;23:23;
29:13;37:25;48:3;
49:17,20,21;60:18;
66:15;82:19;83:25;
84:18;86:13
**turn (1)**
44:13
**turned (1)**
19:12
**Turner (2)**
66:2;69:5
**tutor (7)**
12:9,9,24;13:2,3,3;
44:11
**Twice (1)**
58:10
**two (19)**
17:5;24:23,24,25;
25:4;28:22;29:9;
35:19;47:21;52:20;
53:24;63:23;64:11;
66:9;73:1,2;74:11;
75:8;85:7
**type (2)**
10:17;83:4

**U**

**unable (1)**
49:16
**uncommon (1)**
27:11
**uncredible (3)**
63:10;65:14;69:5
**under (4)**
5:21;12:7;56:6;
87:4
**understood (7)**
5:9;10:24;31:15;
52:10;56:25;59:8,11
**United (9)**
55:9,10,12;71:18;
73:6
**University (2)**
16:3;44:4
**unnatural (1)**
47:25
**unrelated (1)**
6:17
**unusual (3)**
47:17,24;56:8
**up (21)**

14:8,10,14,17;
17:20;29:21;33:6,15,
24;34:1,11;35:11;
49:21;50:5,13;58:1;
61:12;69:23;74:8;
80:1;86:20
**upside (1)**
19:12
**upstairs (1)**
34:4
**use (1)**
36:14
**used (2)**
62:18,20
**using (2)**
58:4;83:12

**V**

**versus (1)**
56:13
**victim (1)**
79:25
**video (10)**
7:1;9:7;33:6;36:8;
58:12,15;68:8,14;
80:7;86:12
**VIDEOGRAPHER (12)**
4:1;42:24;43:2;
62:6,10;64:14,17;
70:19,22;85:8,11;
87:11
**videos (1)**
33:8
**viewed (2)**
37:11;41:20
**viewing (1)**
40:9
**violate (3)**
8:23;85:1;86:19
**violated (5)**
8:13;9:4;29:2;45:5,
6
**violating (2)**
6:24;8:21
**violation (6)**
45:8;55:22;56:8;
81:2,3,5
**violations (1)**
41:13

**W**

**Wait (2)**
37:9;82:3
**waiting (3)**
43:9;73:24;74:22
**waive (2)**
73:13;76:19
**waived (4)**
64:1;75:14,18;
87:14
**waiver (2)**

72:12,25
**waivers (1)**
74:11
**waiving (3)**
73:3;75:7;77:5
**walk (1)**
52:23
**wants (3)**
20:3,6;42:7
**Ward (1)**
23:11
**warrant (10)**
18:21;42:5;62:17;
65:8,15;67:11,16,18;
68:23;69:15
**warrants (1)**
58:1
**wash (1)**
54:18
**water (1)**
34:2
**way (8)**
10:17;12:13;29:1;
42:17;49:19;52:25;
66:19;73:15
**wear (2)**
33:9,12
**weather (1)**
52:2
**website (2)**
11:20;27:15
**welfare (1)**
18:14
**well-being (1)**
24:8
**Wellbutrin (1)**
25:12
**weren't (5)**
50:1,22;54:7;
86:20,22
**Wesson (1)**
61:1
**west (3)**
19:23;22:22,24
**whatnot (1)**
47:13
**what's (6)**
7:19;13:6;30:14;
35:14;45:15,22
**whenever (4)**
25:5;78:12;85:2,3
**white (1)**
36:20
**Who's (1)**
68:9
**William (4)**
4:2,5,5:14;27:13
**wish (2)**
20:10;86:12
**without (3)**
27:20;29:13;58:1,
4;75:19;81:10
**WITNESS (15)**

7:15;26:16;29:12;
36:3;41:6,9;59:20;
61:9,13,22,25;62:5;
63:15;64:2;85:18
**witnesses (5)**
10:23;28:25;59:12,
15;60:2
**wonderful (1)**
84:7
**words (1)**
49:20
**work (14)**
14:16,21,22;15:13,
15,17;18:17;53:18,
18;54:15;64:22;
77:22;78:3;84:3
**worked (4)**
53:16;83:12,13,14
**working (6)**
13:17;14:23;15:16;
23:14;51:12;53:12
**works (1)**
78:1
**worry (2)**
35:12;40:20
**worse (1)**
49:25
**worth (1)**
20:10
**written (2)**
44:17,22
**wrong (1)**
14:13

---

**Y**

**Y2K (1)**
83:14
**yard (1)**
14:22
**Yasenchack (61)**
6:6,20;7:14;8:4,7,
12,19;9:4,10;10:1,8,
15;12:17;17:2;18:19;
19:4;20:23;21:18;
25:23;30:2;33:9,23;
34:4,11;35:1,2,9,25;
37:19;38:6;40:2,11,
12,20;42:4;48:6,7,15;
49:24;54:23;56:4,13;
58:11,14;62:18;
64:23;65:7;66:7;
67:7,14;69:22;76:19,
22;77:23;78:1,10;
80:5;84:4,9;85:23;
86:6
**Yasenchack's (2)**
10:10;77:2
**Yasenchak (1)**
77:17
**Yashenchack (1)**
4:18
**year (9)**

16:11,22,22,23;
18:12;21:7;51:15,22;
77:14
**years (20)**
18:11;19:2;26:3,3,
5,5,5;27:24;28:19,19;
29:6,6,9;47:21;79:2,
5,12,15,18,20
**yelling (1)**
86:18
**Youngstown (5)**
16:25;22:8;25:18;
52:18;72:1

---

**0**

**000050 (1)**
63:6
**04 (1)**
16:12
**07 (1)**
30:3

---

**1**

**1 (1)**
68:1
**10 (6)**
4:3;32:23;36:17,
18;55:19;60:8
**10:06 (1)**
4:4
**10:50 (1)**
42:25
**10:57 (1)**
43:3
**100 (2)**
14:18;36:9
**100s (1)**
36:11
**11 (1)**
55:20
**11:17 (1)**
62:7
**11:21 (1)**
62:11
**11:23 (1)**
64:15
**11:31 (1)**
64:18
**11:38 (1)**
70:20
**11:45 (1)**
70:23
**12 (1)**
36:21
**12:01 (1)**
85:9
**12:03 (1)**
85:12
**12:06 (2)**
87:12,13
**127 (1)**

13:25
**127th (3)**
14:6;60:25;65:9
**13 (2)**
12:1;78:24
**14 (2)**
31:8;42:4
**15 (2)**
16:22;71:16
**156th (3)**
9:6;57:14;58:9
**16 (5)**
16:22;26:13,13,14;
51:17
**17 (2)**
26:13,14
**18 (11)**
11:3,23;24:2;
26:14,14;32:16,20,
25;60:6,9,23
**185th (1)**
49:16
**18th (6)**
11:9,10;12:5,8,14;
82:8
**19 (1)**
80:13
**1978 (1)**
11:23
**1983 (1)**
55:20
**1st (1)**
51:18

---

**2**

**2 (1)**
16:23
**20 (2)**
39:20,21
**2015 (1)**
80:12
**2016 (1)**
80:15
**2019 (12)**
46:4;65:11;66:1;
67:6,12,15,21;68:19;
69:2;85:23;86:2,11
**2020 (7)**
32:20,25;42:4;
60:23;68:1;74:15,16
**2021 (1)**
21:7
**2022 (3)**
12:1;21:7;25:9
**2023 (2)**
4:3;11:3
**20s (3)**
36:9,10,10
**262 (1)**
73:25
**27 (1)**
28:16

**28 (1)**
28:16

---

**3**

**3 (1)**
65:11
**30 (1)**
39:20
**300 (1)**
73:25
**31st (1)**
12:13
**328 (1)**
74:8
**362 (1)**
74:8
**38 (1)**
61:2

---

**4**

**4 (1)**
47:1
**40th (2)**
22:20,20
**49 (1)**
13:9

---

**5**

**5 (9)**
32:2,8,13,19,24;
36:20;47:1,1;67:25
**50 (1)**
55:18
**50th (1)**
22:20
**55th (1)**
22:20
**56 (1)**
63:6

---

**6**

**6 (2)**
31:18;44:1
**60 (1)**
55:18
**6-13 (1)**
12:6
**638 (2)**
13:25;14:6

---

**7**

**7 (2)**
36:18;55:1
**73rd (1)**
19:23
**797 (1)**
80:21
**7R (1)**

80:22

---

**8**

**8 (2)**
55:2,19
**800 (2)**
18:10;55:3
**8894 (1)**
62:25
**8th (3)**
11:5,6;82:8

---

**9**

**9 (5)**
32:1,2,22;35:20;
55:19
**90 (3)**
9:21;10:6;81:8
**924c (1)**
74:7
**93rd (1)**
19:24

## WILLIAM ELLIS



| | |
|---|---|
| **Number** | A791971 |
| **DOB** | 09/18/1978 |
| **Gender** | Male |
| **Race** | Black |
| **Admission Date** | 06/13/2022 |
| **Institution** | Lake Erie Correctional Institution |
| **Status** | INCARCERATED |

### Offense Information

ATTEMPTED FAIL TO COMPLY          **Counts:** 1          **ORC:** 2921.331 5

**Effective Sentence Date:**     **Jail Time Credit:** 73     **Def Yrs:** 1.00

06/13/2022     **County:** Cuyahoga     **Docket:** CR20648922

**Degree:** Fourth     **Judge:** STEVEN E GALL

### Sentence Information

**Aggregate Sentence**     1.00 HB86-5

**Expected Release Date/Parole Eligibility Date**     02/18/2023

### Notes

The above information may not contain a complete list of sentencing information for each offender.

The supervision period may not coincide with the current offense, but may reflect the offender's remaining supervision obligation from a previous offense.

Any person, agency or entity, public or private, who reuses, publishes or communicates the information available from this server shall be solely liable and responsible for any claim or cause of action based upon or alleging an improper or inaccurate disclosure arising from such reuse, re-publication or communication, including but not limited to, actions for defamation and invasion of privacy.

Questions concerning the information contained in these documents should be sent via the U.S. Mail to Ohio Department of Rehabilitation and Correction, Attn: Central Records, 4545 Fisher Road, Suite D, Columbus, OH 43228.



DEFENDANT'S EXHIBIT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

WILLIAM ELLIS,            )   CASE NO.: 1:22-CV-00815-SO
                            )
          Plaintiff,         )   JUDGE SOLOMON OLIVER, JR.
                            )
vs.                         )
                            )
DET. JEFFREY YASENCHACK, *et al.*,   )
                            )
          Defendant.      )   <u>DISCOVERY REQUESTS,</u>
                            )   <u>INCLUDING REQUEST FOR ADMISSIONS</u>

---

### DEFENDANT DET. JEFFREY YASENCHACK'S REQUEST FOR ADMISSIONS, INTERROGATORIES, AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF WILLIAM ELLIS

---

Now comes Det. Jeffrey Yasenchack ("Officer Defendant"), by and through undersigned counsel, pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, and hereby propounds the following Interrogatories, Request for Admissions, and Request for Production of Documents to Plaintiff William Ellis, through his attorneys, Mr. Joseph F. Scott, Scott & Winters, the Caxton Building, 812 Huron Road E. Suite 490, Cleveland, OH 44115, electronically at <u>jscott@ohiowagelawyers.com</u> and Mr. Marcus Sidoti, Friedman, Gilbert + Gerhardstein, 50 Public Square, Suite 1900, Cleveland, OH 44113, electronically at <u>marcus@FGGfirm.com</u>. The following are to be produced, answered, or either admitted or denied, fully in writing and under oath within thirty days following the date of the service hereof

1



to Attorney J.R. Russell, at the Department of Law, 601 Lakeside Avenue, Room 106, Cleveland, Ohio 44114.

**NOTICE**: Pursuant to Rule 36(b) of the Federal Rules of Civil Procedure, these Discovery Requests contain **Request for Admissions** that will be deemed admitted if you do not timely deny or respond to the same according to the Rules.

**NOTICE**: This request shall also serve as formal notice to Plaintiff that he has an obligation to preserve certain documents or materials, electronically stored or otherwise, that are relevant or reasonably calculated to lead to the discovery of admissible evidence in this matter.

---

## INSTRUCTIONS
## FOR COMBINED DISCOVERY REQUESTS

1.    Unless otherwise indicated, these Combined Discovery Requests refer to the time, place, and circumstances of the occurrences mentioned or complained of in the pleadings in this case.

2.    The herein Combined Discovery Requests are continuing in nature and any information responsive to any of them that is acquired subsequent to the original answers shall be supplied immediately upon coming to the attention of Plaintiff. You are under a continuing duty to timely supplement your responses to each of your responses to the enclosed Combined Discovery Requests addressed to the identity and location of persons having knowledge of matters alleged in your Complaint; the identity of any person expected to be called as an expert at trial; and to correct any response that you know or later determine to be incorrect or incomplete.

3.    You are reminded that all answers to these Combined Discovery Requests must be made separately and fully and that an incomplete or evasive answer is a failure to answer.

4.    You must disclose all information requested in the following Combined Discovery Requests that is in your possession or control, or is available to, accessible to, or within the possession or control of your attorneys, investigators, agents or other representatives of you or your attorneys except insofar as such information is subject to a claim of privilege.

5.    If any information called for by these Combined Discovery Requests is not

available or accessible in the full detail required, such request shall be deemed to require all available or accessible information, including estimates. Where an estimate is made, the answer shall state that it is an estimate and describe the method by which the estimation is made.

6.     If any information called for by any Combined Discovery Request is withheld on the basis of a claim of privilege, the type of privilege claimed and the nature of the information withheld on that basis shall be set forth. If Plaintiff contends that any requested document is privileged or otherwise not subject to discovery, identify the document and state in response to the request the grounds upon which such contention is based. In addition, with respect to any document for which a privilege is claimed, identify or state the date on which such document was prepared, by whom it was prepared, for whom it was prepared, the identity of all persons who received a copy of the document, and all persons to whom the document has been disclosed, in whole or in part, at any time.

7.     Where it is requested you to name or identify a person, please state the full name, home address, business address, home telephone number, e-mail address, and business telephone number.

8.     Where it is requested you to identify a writing or document, you are to provide the title, date, description of the type of writing, the author(s) of the writing or document, and the identity of the person who is the present custodian of the writing or document.

## DEFINITIONS
## FOR COMBINED DISCOVERY REQUESTS

1.     The terms "You" or "Your" refer to Plaintiff William Ellis.

2.     The term "Plaintiff" means Plaintiff William Ellis.

3.     The term "ammunition" means cartridge cases, primers, bullets, or propellent powder designed for use in any firearm.

4.     The term "Answer" refers to the Answer filed by the Officer Defendant to Plaintiff's Complaint.

5.     The term "Communication" means any transmission or information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications.

6.     The term "Complaint" refers to the Complaint filed with this Court in *William*

7.     The term "Federal Case" refers to the criminal case referred to in your Complaint, in the United States District Court, styled as *United States v. William Ellis*, Case No. 20-cr-00302.

8.     The term "Fetanyl related compound" shall have the same meaning as that identified in Section 2925.11 of the Ohio Revised Code.

9.     The term "Officer Defendant" refers to Det. Jeffrey Yaskenchack.

10.    The term "possession" means as to an object, to have immediate control over or the power and the intention, at a given time to exercise dominion and control over an object, either directly or through others.

11.    The term "possession" means as to documents, those within the actual possession, custody or control of any of the individuals or entities defined as Plaintiff, as well as documents which are not in the actual possession, custody or control of such individuals or entities but which any of those individuals or entities have a right to obtain copies thereof.

12.    The term "your residence" means the real property, including structure, identified as "Plaintiff's residence" in your Complaint.

13.    "Person" includes any firm, corporation, joint venture, association, entity, or group of persons, unless the context clearly indicates that only an individual person is referred thereby.

14.    "Each" shall mean each and every, without limitation, and "any" means "all" and vice-versa.

15.    "Related to" (or a form thereof) means constituting, reflecting, representing, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, or relevant to. As indicated, the term necessarily includes information, which is in opposition to, as well as in support of, the position(s) and claim(s) of Plaintiff in this action.

16.    "Address" means the street number, street name, city, state or province, country (if other than the United States of America) and, if available, zip code or other mailing code for the place of the designated Person's residence or, if a business, the place its business is principally conducted.

17.    "Identify" or "Identity," when referring to a Person or to Persons, means to state

the current name, address, and telephone number of the Person about whom the information is sought. When referring to individuals, please state the name of their present or last known employer, their office or title, if any, their job description, and nature and dates of affiliation with any part to this litigation.

18. "Identify" as to facts means to state what they are. If that is accomplished by furnishing an exhibit, then such shall be designated with respect to each such document furnished or previously furnished. With respect to a document, it means to state the nature of the document, its date, its author, the person to whom it is addressed, its title, its file number, bate stamp, or other identifying mark or code, and whether or not it is claimed that such document is privileged or CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER.

19. "Documents" shall mean all written, types, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, including but not limited to paper, photographs, film, audio and/or video tapes and computer stored data, now or formerly in the possession, custody or control of Plaintiff, Plaintiffs' agents and attorneys, or any of Plaintiff's attorney's agents. If any document was, but is no longer in his possession or subject to his control, identify the document and state its present location or the disposition which was made of it and the thereof.

20. "Electronically Stored Information", when used herein, means information stored in a medium from which it can be retrieved and examined by an end user, application, operating system, or file system. Also referred to as "ESI"

Respectfully submitted,

By:  */s/ J.R. Russell*
Craig J. Morice (0065424)
James R. Russell, Jr. (0075499)
Assistant Directors of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
cmorice@clevelandohio.gov
JRussell2@clevelandohio.gov
*Attorneys for Det. Jeffrey Yasenchack*

**INTERROGATORY NO. 1**

Identify the full name, address where he or she currently resides, and title, if any, of each person answering these Interrogatories and Request for Admissions, and who provided information to you in the answering of these Interrogatories.

ANSWER:

Plaintiff in consultation with counsel.

**INTERROGATORY NO. 2**

Identify the length of the current prison sentence you are serving that the Cuyahoga County Court of Common Pleas imposed.

ANSWER:

Objection. This interrogatory seeks information that is not relevant nor is it reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff's release date is scheduled for March 31, 2023—if not terminated sooner.

**INTERROGATORY NO. 3**

Identify all persons, specifically including Plaintiff's representatives, by name and address whom Plaintiff intends to call as a witness at any trial or hearings in this matter.

ANSWER:

Objection. Discovery is still ongoing. Without waiving said objection, Plaintiff may call any of the parties, individuals identified in any investigative report or statement regarding Det. Yasenchack's investigation of Plaintiff, and any individual identified by Plaintiff or Defendants in discovery.

**REQUEST FOR ADMISSION NO. 1**

Admit that before May 14, 2020, you pleaded guilty to, or were convicted of, a crime punishable by imprisonment for a term exceeding one year.

RESPONSE:

Objection. This request seeks information that is not relevant nor is it reasonable calculated to lead to the discovery of admissible evidence. Without waiving said objection, Yes.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 4**

If the Response to Request for Admission No. 1 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:

See response to request no. 1.

**REQUEST FOR ADMISSION NO. 2**

Admit that on May 18, 2020, there was a loaded Smith & Wesson revolver in your bedroom of your residence.

RESPONSE:

Objection. This request seeks information that is not relevant nor is it reasonable calculated to lead to the discovery of admissible evidence. Without waiving said objection, Yes.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 5**

If the Response to Request for Admission No. 2 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:


See response to request No. 2.


**REQUEST FOR ADMISSION NO. 3**

Admit that on March 6, 2020, you were indicted on a felony charge in *State v. Ellis*, Case No. CR-20-648922, pending in the Cuyahoga County Court of Common Pleas.

RESPONSE:

Plaintiff admits only that on March 6, 2020 Plaintiff was indicted for failure to comply.

Joseph F. Scott (0029780)


**INTERROGATORY NO. 6**

If the Response to Request for Admission No. 3 was anything other than an unqualified admission, identify the facts that support your denial.


See indictment.


**EQUEST FOR ADMISSION NO. 4**

Admit that Officer Defendant did not take any action on or after May 14, 2020, that was a violation of your civil rights.

RESPONSE:

Denied.

Joseph F. Scott (0029780)

8

## INTERROGATORY NO. 7

If the Response to Request for Admission No. 4 was anything other than an unqualified admission, identify the facts that support your denial, including what actions by Officer Defendant you allege violated your civil rights.

ANSWER:

Objection. Discovery is still ongoing. Without waiving said objection, Defendant Yasenchack falsified an affidavit offered in support of the issuance of a warrant. Further, Defendant sought to mislead prosecutors with false evidence to suggest that there was probable cause to arrest Plaintiff and search Plaintiff's residence.

## REQUEST FOR ADMISSION NO. 5

Admit that on May 18, 2020, you had possession of a Fetanyl related compound, at your residence.

RESPONSE:

Plaintiff admits only that a fentanyl related compound was taken from Plaintiff's residence during an illegal search of Plaintiff's residence that was predicated on the false statements of Defendant Yasenchack.

Joseph F. Scott (0029780)

## INTERROGATORY NO. 8

If the Response to Request for Admission No. 5 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:

Objection. Discovery is still ongoing. Without waiving said objection, the pleadings, exhibits and orders of the Court in the matter of United States v. William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cr-0302 support Plaintiff's qualified response to request no. 6.

**REQUEST FOR ADMISSION NO. 6**

Admit that on May 18, 2020, there was a box and bag of .556 ammunition, a box of .762 ammunition, and a box of .9 millimeter ammunition in your residence.

RESPONSE:

Plaintiff admits only that a box and bag of .556 ammunition, a box of .762 ammunition, and a box of .9 millimeter ammunition were taken from Plaintiff's home during an illegal search of Plaintiff's residence that was predicated on the false statements of Defendant Yasenchack.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 9**

If the Response to Request for Admission No. 6 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:

Objection. Discovery is still ongoing. Without waiving said objection, the pleadings, exhibits and orders of the Court in the matter of United States v. William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cr-0302 support Plaintiff's qualified response to request no. 6.

**REQUEST FOR ADMISSION NO. 7**

Admit that the alleged violations of your civil rights by the Officer Defendant were not violations of clearly established rights provided by the United States Constitution and cases so interpreting.

RESPONSE: Denied.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 10**

If the Response to Request for Admission No. 7 was anything other than an unqualified admission, identify the particularized facts or law that support your denial.

ANSWER:

Defendant's request for admission no. 7 submits a proposition of law. Freedom from malicious prosecution was a well-established Fourth Amendment right at the time Defendant provided false information.

**REQUEST FOR ADMISSION NO. 8**

Admit that on May 28, 2020, Magistrate Judge David A. Ruiz found there was sufficient evidence to establish probable cause for the charges against you in the Federal Case.

RESPONSE:

Plaintiff admits only that on May 28, 2020, Magistrate Judge David A. Ruiz made a preliminary probable cause determination based upon evidence illegally obtained that was ultimately suppressed as well as the false statements of Defendant Yasenchack.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 11**

If the Response to Request for Admission No. 8 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:

Plaintiff's qualified response to request no. 8 is supported by the pleadings, exhibits and orders of the Court in the matter of United States v. William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cr-0302.

**REQUEST FOR ADMISSION NO. 9**

Admit that on or about May 29, 2020, Magistrate Judge David A. Ruiz found in the Federal Case that you should be detained pending trial.

RESPONSE:

Plaintiff admits only that on or about May 29, 2020 Magistrate Judge David A. Ruiz that Plaintiff should be detained based upon evidence illegally obtained and ultimately suppressed.

Joseph F. Scott (0029780)

**INTERROGATORY NO. 12**

If the Response to Request for Admission No. 9 was anything other than an unqualified admission, identify the facts that support your denial.

ANSWER:

The pleadings, supporting exhibits, and orders of the Court in the matter of United States v.

William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cr-

0302 support Plaintiff's qualified response to request no. 9.

**INTERROGATORY NO. 13**

Identify all evidence that supports your allegation in the Complaint that as a result of the Officer Defendant's actions you "incurred legal and expenses, and suffered emotional and mental anguish" and "physical pain and anguish."

ANSWER:

Plaintiff was wrongfully incarcerated for over 1-year as a result of Defendants' actions. Plaintiff

was required to defend the false allegations and his wrongful detention that were the result of the

false testimony presented by Defendant Yasenchack.

**INTERROGATORY NO. 14**

Identify all evidence that supports your allegation in the Complaint that you are entitled to an award of "compensatory damages."

ANSWER:

Objection. Discovery is still ongoing. Without waiving said objection, Plaintiff's claims are supported by the findings of the Court in the matter of documents, hearing transcripts, and orders entered in the matters of United States v. William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cv-0302 and State of Ohio v. William Ellis, Cuyahoga County Court of Common Pleas, case no. 637876.

**INTERROGATORY NO. 15**

Identify the amount of "attorney's fees, interest, costs, and disbursements" that you are seeking, as alleged in your Complaint.

ANSWER:

"Objection. This interrogatory is premature. A mathematical calculation at this time is not possible and, at the current time, there exists no computation of the particular category of damages claimed. Plaintiff reserves the right to supplement this list in accordance with the Federal Rules of Civil Procedure and any orders from the Court, and reserves the right to supplement this list until the time of trial.

AS TO ALL OBJECTIONS.

Joseph F. Scott (0029780)

13

## <u>VERIFICATION</u>

STATE OF OHIO          )

                                ) SS:                AFFIDAVIT

COUNTY OF CUYAHOGA    )

I, _____, being first sworn according to the law of the State of Ohio, state that I have read the answers to the foregoing Interrogatories and Request for Admissions and that the answers are true to the best of my knowledge and belief.

_____

**SWORN TO BEFORE ME AND SUBSCRIBED** in my presence this _____ day of _____, 2022.

_____

NOTARY PUBLIC

14

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**

Any and all documents, ESI, or reports prepared by any of your witnesses related to the Complaint or the Answer.

RESPONSE:

Plaintiff is not in possession of any documents responsive to this request.


**REQUEST FOR PRODUCTION NO. 2**

Any and all documents or ESI you intend to use or introduce in any motions, trials, or hearings of the above-captioned matters.

RESPONSE:

Objection. Discovery is still ongoing. Plaintiff has not yet determined which documents will be introduced in support of any motions or at trial. Plaintiff will supplement his response to this request in accordance with the Federal Rules of Civil Procedure and the case management order of the Court.


**REQUEST FOR PRODUCTION NO. 3**

Any and all documents or ESI that support your allegations in the Complaint that you are entitled to compensatory damages from the Officer Defendant.

RESPONSE:

Objection. Discovery is still ongoing. Plaintiff will supplement his response to this request as required by the Federal Rules of Civil Procedure and the case management order of the Court. Further answering, Plaintiff's claims are supported by the pleadings, exhibits, hearing transcripts, and orders of the Court in the matters of United States v. William Ellis, United States District

Court for the Northern District of Ohio, case no. 1:20-cr-0302 and State of Ohio v. William Ellis, Cuyahoga County Court of Common Pleas, case no. 637876.

**REQUEST FOR PRODUCTION NO. 4**

Any and all documents or ESI that support your allegations in the Complaint that you are entitled to an award of attorney's fees.

RESPONSE:

Objection. Discovery is still ongoing. Without waiving said objection, Plaintiff states that his claim for attorney fees is premised on federal and state law. Should Plaintiff be determined to be a prevailing party, Plaintiff will present his claim for attorney fees and costs as required by the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 5**

Any and all documents or ESI given to expert witnesses who will be called to testify in any hearing or trial of this matter, and any expert reports.

RESPONSE:

Objection. Discovery is still ongoing. Plaintiff has not determined if expert testimony will be presented at trial. Should Plaintiff determine to present expert testimony, Plaintiff will supplement his response to this request as required by the Federal Rules of Civil Procedure and the case management order of the Court.

**REQUEST FOR PRODUCTION NO. 6**

True and complete copies of your federal, state and local income tax returns filed by you or on your behalf for the years 2018, 2019, and 2021, including all schedules accompanying said returns, including but not limited to W-2s, K-1s and 1099s (and any other documents used in the

preparation of these returns); and all data necessary for the preparation and filing of your 2022 return.

RESPONSE:

Objection. The information sought by this request is not relevant nor is it reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 7**

Any and all documents or ESI in your possession depicting recorded interactions that Plaintiff had with law enforcement personnel or police officers before May 14, 2020.

RESPONSE:

Plaintiff is not in possession of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 8**

Any and all documents responsive to the Interrogatories herein.

RESPONSE:

The pleadings, exhibits, hearing transcripts and orders filed in the matters of United States v. William Ellis, United States District Court for the Northern District of Ohio, case no. 1:20-cr-0302 and State of Ohio v. William Ellis, Cuyahoga County Court of Common Pleas, case no. 637876 may be obtained by Defendants directly from the ECF system for the United States District Court for the Northern District of Ohio and the Cuyahoga County Clerk of Courts docket system.

AS TO ALL OBJECTIONS:

Joseph F. Scott (0029780)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically, on this 4th day of November, 2022, to:

Mr. Joseph Scott
Mr. Marcus Sidoti
jscott@ohiowagelawyers.com
Marcus@FGGfirm.com

Respectfully submitted,

By: */s/ J.R. Russell*
Craig J. Morice (0065424)
James R. Russell, Jr. (0075499)
Assistant Directors of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
cmorice@clevelandohio.gov
JRussell2@clevelandohio.gov
*Attorneys for Det. Jeffrey Yasenchack*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM ELLIS<br>c/o Friedman, Gilbert, & Gerhardstein<br>50 Public Square, Suite 1900<br>Cleveland, OH  44113<br><br>   -Plaintiff<br><br>-vs-<br><br><br>DET. JEFFREY YASENCHACK<br>Cleveland Division of Police<br>1300 Ontario Street<br>Cleveland, OH  44113<br><br>and<br><br>CITY OF CLEVELAND, OHIO<br>c/o Law Director, Mark Griffin<br>City Hall—Room 106<br>610 Lakeside Ave.<br>Cleveland, OH  44113<br><br><br>   -Defendant | CASE NO.<br><br>JUDGE<br><br><br>PLAINTIFF'S COMPLAINT FOR<br>CIVIL RIGHT VIOLATIONS<br><br>(Jury Demand Endorsed Hereon) |

## I.    INTRODUCTION

1.    This case is about the false arrest, malicious prosecution, and wrongful incarceration William Ellis of for a crime the Defendant knew, before he ever instituted legal proceedings against Ellis, that he had no committed. Defendant fabricated evidence through false testimony to encourage, initiate, and/or cause the arrest, detention, and malicious prosecution of



Ellis on charges of being a felon in possession of a firearm, a violation of 18 U.S.C. §922(g) and possession with intent to distribute, a violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B).

2.      Defendant Yasenchack made false and misleading statement in an effort to secure a search warrant for Plaintiff's residence. The warrant was issued in reliance upon the false and misleading statements made by Yasenchack. At the time the search warrant was issued, there in fact was not probable cause to support the issuance of a search warrant for Plaintiff's residence.

3.      Plaintiff, William Ellis asserts claims under 42 U.S.C. § 1983 for violations of Ellis's rights to be free from unreasonable searches and seizures, false arrest and malicious prosecution under the protection of the Fourth Amendment to the United States Constitution. Plaintiff asserts Section 1983 claims against the City of Cleveland, Ohio, for failure to properly train and/or supervise law enforcement, for promulgating customs, policies, and/or practices, which proximately caused the violation of William Ellis's federal constitutional rights, and for ratifying the unconstitutional conduct of its officers.

4.      Plaintiff seeks compensatory and punitive damages under the Fourth and *Fourteenth Amendments to the Constitution of the United States* and under state law against the Defendants.

5.      Plaintiff additionally seeks attorney fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988.

## II.      JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to both state and federal claims. This action alleges causes of action pursuant to 42 U.S.C. § 1983, as well as the *Fourth and Fourteenth Amendments to the Constitution of the United States* and pendent claims arising

2

under the laws of the State of Ohio. The amount in controversy, exclusive of interests and costs, exceeds the jurisdictional amount.

7. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4). To the extent state claims are asserted, Plaintiff institutes this action pursuant to 28 U.S.C. § 1367.

8. Plaintiff is a resident of Cuyahoga County, Ohio. All of the events giving rise to this complaint occurred in Cuyahoga County, Ohio.

### III.    THE PARTIES

9. Plaintiff, WILLIAM ELLIS, is a citizen of the United States, a resident of the State of Ohio, and currently resides in Cleveland, Ohio.

10. Defendant, JEFFREY YASENCHACK, is a current or former detective with the City of Cleveland Police Department. Yasenchack was responsible for fairly conducting investigations, properly handling evidence, and fairly and accurately reporting the progress and results of their investigations, individually and officially. Yasenchack had a duty to assess whether probable cause existed to arrest Plaintiff and institute criminal proceedings against him. Defendant failed in that duty by presenting false and misleading evidence and encouraging the arrest, detention, and prosecution of Ellis. At all times relevant, these Defendant was employed by the City of Cleveland Police Department and was acting under the color of law within the course and scope of his employment. Defendant is sued in his individual and official capacity.

11. Defendant, CITY OF CLEVELAND, OHIO, is a municipal corporation organized and existing under the laws of the State of Ohio. The City of Cleveland had a duty to properly supervise and train its police officers and to maintain customs, policies and practices that were not violative of the rights of citizens.

3

## IV.   FACTS.

### *Det. Jeffrey Yasenchack Presents False and Misleading Evidence To Secure A Search Warrant For Plaintiff's Home.*

12.     On about May 14, 2020, Defendant Yasenchack executed an affidavit in order to obtain a search warrant to search Plaintiff's residence.   Defendant's affidavit included representations that Defendant had obtained statements from individuals who stated that they had purchased drugs from Plaintiff and that Plaintiff was their dealer.   Those representations were in fact false.  Defendant knew that those representations were false when he executed his affidavit.

13.     Defendant's affidavit further included representations that a "concerned citizen" had told Defendant that Plaintiff was selling drugs from his home.   In fact, Defendant had threatened a citizen with a traffic citation in an effort to coerce that individual to make an incriminating statement regarding the Plaintiff.

14.     Further, in his search warrant affidavit, Defendant Yasenchack falsely reported that there was a pending criminal case against Plaintiff.  In fact, the state court proceeding had been dismissed by the state court after that court determined Defendant to have not been credible in his testimony.

15.     Defendant Yasenchack has a history of providing false testimony under oath.   In *State v. Ellis,* No. CR-19-637876, the state court determined Defendant to be not credible after Defendant offered testimony against Plaintiff that was contradicted by body camera video.   The state court proceeding was dismissed because of Defendant's lack of credibility.

16.     Defendant City of Cleveland, through its supervisors and employees, knew of Yasenchack's history of providing false testimony under oath to secure arrest and search warrants and in the prosecution of individuals.

17.     Defendant Yasenchack presented his affadvit in support of a search warrant for

4

Plaintiff's residence to the Cuyahoga County Court of Common Pleas on May 14, 2020. At the time Defendant presented his affidavit, Defendant knew that the affidavit contained false and misleading information. Further, Defendant intended that the Court rely upon Defendant's false and misleading statements in determining whether to issue the requested search warrant. The Court in fact relied upon Defendant's false and misleading statements in determining whether probable cause existed to issue the search warrant.

18.     Defendant's search warrant affidavit failed to provide probable cause for the issuance of a search warrant without the false and misleading statements.

### The Cuyahoga County Court of Common Please Issues a Search Warrant For Plaintiff's Home on the Basis of The False and Misleading Statements Contained In Defendant Yasenchack's Search Warrant Affidavit.

19.     On May 18, 2020, law enforcement executed the search warrant that had been procured by Yasenchack through false and misleading testimony on Plaintiff's residence. Thereafter, a criminal complaint was issued against Plaintiff in the matter of *United States of America v. William Ellis*, United States District Court for the Northern District of Ohio, case no. 1:20CR0302.

20.     Plaintiff Ellis was arrested on May 20, 2020 on the basis of the criminal complaint issued in the matter of *United States of America v. William Ellis*, United States District Court for the Northern District of Ohio, case no. 1:20CR0302. Plaintiff remained incarcerated throughout the proceeding until the charges were dismissed on August 27, 2021.

### The Criminal Proceedings Against Plaintiff Are Dismissed After the Trial Court Determines That Defendant Yasenchack Provided False and Misleading Testimony In His Search Warrant Affidavit and Suppresses All Evidence Found at Plaintiff's Residence.

21.     In the matter of *United States of America v. William Ellis*, United States District Court for the Northern District of Ohio, case no. 1:20CR0302, the trial court determined that

5

Defendant Yasenchack had made false and misleading statements in his search warrant affidavit. The trial court further determined that Defendant's search warrant affidavit did not otherwise provide probable cause for the issuance of a search warrant. A copy of the trial court's Memorandum of Opinion and Order is attached hereto and incorporated herein.

22.     Following the suppression of all evidence seized from Plaintiff's residence, the criminal charges against Plaintiff were dismissed.

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS—42 U.S.C §1983—FALSE ARREST.

23.     Plaintiff incorporates paragraphs 1 through 21 as if fully rewritten.

24.     Defendant Yasenchack knowingly and/or recklessly provided false and misleading information that directly and proximately lead to the arrest, seizure and confinement of Plaintiff. Plaintiff's arrest and confinement were without probable cause.

25.     Plaintiff was wrongfully confined in excess of 15 months. The arrest and confinement of Plaintiff violated Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure.

26.     As a direct and proximate result of Plaintiff's unlawful arrest and confinement, Plaintiff suffered damages including loss of his personal liberty and physical and emotional pain and distress.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS—42 U.S.C §1983—MALICIOUS
## PROSECUTION.

27.     Plaintiff incorporates paragraphs 1 through 26 as if fully rewritten.

28.     Defendant Yasenchack caused criminal charges to be instituted against Plaintiff without probable cause. Yasenchack knowingly made false and misleading statements in an effort to encourage and/or initiate criminal proceedings against Plaintiff.

29.     Defendant Yasenchack's supervisors knew or should have known that Yasenchack had a practice of making false and misleading statements in an effort to unlawfully secure evidence and/or cause the filing of criminal charges.

30.     The Cuyahoga County Court of Common Pleas would not have issued a search warrant for Plaintiff's residence but for the false and misleading statements made by Yasenchack. Yasenchack's search warrant affidavit failed to provide probable cause necessary for the issuance of a search warrant.

31.     The criminal proceedings in the matter of *United States of America v. William Ellis*, United States District Court for the Northern District of Ohio, case no. 20CR0302 were commenced as a direct and proximate result of the false and misleading statements made by Yasenchack.

32.     The criminal proceedings in the matter of *United States of America v. William Ellis*, United States District Court for the Northern District of Ohio, case no. 20CR0302 were dismissed after the trial court determined Defendant Yasenchack provided false and misleading testimony and suppressed all evidence seized from Plaintiff's residence.

33.     The criminal proceedings in the matter of United States of America v. William Ellis, United States District Court for the Northern District of Ohio, case no. 20CR0302 terminated without a conviction of Ellis on or about August 27, 2021.

34.     Defendants' institution of criminal charges against Plaintiff without probable cause was done so in violation of Plaintiff's Fourth Amendment rights.

35.     As a direct and proximate result of Defendants' violation of Plaintiff's Fourth Amendment rights, Plaintiff suffered a loss of his liberty, incurred legal and expenses, and suffered emotional and mental anguish.

7

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS--42 U.S.C §1983**
**RATIFICATION BY DEFENDANT CITY OF CLEVELAND**

36.     Plaintiff incorporates paragraphs 1 through 35 as if fully rewritten.

37.     Defendant City of Cleveland had final policymaking authority, ratified the
conduct of Defendant Yasenchack described herein and/or otherwise failed to investigate or
punish said conduct. Defendant knew that Yasenchack had a history of making false and
misleading statements.

38.     Defendants the City of Cleveland's ratification referenced in the preceding
paragraph constitutes an official policy of Defendant the City of Cleveland, Ohio.

39.     Defendant City of Cleveland's ratification and/or failure to investigate or punish
as described herein renders it liable to William Ellis, for the constitutional violations alleged
herein in accordance with *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985) and its progeny.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS—42 U.S.C. §1983**
**MONELL CLAIM AGAINST DEFENDANT CITY OF CLEVELAND.**

40.     Plaintiff incorporates paragraphs 1 through 39 as if fully rewritten.

41.     Defendant City of Cleveland maintained a custom, policy and/or practice of
permitting its detectives to make and misleading statements in an effort to encourage and/or
cause the issuance of search and/or arrest warrants and/or the filing of criminal proceedings.

42.     Defendant Cleveland's custom, policy and/or practices was the driving force
behind the violation of Plaintiff's civil rights.

8

43.     As a direct and proximate result of Defendant's customs, policies and/or practices described herein, Plaintiff was falsely arrested and incarcerated, incurred legal expenses and was subjected to a criminal prosecution without probable cause, suffered physical and emotional distress, and loss of liberty.

## FIFTH CAUSE OF ACTION
### A STATE-LAW CLAIM FOR MALICIOUS PROSECUTION.

44.     Plaintiff incorporates paragraphs 1 through 43 as if fully rewritten.

45.     Defendants caused criminal charges to be filed against Plaintiff without probable cause.

46.     Defendant Yasenchack knowingly made false and misleading statements to secure a search warrant for Plaintiff's residence. Defendant's affidavit did not provide probable cause necessary for the issuance of a search warrant.

47.     All of the criminal charges against Plaintiff were dismissed after a trial court determined Defendant had made false and misleading statement.

48.     As a direct and proximate result of Defendants causing the malicious prosecution of Plaintiff, Plaintiff suffered a loss of liberty, incurred legal expenses, and suffered mental and physical pain and anguish.

**WHEREFORE**, Plaintiff prays that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial against Defendants;

B. Award Plaintiff punitive damages in an amount to be shown at trial against Defendants;

C. Award Plaintiff his reasonable attorney's fees, interest, costs and disbursements;

D. Grant Plaintiff such additional relief as the Court deems just and proper.

9

Respectfully submitted,

s/Joseph F. Scott
JOSEPH F. SCOTT (0029780)
Scott & Winters
The Caxton Building
812 Huron Road E., Suite 490
Cleveland, OH  44115
216-650-3318
jscott@ohiowagelawyers.com
Attorney for Plaintiff

s/Marcus Sidoti
MARCUS SIDOTI (0077476)
Jordan & Sidoti, LLP
The Terminal Tower
55 Public Square, Suite 1900
Cleveland, OH  44113-2205
440-227-1384
marcus@jordansidoti.com
Attorney for Plaintiff

## Jury Demand

Plaintiff hereby demands a trial by jury as to all issues.

_s/Joseph F. Scott_____
JOSEPH F. SCOTT (0029780)

10

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ELLIS, | ) | CASE NO. 1:22-cv-00815 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| DET. JEFFREY YASENCHACK, *et al.*, | ) | **DEFENDANT CITY OF CLEVELAND'S** |
| | ) | **FIRST SET OF INTERROGATORIES TO** |
| Defendants. | ) | **PLAINTIFF** |

Defendant, City of Cleveland ("City"), requestS that Plaintiff William Ellis answer separately, fully, in writing, and under oath, in accordance with Rule 33 of the Federal Rules of Civil Procedure, the following Interrogatories within 30 days after service hereof.

## INSTRUCTIONS

1.   In answering these Interrogatories, please furnish all information in your possession, under your control, presently available, or presently accessible to you or that which can be obtained through reasonable inquiry, including information in the possession of your attorneys, accountants, advisors, agents or other persons directly or indirectly connected with you, employed by you, or anyone otherwise subject to your control.

2.   If any such information called for by an Interrogatory is not in your possession, under your control, presently available, or presently accessible in the full detail required by the Interrogatory, such Interrogatory shall be deemed to require all presently possessed, controlled, available, or accessible information, including estimates. Where an estimate is made in response to an Interrogatory, the response shall state that it is an estimate and describe the method by which the estimation was made.



3. If any Interrogatory requests the identification of a document, piece of information, tangible item, or oral communication, or if any matter referred to in answer to an Interrogatory is evidenced by, represented by, reflected by, recorded in, or otherwise referred to in any document, piece of information, tangible item, or oral communication, in the answer to such Interrogatory, identify each such document, piece of information, tangible item, or oral communication, and attach a true and accurate copy of each document to the answers.

4. Please answer each Interrogatory separately and fully, in writing, and under oath.

5. If these Interrogatories cannot be answered in full, answer to the extent possible, specifying each reason for your inability to answer the reminder of the Interrogatory, and further state whatever information, knowledge, or belief you do have concerning the non-answered portion.

6. If any information called for by any Interrogatory is withheld on the basis of privilege, immunity, or objection, identify:

   a. The specific privilege, immunity, or objection asserted in withholding the information;

   b. The basis for your claim of privilege, immunity, or objection;

   c. A description of the nature and subject matter of the information withheld; and

   d. The names of the persons who supplied the information to you or who assisted in supplying the information to you.

7. None of these Interrogatories call for a narrative response, even though you may be asked to "fully identify" or "fully describe" the subject of a particular Interrogatory; rather, you

are being asked to answer with reasonable clarity and detail so that the City can better understand the nature of your claims.

8. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are under a continuing duty to immediately supplement your responses to these Interrogatories should you acquire any information responsive to any Interrogatory subsequent to the original answers provided. Specifically, you are under a continuing duty to supplement your response to Interrogatories which request (1) the identity of persons having knowledge of discoverable matters; or (2) the identity of each person expected to be called on as an expert witness at trial, the subject matter to which she is expected to testify, and the substance of her testimony. You are also under a continuing duty to supplement responses to Interrogatories if you obtain information on the basis of which:

a. You know that your original response was incorrect when made; or

b. You know that your original response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

## DEFINITIONS

1. "As used herein, "Plaintiff" shall refer to the named party in the operative complaint and all of his or her representatives and/or any person acting or purporting to act on his or her behalf.

2. As used herein, the terms "you" and "your" mean Plaintiff, his or her agents, employees, attorneys, representatives, and all other persons acting or purporting to act with or on behalf of him or her.

3

3. "Incident". As used herein, the term "incident" shall refer collectively to the alleged events that led to the arrest and trial of Plaintiff, as described in the operative Complaint, and is comprehensive, including any action, omission, error, intentional wrongdoing, conduct, conversation, or communication alleged in Plaintiff's Complaint.

4. "Document". As used herein, the term "document" includes, without limitation, the original, regardless of origin or location, of any correspondence, book, pamphlet, calendar, periodical, letter, memorandum, report, record, study, handwritten note, working papers, invoice, voucher, check, statement, chart, graph, map, diagram, blueprint, table, index, picture, voice recording, video recording, tape, microphone, tape data sheet, data processing card, data disk, or any other written, recorded, transcribed, punched, taped, filed, or graphic matter, however produced or reproduced, to which you have or have had access, the copies or reproductions of any of the above which differ in any respect from the original, such as copies containing marginal notations or other variations, and all other records or writings, however produced or reproduced, to which you have or have had access.

5. "Person". As used herein, the term "person" includes natural persons, corporations, public corporations, governments, governmental agencies, partnerships, groups, firms, associations, or other organizations or entities of any description.

6. "Communication". As used herein, the term "communication" is used in the broadest sense and includes any type written or oral communication, however produced, delivered, or sent, including, without limitation, any letters, correspondence, memoranda, notes, telegrams, electronic transmissions, including electronically transmitted facsimile documents and electronic mail sent by computer, or other electronically transmitted

devices, telephone conversations, personal conversations, meetings, conferences, negotiations, and/or investigations.

7. "Identify".

    a.    To "identify" a person, state with respect to each person:

        i.    His or her name, address, and telephone number;

        ii.    His or her company, business affiliation, or affiliation to Plaintiff at the dates and times related to this matter;

        iii.    His or her title and duties in the company or business with which he or she was affiliated; and

        iv.    His or her present day company or business affiliation and his or her title and duties to the company or business.

    b.    To "identify" a document, state with respect to each document:

        i.    The type of document;

        ii.    The date of the document;

        iii.    A description of the contents of the document;

        iv.    State the title of the document or other identifying data;

        v.    Identify the author of the document;

        vi.    Identify each person having possession, care, custody, or control of the original and any copies of the document thereof; and

        vii.    If such document was or no longer is in your possession or subject to your control, state what disposition was made of it.

    c.    To "identify" and oral communication or conversation, state with respect to each oral communication or conversation:

     i.      The date of the communication or conversation;

     ii.     The parties involved;

     iii.    A description of the substance of the communication or conversation;

     iv.    The place of the communication; and

     v.     Whether such communication has since been reduced to writing and, if so,

8.    As used herein, "and" as well as "or" shall be construed both disjunctively and conjunctively in order to bring within the scope of the request all responses which might otherwise be construed to be outside the scope.

9.    The term "relating to" is used in the broadest sense and includes, without limitation, all information or documents concerning, regarding, about evidencing, constituting, with respect to, referring to, alluding to, responding to, connected with, or commenting on the particular subject matter or issue discussed.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify the person or persons answering these Interrogatories.

**ANSWER:**


### INTERROGATORY NO. 2:

State your level of educational achievement including the school or college where you were most recently enrolled as a student.

**ANSWER:**


### INTERROGATORY NO. 3:

Please describe all written or oral statements you gave to any person about the Incident.

**ANSWER:**


**INTERROGATORY NO. 4:**

List any physical or psychological injuries you claim to have sustained as a result of the Incident alleged in your Complaint, specifically listing the nature of the injury, and the extent to which you have recovered from each of those injuries.

**ANSWER:**


**INTERROGATORY NO. 5:**

State from whom you received medical treatment for each physical or psychological injury you claim to have sustained as a result of the Incident alleged in your Complaint.

**ANSWER:**


**INTERROGATORY NO. 6:**

Itemize in detail and state the basis for any and all economic and non-economic compensatory damages you claim were incurred as a result of the Incident alleged in your Complaint, including, without limitation, all property damages, all economic damages, all lost wages, all medical damages, and all emotional distress damages.

**ANSWER:**


**INTERROGATORY NO. 7:**

With reference to each item of damage you claim, state whether you are or were entitled to receive benefits from insurance or any other source, whether such benefits have been paid, the name of the insurance company or source of benefits, your policy number, the type of coverage, the amounts of your medical bills which have been paid by the insurance company or other source, and the amount of money you have paid out of pocket.

**ANSWER:**


**INTERROGATORY NO. 8:**

Please fully identify any specific official policy or legislative enactment of the City of Cleveland that you contend caused a violation of your constitutional rights or other harm to you as alleged in the Complaint.

**ANSWER:**


**INTERROGATORY NO. 9:**

Please fully identify any specific acts by officials of the City of Cleveland with final decision-making authority that you contend caused a violation of your constitutional rights or other harm to you as alleged in the Complaint.

**ANSWER:**


**INTERROGATORY NO. 10:**

Please fully identify any specific training of police officers by the City of Cleveland that you believe was inadequate, showed deliberate indifference to your constitutional rights, and/or caused a violation of your constitutional rights or other harm to you as alleged in the Complaint.

**ANSWER:**


**INTERROGATORY NO. 11:**

Please fully identify any specific custom of tolerance or acquiescence by the City of Cleveland

of constitutional rights violations that you believe caused a violation of your constitutional rights

or other harm to you as alleged in the Complaint.

**ANSWER:**


**INTERROGATORY NO. 12:**

Please fully identify all civil lawsuits in which you have been a party.

**ANSWER:**


**INTERROGATORY NO. 13:**

List all criminal actions in which you have been a Defendant.

**ANSWER:**


**INTERROGATORY NO. 14:**

Identify each person who has personal knowledge of any facts relevant to the allegations in your

Complaint or who claims to have knowledge of any facts relevant to the allegations in your

Complaint.

**ANSWER:**


**INTERROGATORY NO. 15:**

Identify each expert witness you intend to call or have obtained for trial.

**ANSWER:**


**INTERROGATORY NO. 16:**

Identify each and every document, exhibit, or other item of evidence you will seek to offer into evidence at trial.

**ANSWER:**


**INTERROGATORY NO. 17:**

Please fully describe the facts and circumstances supporting your allegations in the Complaint that the alleged unconstitutional conduct by Detective Yasenchack was ratified and encouraged by the officer's supervisors.

**ANSWER:**


**INTERROGATORY NO. 18:**

On May 18, 2020, did you have in your possession, custody, or control at your residence located at E. 127 Street in Cleveland any Percocet pills, a Smith & Wesson .38 caliber revolver, ammunition, drug paraphernalia, carfentanil, heroin, fentanyl, cocaine, and tramadol?

**ANSWER:**


**INTERROGATORY NO. 19:**

If your answer to the foregoing interrogatory is anything other than an unqualified affirmative, please explain what parts of the foregoing interrogatory are not true.

**ANSWER:**

## <u>VERIFICATION</u>

William Ellis hereby declares under penalty of perjury that the foregoing answers to Interrogatories are true and correct.

_____

William Ellis

Executed on _____, 2022

Respectfully submitted,

MARK D. GRIFFIN (0064141)
Director of Law

By: s/ Timothy J. Puin
William M. Menzalora (0061136)
Chief Assistant Director of Law
Timothy J. Puin (0065120)
Assistant Director of Law
Amanda M. Boutton (0093659)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue E., Room 106
Cleveland, Ohio 44114
Tel:    (216) 664-2800
wmenzalora@clevelandohio.gov
tpuin@clevelandohio.gov
aboutton@clevelandohio.gov
Attorneys for Defendant City of Cleveland

## CERTIFICATE OF SERVICE

The undersigned counsel for the City of Cleveland hereby certifies that the foregoing

was emailed to Plaintiff's counsel Joseph Scott, jscott@ohiowagelawyers.com, and Marcus

Sidoti, Marcus@FGGfirm.com, this 4TH day of November, 2022, with copies to counsel for

Defendant Det. Jeffrey Yasenchack, Craig Morice, cmorice@clevelandohio.gov, and J.R.

Russell, jrussell2@clevelandohio.gov

s/Timothy J. Puin
TIMOTHY J. PUIN (0065120)

STATE OHIO          )            COURT OF COMMON PLEAS
                      )            CRIMINAL DIVISION
COUNTY OF CUYAHOGA )         __SEARCH WARRANT__

**TO:**  **CHIEF OF POLICE OF THE CLEVELAND POLICE DEPARTMENT, AND/OR DETECTIVE JEFFREY YASENCHACK, BADGE #2362, A MEMBER OF SAID DEPARTMENT, AND/OR ANY LAW ENFORCEMENT OFFICERS AS AUTHORIZED.**

**WHEREAS** there has been filed with me an affidavit, a copy of which is attached hereto, designated as Exhibit A, and incorporated herein as though fully rewritten, wherein the Affiant avers that he believes and has good cause to believe that on the premises, curtilage, attached garage, and all persons and vehicles, located therein, known as 638 East 127 St. in the City of Cleveland, Cuyahoga County, Ohio, and more particularly described as a single family house, two stories, cream in color siding, wood construction, with a small front porch, with a attached garage, and maroon shutters, on the west side of East 127 St. facing east, with the address affixed to the porch pillar. Within the above-described premises and vehicle, there is now being unlawfully kept, concealed and possessed the following evidence of a criminal offense:

        Fentanyl, heroin, and other narcotic drugs and/or controlled substances, instruments, and paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, use, possession, or shipment, records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-


DEFENDANT'S EXHIBIT E
PENGAD 800-631-6989

CLE000050

conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the drugs laws, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapters 2913, 2923, and 2925 or other fruits and instrumentalities of crimes at the present time unknown.

I am satisfied that there is probable cause to believe that the property described is being concealed on the above-described premises, curtilage, attached garage, all persons, vehicles, safes located within the premises, and that grounds for the issuance of this search warrant exist.

**THEREFORE:** You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant in the day *or* night season and search forthwith within three (3) days of the date hereof, for the property specified, making the search in the *day or night season,* and if the property or any part thereof be found there, you are commanded to seize it, leaving a copy of this warrant to the undersigned or any Judge of the Court of Common Pleas, and to bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the court having cognizance thereof.

Given my hand this ⎮⎫⎮ day of May 2020.

_____
Judge, Court of Common Pleas
Cuyahoga County, Ohio

**EXHIBIT "A"**

2

CLE000051

STATE OF OHIO          )          COURT OF COMMON PLEAS
                       )          CRIMINAL DIVISION
COUNTY OF CUYAHOGA  )          <u>AFFIDAVIT FOR SEARCH WARRANT</u>

Before me a Judge of the Court of Common Pleas, personally appeared the undersigned, Detective Jeffrey Yasenchack, Badge #2362, who being first duly sworn deposes and says that he is a member of the Cleveland Police Department. Affiant states that he has been a member of the Cleveland Police Department for nearly twenty-two years, had been a member of the Cleveland Police Department Narcotics Unit for two years, and has been a detective in the 5th District Vice unit for the past six years. Affiant states that he has received training in the identification and testing of illegal narcotics, recognition of controlled substances, the methods of packaging controlled substances on the street and the manner in which sellers of controlled substances operate and the detection of narcotics trafficking as his basic course at the Cleveland Police Academy. Affiant states that he has made thousands of arrests for violations of state drug laws. Affiant has interviewed hundreds of drug traffickers as well as drug abusers. Affiant has participated in the execution of hundreds of search warrants. Affiant has participated in hundreds of purchases of narcotics using confidential informants. Based on the above training and experience, affiant is familiar with the modus operandi of persons involved in the illegal distribution of controlled substance as well as the terminology used by persons involved in the illegal distribution of controlled substances. Affiant has participated with other members of his unit in an ongoing investigation into the drug trafficking operations described below; affiant has not always personally observed everything described below, but that which he did not personally observe was described to him by the other investigating officers who did.

3

CLE000052

Affiant avers that he believes and has good cause to believe that on the premises, curtilage, attached garage, and all persons and vehicles, located therein, known as **638 East 127 St.** in the City of Cleveland, Cuyahoga County, Ohio, and more particularly described as a single family house, two stories, cream in color siding, wood construction, with a small front porch, with a attached garage, and maroon shutters, on the west side of East 127 St. facing east, with the address affixed to the porch pillar. Within the above-described premises and vehicle there is now being unlawfully kept, concealed and possessed the following evidence of a criminal offense:

Fentanyl, heroin, and other narcotic drugs and/or controlled substances, instruments, and paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, use, possession, or shipment, records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the drugs laws, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapters

4

CLE000053

2913, 2923, and 2925 or other fruits and instrumentalities of crimes at the present time unknown.

The facts upon which Affiant bases such belief are as follows:

1. Affiant avers that in mid April 2020 he received information from a concerned citizen about a black male residing at 638 East 127 St. selling drugs out of his house. The citizen further stated that a lot of white people were arriving at this house, staying a short time and then leaving and the male has been driving a black SUV.

2. Affiant avers that in early May 2020 a confidential informant (CI) provided affiant with information on a black male known as "Lays," described as tall, over six feet, 240 lbs., bald or shaved head, approximately 35-40 years old, drives a black Ford Explorer with Ohio plate HYH8894, and lives at 638 East 127 St. Affiant using google maps brought up this area and CI pointed out the house. CI stated he sells heroin and crack cocaine and instructed affiant to watch the house and observe the volume of white people arriving to buy drugs.

3. Affiant avers that he ran the plate HYH8894 through the OHLEG database and learned the owner was a known male, William Ellis, dob 9-18-1978, SS#***-**-6706. The CI when shown a BMV photo of Ellis positively identified him as the male CI knew as "Lays." Affiant arrested Ellis in 2019 having in his possession heroin, carfentanil, cocaine, and marijuana during a traffic stop. This case is open and currently in appeals court.

4. Affiant avers that during the past seventy-two hours affiant set up surveillance on 638 East 127 St. (the Premises). The black Ford Explorer was parked on the street in front of the premises. After a few minutes a burgundy Dodge Magnum parked on the street. Two white males exited and knocked on the front door. Ellis opened the door and held the security door open while the two white males entered the premises. A blue Saturn parked on the street, a white female exited, and walked to the premises' front door. She was also let in by Ellis who stepped onto the porch, looked down the street just as a white vehicle pulled into the driveway of the premises. Two people from that vehicle entered the premises. The first two males exited and drove off. The female exited, re-entered the Saturn, and drove off. The listed owner of the Saturn who matched the female affiant observed had convictions for drug possession. A couple minutes later the last two people exited the premises and drove off. Affiant stopped this last vehicle and recovered fentanyl from the occupants.

5. Affiant avers that the occupants became confidential informants (CIs) and supplied information about their dealer known as "Blaze." He was described as a black male, 6'4", 250 lbs., bald with a beard, about 40 years old. CIs positively identified their dealer when shown a BMV photo of Ellis. They had purchased heroin from Blaze over a dozen times, contacting him via phone#216-407-1016.

5

6. Affiant avers that he field tested, using a NIK field test kit, a sample of the suspected heroin, which did test positive for the presence of fentanyl. Affiant avers that the NIK field test kit has been utilized by affiant and members of the Cleveland Police Department in the past on numerous occasions, and when said field tested substances were re-tested by the Cuyahoga county lab, the results of the NIK test have always proven to be true and accurate; said field test has never proven to be inaccurate in the experience of affiant. Affiant avers that the fentanyl was sealed into drug bag#589960 and has been submitted to the county lab for testing, results still pending.

7. Affiant avers that a check of the Cuyahoga county felony docket revealed the following convictions for Ellis: 1996 case# CR-96-346236 pleading guilty to attempted drug possession M1 receiving nine months of community control, 1997 case# CR-97-349373 drug trafficking F4, drug possession F5 receiving one year of community control, 2000 case# CR-00-397031 receiving stolen property (MV) receiving one year of community control, 2001 case# CR-01-415901 fleeing and eluding M1 receiving a six month jail term, 2006 case# CR-07-495646 kidnapping with sexual motivation spec F1, gross sexual imposition F4, assault M1, receiving a five year prison term, 2007 case# CR-07-498821 felonious assault F3, criminal damaging M1 receiving a three year prison term, and open 2020 case# CR-20-648922 failure to comply with a police order.

8. Affiant avers that a check of the OHLEG database revealed an eSORN entry for Ellis due to his gross sexual imposition conviction in 2007 and has to register his address with the Cuyahoga County Sheriff's office. The last supplied address was 638 East 127 St. and listed his vehicle as a black Ford Explorer with temp tag H237873, which is the same Explorer with Ohio plate HYH8894.

9. Based on these facts, affiant avers that he has probable cause to believe, and does believe that the above described items will be found within the Premises, attached garage, curtilage, and all persons, vehicles, and safes located therein.

10. In the experience of affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions, including computers and computer files and discs, and evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes.

11. In the experience of affiant, persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person, or within their possession, for use against law enforcement officials, as well as other citizens.

12. In the experience of affiant, narcotic drugs are frequently carried or concealed by people who are present at locations where drugs are used, possessed, kept, or being sold and the size of usable quantities of drugs are small, making them easy to conceal on one's person. It is also affiant's experience that drug houses will be occupied by numerous individuals. Some persons will be involved with the direct sales, some

6

CLE000055

with the job of protecting the premises, some with preparing and packaging drugs, and some with the collection of the monies generated from the illegal activity. It is also affiant's experience and training that those who are traffic in illegal drugs will usually not permit those who are unaware or uninvolved in drug trafficking activity or use within the premise where the trafficking is conducted. It is therefore necessary to search all persons located in the premises.

13.  Affiant avers that in his experience, persons who traffic in illegal drugs frequently keep illegal narcotics, records of illegal transaction, money, firearms, weapons and other contraband in safes.

14.  Affiant avers that it may urgently be necessary that the Premises be searched in the night season forthwith to prevent the above-described property from being concealed or removed, and for the safety of the executing officers.

FURTHER AFFIANT SAYETH NAUGHT.

Affiant

Jeffrey Yasenchack, Detective
Cleveland Police Department
5th District Vice Unit

Sworn to before me and subscribed in my presence this ___ day of May 2020

JUDGE, COURT OF COMMON PLEAS
Cuyahoga County, Ohio

7

CLE000056