# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM ELLIS,** | ) | CASE NO.: 1:22-CV-00815-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| **DET. JEFFREY YASENCHACK**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## MOTION FOR SUMMARY JUDGMENT BY
## DEFENDANT DET. JEFFREY YASENCHACK

---

Defendant Det. Jeffrey Yasenchack ("Det. Yasenchack"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, respectfully requests that this Honorable Court grant judgment in his favor against Plaintiff William Ellis ("Plaintiff"). Det. Yasenchack is entitled to judgment because Plaintiff cannot succeed on his three claims against him, namely: 1) False Arrest (pursuant to §1983), 2) Malicious Prosecution (pursuant to §1983), and 3) Malicious Prosecution (pursuant to state law) (*Doc. 1, PageID #1-10*). Defendant City of Cleveland ("the City") is filing a separate Motion for Summary Judgment to address all remaining claims in Plaintiff's Complaint.

Respectfully submitted,

By:  */s/ J.R. Russell*

James R. Russell, Jr. (0075499)
Chief Assistant Director of Law
Carli R. Young (0095433)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: JRussell2@clevelandohio.gov
Email: CYoung2@clevelandohio.gov
*Attorneys for Defendant Det. Jeffrey Yasenchack*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………iv-vi

STATEMENT OF ISSUES……………………………………………………vii-viii

SUMMARY OF ARGUMENT…………………………………………………iii, ix, 8

STATEMENT OF FACTS……………………………………………………...1-5

LEGAL STANDARD………………………………………………………..5-8

LAW AND ARGUMENT……………………………………………………..8-20

A.  Plaintiff cannot succeed as a matter of law on his false arrest claim made pursuant to §1983………………………………………………………………...………………………9

1. Plaintiff cannot avoid the evidence definitively establishing probable cause based solely on the fact that the evidence was eventually suppressed in the criminal proceeding……..……………………………………………………………………11

2.  An adverse inference is established against Plaintiff in this action pursuant to the Fifth Amendment…………………………..……………………………………………13

B. Plaintiff cannot succeed as a matter of law on his malicious prosecution claim pursuant to § 1983……………………………………………………………………..15

C. Plaintiff's state law claim for malicious prosecution fails as a matter of law.......................................................................................................................17

CONCLUSION…………..…………………………………………………………20

CERTIFICATE OF COMPLIANCE…………………………………………………21

CERTIFICATE OF SERVICE…………………………………………………..21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009)…………………………………..6

*Anderson v. Creighton*, 482 U.S. 635, 107 S.Ct. 3034 (1987)…………………………….8

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505 (1986)………………………..6

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011)………………………………..7

*Barrera v. City of Mount Pleasant*, 12 F.4th 617 (6th Cir. 2021)……………………..7, 10

*Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551 (1976)……………………………...13

*Black v. Wigington*, 811 F.3d 1259 (11th Cir. 2016)……………………………………..11

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)………………………….15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)…………………………..6

*Chiaverini v. City of Napoleon, Ohio*, 2023 WL 152477 (6th Cir. Jan. 11, 2023)……….10

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006)……………………………………..7

*Coffey v. Carroll*, 933 F.3d 577 (6th Cir. 2019)…………………………………………...7

*Cuyahoga Heights Local Sch. Dist. v. Palazzo*, 2016-Ohio-5137,
69 N.E.3d 162 (8th Dist. Ohio App.)………………………………………………………..14

*Devenpeck v. Alford*. 543 U.S. 146, 125 S.Ct. 588 (2004)………………………………10

*District of Columbia v. Wesby*, 583 U.S.---, 138 S. Ct. 577 (2018)……………………7, 8

*Estate of Taylor v. Salt Lake City*, 16 F.4th 744 (10th Cir. 2021)………………………..12

*Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351,
639 N.E.2d 31 (Ohio 1971)………………………………………………………...18, 19

*Fox v. DeSoto,* 489 F.3d 227 (6th Cir.2007)……………………………………………..15

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000)…………………………………..10

*Gumble v. Waterford Twp.*, 171 Fed. Appx. 502 (6th Cir. 2006)……………………..10, 11

iv

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727 (1982)……………………………7

*Hector v. Watt,* 235 F.3d 154 (3rd Cir. 2000)………………………………………...12, 13

*Howse v. Hodous*, 953 F.3d 402 (6th Cir. 2020)………………………………………8, 10

*Iannuzzi v. Harris*, 2011-Ohio-3185 (7th Dist. Ohio App.)………………………………19

*Johnson v. Greater Cleveland Regional Transit Auth.*,
2021-Ohio-938, 171 N.E.3d 422 (8th Dist. Ohio App.)……………………………...18, 19

*Klepper v. First Am. Bank*, 916 F.2d 337 (6th Cir. 1990)…………………………………6

*Lindsey Whirlpool Corp.*, 295 Fed. Appx. 758 (6th Cir. 2008)…………………………...6

*Lingo v. City of Salem*, 832 F.3d 953 (9th Cir. 2016)……………………………..........11

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)……………………………………………7

*Martin v. Bennett*, 2022 WL 875246 (N.D. Ohio March 24, 2022)……………………..16

*Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019)…………………………………...11, 12, 13

*McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16 (1924)………………………………..14

*Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627 (1979)……………………………10

*MISC Berhad v. Advanced Polymer Coatings, Inc.*,
101 F. Supp.3d 731 (N.D. Ohio 2015)……………………………………………………6

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985)…………………………7

*Morrison v. Warrensville Heights*, 2022-Ohio-1489 (8th Dist. Ohio App.)…………18, 19

*Ohio Bell Tel. Co. v. Digioia-Suburban Excavating, LLC*,
2008-Ohio-1409 (8th Dist. Ohio App.)……………………………………………………19

*Pearson v. Calahan*, 555 U.S. 223, 129 S.Ct. 808 (2009)………………………………7

*Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357,
118 S.Ct. 2014 (1998)……………………………………………………………………12

*Rafferty v. Trumbull Cnty.*, 915 F.3d 1087 (6th Cir. 2019)………………………………7

*Richards v. County of Washtenaw*, 818 Fed. Appx. 487 (6th Cir. 2020)………………...16

v

*Sanders v. Jones*, 845 F.3d 721 (6th Cir. 2017)……………………………………..15

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001)…………………………………..8

*Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007)…………………………………..6

*State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334,
1998-Ohio-431, 691 N.E.2d 282 (Ohio)…………………………………………………14

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)……………………………7

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)………………………………………...15

*Thompson v. Clark*, --- U.S. ---, 142 S.Ct. 1332 (2022)…………………………………15

*Townes v. City of New York*, 176 F.3d 138 (2nd Cir. 1999)………………………………...12

*Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732……………………...17

*U.S. v. Hansley*, 469 U.S. 221, 105 S.Ct. 675 (1985)……………………………………10

*U.S. v. Lyons*, 687 F.3d 754 (6th Cir. 2012)………………………………………………...10

*U.S. v. Williams*, 615 F.3d 657 (6th Cir. 2010)…………………………………………...11

*Vega v. Tekoh*, --- U.S. ----, 142 S.Ct. 2095 (2022)……………………………………...11

*Voyticky v. Village of Timberlake*, 412 F.3d 669 (6th Cir. 2005)……………………10, 15

*White v. City of Cleveland*, 2020 WL 7640932 (N.D. Ohio Dec. 23, 2020)…...7, 8, 11, 16

*White v. Pauly*, 580 U.S.---, 137 S.Ct. 548 (2017)………………………………………..7

*Wolford v. Sanchez*, 2005-Ohio-6992 (9th Dist. Ohio App.)……………………………17

*Wren v. Towe*, 130 F.3d 1154 (5th Cir. 1997)……………………………………………12

**Rules and Statutes**

*Fed.R.Civ.P.56*………………………………………………………….........5, 6

*42 U.S.C. § 1983*……………………………………………..8, 11, 12, 13, 15, 17, 18

*R.C. 2744.03*…..……………………………………………………………………18

## STATEMENT OF THE ISSUES

1. Plaintiff did not file a claim for an illegal search. Instead, Plaintiff filed a claim alleging a false arrest that he claims violated his constitutional rights. He claims this gives him a cause of action under 42 U.S.C. § 1983. Where there was sufficient evidence to warrant a prudent person in believing that Plaintiff committed, is committing, or is about to commit an offense, can he maintain a claim for false arrest as a matter of law?

2. Plaintiff alleges that he has a cause of action for false arrest and malicious prosecution because a trial court ultimately suppressed the evidence obtained after execution of a search warrant. The fact that evidence was suppressed does not make it any less relevant or legally available for establishing probable cause in a subsequent action pursuant to 42 U.S.C. § 1983. Because the exclusionary rule does not apply to a civil suit under § 1983, can Plaintiff maintain claims for false arrest and malicious prosecution as a matter of law?

3. The Fifth Amendment right against self-incrimination is a shield in criminal cases, but it does not operate in the same fashion in civil cases. When a plaintiff asserts the Fifth Amendment right in a proceeding in a civil case that he initiated, an inference can be drawn that the plaintiff's answer to the question would be self-incriminating. Can Plaintiff avoid the inference against him that there was probable cause to support his arrest and detention by asserting the Fifth Amendment to questions germane to probable cause at his deposition?

4. In order to prove a malicious prosecution action pursuant to 42 U.S.C. § 1983, a plaintiff must prove that a criminal prosecution was initiated against him; the

defendant made, influenced, or participated in the decision to prosecute him; the state lacked probable cause for the prosecution; the plaintiff suffered a deprivation of liberty because of the legal proceeding; and, the action was resolved in plaintiff's favor. There is insufficient evidence in this case that Det. Yasenchack made, influenced, or participated in the federal prosecution of Plaintiff. There was also substantial probable cause for the prosecution. Can Plaintiff prove that Det. Yasenchack committed any clearly established violation of Plaintiff's constitutional rights, thereby causing him injury?

5. A malicious prosecution claim pursuant to state law requires proof that the state lacked probable cause for the prosecution. Where there is substantial probable cause for Plaintiff's arrest and prosecution, can Plaintiff succeed on this claim?

6. Can Plaintiff demonstrate any clearly established constitutional violation by Det. Yasenchack that could sufficiently overcome qualified immunity?

7. Can Plaintiff demonstrate an exception to statutory immunity pursuant to *R.C. 2744.01, et seq.* that would allow Plaintiff relief on his state law claim?

## SUMMARY OF THE ARGUMENT

Plaintiff's claims in this litigation all relate to events that took place after the search of Plaintiff's home on May 18, 2020, i.e. his arrest, indictment, and detention "on charges of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g) and possession with intent to distribute, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)." (*Doc. 1, PageID #1-10*). Notably, Plaintiff did not bring a claim for an alleged illegal search. Plaintiff brings three causes of action against Det. Yasenchack, including False Arrest pursuant to § 1983 (Count One), Malicious Prosecution pursuant to § 1983 (Count Two), and Malicious Prosecution under state law (Count Five). *Id.* The doctrine of qualified immunity protects Det. Yasenchack from Plaintiff's suit and any potential liability. Plaintiff cannot prove any clearly established constitutional violations to support claims against Det. Yasenchack.

A false arrest claim requires proof that the subject arrest was without probable cause. If probable cause existed for at least one of the charges on May 18, 2020, then the arrest was valid. The officer will be protected by qualified immunity even when there is a mistake of law or fact by the officer.

First, Plaintiff can only attempt to prove the elements of his causes of action if the Court applies the fruit of the poisonous tree doctrine to a civil case. However, it does not appear that any court has applied this doctrine to a § 1983 civil case. The fact that evidence may be suppressed in an underlying criminal case does not make it any less relevant to establishing probable cause for the arrest in a subsequent civil suit. The Second, Fifth, Seventh, Tenth, and Eleventh Circuits all held under similar circumstances

ix

as this case that the plaintiff could not succeed as a matter of law. This is especially true when all the damages sought relate to a post-arrest deprivation of liberty.

Second, Plaintiff asserted his Fifth Amendment right during his deposition testimony regarding matters that definitively establish probable cause for his arrest. This is a case that Plaintiff filed against Det. Yasenchack. Plaintiff affirmatively placed these issues before the Court. Consequently, an adverse inference is proper against Plaintiff that there was sufficient probable cause for his arrest. This adverse inference supports other uncontested facts that establish probable cause that Plaintiff has committed a crime.

Likewise, regarding the § 1983 malicious prosecution claim, Plaintiff cannot prove that Det. Yasenchack was anything other than a passive or neutral participant in the prosecution of the federal offenses. Moreover, probable cause for an arrest and initiated prosecution defeats an essential element of a malicious prosecution claim. Plaintiff does not have evidence that he was innocent of the charges filed. A failed prosecution alone does not give rise to a malicious prosecution claim.

Finally, sufficient probable cause exists to unequivocally defeat Plaintiff's state law claim for malicious prosecution. The applicable immunity statute also bars Plaintiff's state law claims even if he could allege sufficient facts to support such a claim.

Accordingly, this Court should grant summary judgment in Det. Yasenchack's favor all three claims. Further analysis and argument on these issues follows this summary.

<u>**MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT**</u>

**I.  STATEMENT OF FACTS**

**A. Det. Yasenchack conducts a preliminary investigation.**

In April of 2020, Det. Yasenchack of the Cleveland Division of Police, Fifth District Vice Unit, made a routine traffic stop of a motorcycle on East 127th Street. (*Yasenchack Dep.* 23:1-22). Det. Yasenchack agreed not to issue a citation to this motorcyclist if he could supply him with any information or concerns about drug-related activity in the neighborhood. *Id.*, 36:2-3, 23:20-23. The motorcyclist "discretely signaled" to the home where Plaintiff lived, advising that a large volume of people came in and out of the house. *Id.*, 24:6-13. This being a signal of possible drug activity, Det. Yasenchack subsequently attempted to corroborate the tip. *Id.*, 26:7-8, 34:15-19.

Early the next month, Det. Yasenchack received additional information from a confidential informant that an individual matching Plaintiff's description sold narcotics in the subject area. *Id.*, 36:17-23, 37:5-15, 39:12-20. The confidential informant was able to confirm Plaintiff's identity (*Plaintiff's Exhibit 1, Search Warrant*, ¶ 2-3; *Yasenchack Dep.* 36:17-23, 41:2-6, 48:7-10). On or about May 11, 2020, Det. Yasenchack set up surveillance around 638 East 127th Street from his vehicle. *Id.*, 42:19-25, 47:1-3, 18-23. He observed a black Ford Explorer SUV associated with Plaintiff at that residence. *Id.*, 48:4-10, 52:1-4. While watching for activity at the home, Det. Yasenchack observed several vehicles park on the street near the home. *Id.* Occupants from those vehicles entered and exited the home. Id. 48:21-25, 51:16-21, 52:5-22.

Det. Yasenchack stopped one of the vehicles immediately after it left 638 East 127th Street; Matthew Radovanic and Vanessa Smith occupied that vehicle. *Id.*, 52:20-25, 53:1-14. Both of these individuals were inside Plaintiff's residence minutes before; Det.

Yasenchack discovered that both were in possession of narcotics, which field-tested positive for Fentanyl. *Id.*; *Exhibit A*; *Search Warrant Affidavit ¶ 6.*

Mr. Radovanic further informed Det. Yasenchack that he obtained the narcotics from Plaintiff (*Sheehan Dec.*, p. 2; *Yasenchack Dep.* 70:5-9). Mr. Radovanic subsequently became an informant to avoid prosecution for the drugs he possessed (*Yasenchack Dep.* 53:23-25, 56:20-25). He also came to the police station and provided further information to Det. Yasenchack relating to Plaintiff. *Id.*, 54:1-8. Det. Yasenchack then continued surveillance of 638 East 127th Street. *Id.*, 63:6-25.

**B. The Cuyahoga County Court of Common Pleas issues a search warrant for Plaintiff's residence.**

Det. Yasenchack drafted an affidavit for a search warrant that described the results of his investigation and submitted it to a prosecutor for review (*Yasenchack Dep.* 19:14-17; *Plaintiff's Exhibit 4*, p. 1). Det. Yasenchack based his request for a search warrant, in part, on his familiarity with "the modus operandi of persons involved in the illegal distribution of controlled substances…" (*Plaintiff's Exhibit 1*, p. 1). Significantly, Det. Yasenchack witnessed several people coming and going from Plaintiff's home and recovered illegal narcotics from two such persons with verbal confirmation that they had obtained the drugs from Plaintiff. *Id.*, p. 3.

In addition to the findings of his recent investigation, Det. Yasenchack included a brief summary of Plaintiff's criminal history in the affidavit for search warrant, which included multiple prior felony and misdemeanor convictions as well as an open case pending with the Cuyahoga County Court of Common Pleas (CR-20-648922) (*Plaintiff's Exhibit 1*, p. 4, ¶ 7). He also mentioned an unrelated 2019 case, which involved Det. Yasenchack arresting the same Plaintiff for drug possession on a previous occasion. *Id.*,

p. 3, ¶ 3. Notably, Det. Yasenchack, was not aware the case was dismissed by the Court of Appeals the previous month due to untimeliness; it was then dismissed by the Court of Common Pleas on the same day that Det. Yasenchack presented the affidavit for search warrant for judicial review (*Yasenchack Dep.* 27:3-16, 28:23-25; *Plaintiff's Exhibit 1*).

On Thursday, May 14, 2020, after reviewing the affidavit presented, Cuyahoga County Common Pleas Judge Brian McCormack found sufficient probable cause for the search of 638 East 127th Street and Plaintiff's vehicle for drugs and weapons. *Id.* Det. Yasenchack then conducted further surveillance of Plaintiff's residence to confirm that Plaintiff continued to reside there until the execution of the search warrant on the following Monday. *Id.*, 62:7-11.

### C. The Joint Task Force obtains evidence establishing probable cause for Plaintiff's arrest.

Officers from the Fifth District Cleveland Division of Police, ATF, and Cleveland SWAT executed the search warrant at 638 East 127th Street, Cleveland, Ohio, on Monday, May 18, 2020 (*Nichols Dec.*, p. 2). Plaintiff and Melissa Stalker were both present when law enforcement arrived at the residence. *Id.* Det. Yasenchack was present, along with several other officers, including K9 Officer Nichols and his partner Hugo, Captain Kain, and Detective Kopchak (*Yasenchack Dep.* 61:8-10; *Plaintiff's Exhibit 4*, p. 1-2).

First, SWAT officers cleared the home after entering through the front door (*Plaintiff's Exhibit 4*, p. 1-2). They immediately found a separate room dedicated to a marijuana growing operation. *Id.* Officer Nichols went through the house with Captain Kane to ensure the safety of any officers conducting a further search (*Nichols Dec.*, p. 2). Then, Officer Nichols walked through the house with his canine partner to give officers a

3

better idea of where to conduct their searches. *Id.* Officer Nichols' canine partner provided alerts in the first floor kitchen and one of the upstairs bedrooms. *Id.*

Significantly, Hugo also gave several aggressive alerts in Plaintiff's bedroom. *Id.* He signaled a strong indication of the presence of narcotics near the closet door. *Id.* Hugo pinpointed a large male's jacket hanging on the outside top of the closet door. *Id.* Officer Nichols later pointed the jacket out to Det. Yasenchack. *Id.* Det. Yasenchack then searched the jacket and found a Fentanyl compound in a plastic bag. *Id.*; *Exhibit A*; *Exhibit B*, p. 9. In addition, officers found digital scales with residue, magazines containing several live rounds, firearms, and ammunition (*Plaintiff's Exhibit 4*). Plaintiff admitted that there was a loaded Smith & Wesson revolver in his bedroom on May 18, 2020 (*Exhibit B*, p. 7). There was also a box and bag of .556 ammunition, a box of .762 ammunition, and a box of .9 millimeter ammunition in Plaintiff's residence (*Exhibit B*, p. 10).

**D. The United States prosecutes Plaintiff for two federal offenses.**

Because of the recovery of a firearm from Plaintiff's residence and the involvement of ATF in the execution of the search warrant, Det. Kopchak presented the resulting criminal case in Federal Court (*Yasenchak Dep.* 60:20-25, 61:1-13). On May 18, 2020, Det. Kopchak initiated a criminal complaint in the United States District Court pursuant to 18 U.S.C. § 922 for possession of a firearm by a convicted felon (*Exhibit C*).

On May 28, 2020, Magistrate Judge Ruiz conducted a preliminary hearing and detention hearing in Plaintiff's criminal case (*Exhibit D*). Det. Yasenchack did not testify at the hearings. *Id.* Magistrate Judge Ruiz considered testimony from Det. Kopchak relating to Plaintiff's actions, along with the narcotics, weapons, and ammunition found

at Plaintiff's residence pursuant to execution of the search warrant on May 18, 2020. *Id.*, p. 11-27. The Magistrate Judge found there was sufficient probable cause for the charges based on this evidence (*Exhibit E*, p. 1-2). Magistrate Judge Ruiz also found that based on the applicable statutory factors, the government's motion was warranted and sustained for Plaintiff's pretrial detention. *Id.*

On June 11, 2020, a duly impaneled grand jury indicted Plaintiff for possession of narcotics with intent to distribute and for being a felon in possession of a firearm and ammunition (*Exhibit F*). All of these charges arose from what officers directly observed during the search of Plaintiff's house on May 18, 2020. Plaintiff executed a waiver of his speedy trial rights in *United States v. Ellis*, N.D. Ohio Case No. 20-cr-302 (*Ellis Dep.*72:12-15, 73:5-25, 75:18-23). The Court conducted a suppression hearing on July 21, 2021 and subsequently granted Plaintiff's motion to suppress, thereby suppressing all evidence seized from Plaintiff's residence. That decision ultimately resulted in the Government dismissing the criminal proceedings in *U.S. v. Ellis*, Case No. 1:20-cr-0302 (*Doc. 6, PageID #29-30*). Accordingly, the Court released Plaintiff from pretrial detention on August 27, 2021 (*Doc. 1, PageID #6*).

## II.    LEGAL STANDARD

### A.  Law Governing Motions for Summary Judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party may move for summary judgment, "identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought." *Fed.R.Civ.P.56(a)*. Summary judgment is proper if a defendant establishes that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials…" *Fed.R.Civ.P.56(c)(1)(A)*. The movant can also demonstrate "that an adverse party cannot produce admissible evidence to support" facts necessary to succeed on a claim. *Fed.R.Civ.P.56(c)(1)(B)*. "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Lindsey Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008*), quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

"[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp.3d 731, 736 (N.D. Ohio 2015). In order for a non-movant to prevail against a motion for summary judgment, there must be evidence on which the trier of fact could reasonably find for the non-movant. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990); *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986).

"Not every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). *See also Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007) (plaintiff's version was "so utterly discredited by the record that no reasonable jury could have believed him"); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

**B. Law Governing Qualified Immunity.**

Det. Yasenchack asserts that he is entitled to qualified immunity in this case. Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S. Ct. 2727 (1982). It is not a "mere defense to liability," it is *immunity from suit. Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).

Once raised, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006); *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019). In order to meet this burden, a plaintiff must establish: 1) whether the facts show the officers violated a constitutional right, and 2) whether the violations were clearly established at the time of the challenged conduct. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021), *citing Pearson v. Calahan*, 555 U.S. 223, 232, 129 S.Ct. 808 (2009). These steps may be addressed in any order, and a defendant officer need only prevail on one of them to be granted immunity. *Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019); *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

The Supreme Court reiterated, "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S.---, 137 S.Ct. 548, 552 (2017), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011). Clearly established "means that the law is so clear at the time of the incident that every reasonable officer would understand the unlawfulness of his conduct." *District of Columbia v. Wesby*, 583 U.S.---, 138 S. Ct. 577, 589 (2018). "It is not enough that the rule is suggested by then-existing precedent." *Id.* The standard

"requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* The contours of the rule must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id., quoting Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Wesby, supra.*, 138 S. Ct. at 589-590, *quoting Anderson v. Creighton*, 482 U.S. 635, 641, 107 S.Ct. 3034 (1987). Thus, courts "must examine the *particular* situation that [the defendant officers] confronted and ask whether the law clearly established that their conduct was unlawful." *White v. City of Cleveland*, 1:17-cv-01165, 2020 WL 7640932,*11 (N.D. Ohio Dec. 23, 2020), *quoting Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). As discussed below, Plaintiff cannot meet either prong of the test necessary to overcome qualified immunity.

## III.   LAW AND ARGUMENT

Plaintiff's complaint contains three claims against Det. Yasenchack, individually. Those claims are for False Arrest pursuant to 42 U.S.C. § 1983 (Count One), Malicious Prosecution pursuant to 42 U.S.C. § 1983 (Count Two), and Malicious Prosecution pursuant to state law (Count Five). All three claims are causes of action pertaining to detentions that took place *after* the search of his home on May 18, 2020. The doctrine of qualified immunity protects Det. Yasenchack from Plaintiff's suit and any potential liability. Plaintiff cannot prove any clearly established constitutional violations to support his claims against Det. Yasenchack.

A false arrest claim requires proof that the arrest was without probable cause. If probable cause existed for at least one of the charges on May 18, 2020, then the arrest was valid. Further, the officer will be protected by qualified immunity even when there is

a mistake of law or fact by the officer. There can be no question that there was probable cause to arrest Plaintiff.

Similar to a false arrest claim, probable cause for a subsequently-initiated prosecution will defeat an essential element of a malicious prosecution claim. A failed prosecution alone does not give rise to a malicious prosecution claim, while Plaintiff does not have any evidence that he was innocent of the charges filed. Additionally, Plaintiff cannot establish that Det. Yasenchack was anything other than a passive or neutral participant in the prosecution of the federal offenses. All of these facts defeat both of Plaintiff's claims for malicious prosecution. The applicable immunity statute also bars Plaintiff's state law claim even if he could allege sufficient facts to support such a claim.

### A. Plaintiff cannot succeed as a matter of law on his false arrest claim made pursuant to § 1983.

Plaintiff claims that Det. Yasenchack "provided false and misleading information that directly and proximately led to the arrest, seizure and confinement of Plaintiff." (*Doc. 1, PageID #6*). He claims that his "arrest and confinement were without probable cause." *Id.* First, Plaintiff did not file a claim for an illegal search. There is no arguably "false and misleading information" relevant to his arrest or subsequent detention during his prosecution. And second, no trier of fact could reasonably find that Plaintiff's arrest in the underlying criminal case was without probable cause. Plaintiff cannot overcome qualified immunity by proving there was a clearly established violation.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). An officer has probable cause to arrest a suspect when the "facts and circumstances within the officer's knowledge…are sufficient

to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Barrera v. City of Mount Pleasant, supra.*, 12 F.4th 617, 620, *quoting Michigan v. DeFillipo*, 443 U.S. 31, 37, 99 S.Ct. 2627 (1979). This is viewed under an objective standard. *Id.*

  "The question is whether the observable circumstances justify an arrest; the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Barrera, supra.*, 12 F.4th at 620, *quoting Devenpeck v. Alford.* 543 U.S. 146, 153, 125 S.Ct. 588 (2004). This is a fluid concept, keeping in mind that probable cause does not establish a "high bar." *Barrera, Id.*, at 620 (*citations omitted*). It is settled law that an officer can reasonably rely on information communicated by another officer or other reasonably reliable information. *U.S. v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012), *citing U.S. v. Hansley*, 469 U.S. 221, 229, 105 S.Ct. 675 (1985); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

  If probable cause existed for at least one of the charges, then the arrest was valid. *Chiaverini v. City of Napoleon, Ohio*, 6th Cir. No. 21-3996, 2023 WL 152477, *4 (Jan. 11, 2023), *citing Howse v. Hodous, supra.*, 953 F.3d 402, 409 (6th Cir. 2020), *en banc consideration denied* 960 F.3d 905, *cert den.*, 141 S.Ct. 1515 (2021). *See also Gumble v. Waterford Twp.*, 171 Fed. Appx. 502, 507 (6th Cir. 2006) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). When an officer "could reasonably (even if erroneously) have believed that the arrest was

10

lawful," based on the information possessed at the time, then he is entitled to qualified immunity for false arrest. *White v. City of Cleveland, supra.*, 2020 WL 760932, *17.

1. **Plaintiff cannot avoid the evidence definitively establishing probable cause based solely on the fact that the evidence was eventually suppressed in the criminal proceeding.**

The fruit of the poisonous tree doctrine does not exclude relevant evidence supporting probable cause in a § 1983 civil case. The Supreme Court made clear that there is a distinct difference between trial rights that may lead to a suppression of evidence for a criminal trial, and those rights that can support § 1983 claims. *Vega v. Tekoh*, --- U.S. ----, 142 S.Ct. 2095, 2101 (2022). One such example of criminal trial rights is the fruit of the poisonous tree doctrine. The fruit of the poisonous tree doctrine is an extension of the exclusionary rule of criminal procedure that "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *U.S. v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010). However, it does not give rise to a § 1983 claim.

The fact that evidence may be suppressed as the result of alleged misconduct, does not make it any less relevant to establishing probable cause for the arrest "because the exclusionary rule does not apply in a civil suit under § 1983 against police officers." *Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019), *citing Lingo v. City of Salem*, 832 F.3d 953, 958-959 (9th Cir. 2016) (Fourth Amendment violation did not change the fact that an odor of marijuana was smelled at the house, giving rise to probable cause for the arrest); *Black v. Wigington*, 811 F.3d 1259, 1267-1268 (11th Cir. 2016) (officers could not be held liable because the application for the warrant listed marijuana, drug paraphernalia, and clothing that was found and provided evidence of the alleged crimes);

11

*Townes v. City of New York*, 176 F.3d 138, 148 (2nd Cir. 1999) (there is no Fourth Amendment value to be served if a plaintiff, who illegally possessed firearms and narcotics, reaped additional financial benefit when he previously reaped the benefit of freedom from the suppressed evidence); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (evidence found after illegal search supported reasonableness of officers' subsequent actions). The Supreme Court refused to extend the exclusionary rule to non-criminal contexts such as civil proceedings. *Townes, supra.*, 176 F.3d at 145, *citing Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364, 118 S.Ct. 2014, 2020 n.4 (1998). Every federal circuit court that decided this issue concluded that the fruit-of-the-poisonous-tree doctrine does not apply to § 1983 cases arising from alleged Fourth Amendment violations. *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 754-755 (10th Cir. 2021) (this is legal question and there is no on-point authority to the contrary).

In two strikingly similar cases to this one, the Seventh Circuit relied upon the reasoning applied by the Third Circuit in approving of the dismissal of § 1983 claims like Plaintiff's. *Martin v. Marinez, supra.*, 934 F.3d at 602, *citing Hector v. Watt,* 235 F.3d 154 (3rd Cir. 2000). In both cases, the plaintiffs successfully litigated a suppression motion for seized drugs, and the prosecutions for both were dismissed. *Martin, Id.*, at 602. Both courts concluded that the analogous common law torts could not provide a basis for the damages requested. *Id.* "If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks." *Hector, supra.*, 235 F.3d 154, 156. "But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime

12

charged in the underlying prosecution." *Id.* The Third Circuit held that it was not "drawing into question whether the exclusionary rule was properly applied in Hector's criminal case." *Id.*, 235 F.3d at 158. "The issue we must resolve is whether Hector can continue to benefit from the exclusionary rule in his § 1983 suit and be relieved of defense costs from a prosecution that was terminated only because of the exclusionary rule." *Id.* Both courts determined that the plaintiffs could not benefit twice in such a fashion from the exclusionary rule. *Id.*

In the instant case, the only relevant question for Plaintiff's false arrest claim is whether the officers had observable circumstances to justify Plaintiff's arrest on at least one charge. Here, law enforcement officers discovered illegal narcotics at Plaintiff's residence pursuant to execution of a search warrant (*Exhibit A*; *Nichols Dec.*, p. 2). They also discovered digital scales with residue and a marijuana grow operation (*Plaintiff's Exhibit 4*). Furthermore, there is no dispute that officers found a loaded Smith & Wesson revolver in Plaintiff's bedroom, as well as several containers of ammunition inside the residence (*Exhibit B*, p. 7-10; *Ellis Dep.*61:1-8; *Yasenchack Dep.* 61:3-13). As it relates to the initial criminal complaint, Plaintiff had a disqualifying felony conviction making possession of a firearm a felony offense (*Exhibit C*; *Exhibit B*, p. 7; *Ellis Dep.* 79:10-22). Therefore, there are no genuine issues of material fact to dispute the existence of probable cause to support Plaintiff's arrest on May 18, 2020.

## 2. An adverse inference is established against Plaintiff in this action pursuant to the Fifth Amendment.

"The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them…" *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551 (1976). To be sure,

although the privilege against self-incrimination only applies to criminal proceedings, a witness may assert the privilege in a civil proceeding. *Cuyahoga Heights Local Sch. Dist. v. Palazzo*, 2016-Ohio-5137, 69 N.E.3d 162, 168, ¶ 22-24 (8th Dist. Ohio App.), *citing McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16 (1924). "The Fifth Amendment right against self-incrimination might be a shield in criminal cases, but in civil cases it can be a sword turned against the person claiming the privilege." *Id.*, at 168-169, *citing State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334, 337, 1998-Ohio-431, 691 N.E.2d 282, 284 (Ohio). "The inference exists because a witness's assertion that the answer to a question might by self-incriminating proves that the witness engaged in some incriminating activity relative to the question." *Id.*

Plaintiff initiated the instant case against Det. Yasenchack. Det. Yasenchack did not file a civil action against Plaintiff. Plaintiff is the one responsible for placing the issue of whether he committed, was committing, or was about to commit an offense before this Court. At his deposition in this civil case, Plaintiff refused to answer whether, on May 18, 2020, he had in his "possession, custody, or control at [his] residence located at East 127th Street in Cleveland, any Percocet pills, a Smith & Wesson .38 caliber revolver, ammunition, drug paraphernalia, carfentanil, heroin, fentanyl, cocaine and tramadol…" (*Ellis Dep.* 60:23-25, 61:1-8). In response, he asserted the "right to the Fifth Amendment." *Id.* Plaintiff continued, "I don't want to answer any more questions about it. I want to invoke my right to the Fifth Amendment." *Id.*, 63:1-3. Therefore, an adverse inference against Plaintiff concerning these questions is appropriate and can be used as evidence of probable cause. Overall, Det. Yasenchack is shielded by qualified immunity

because Plaintiff cannot prove a clearly established violation in Plaintiff's arrest on May 18, 2020.

**B. Plaintiff cannot succeed as a matter of law on his malicious prosecution claim made pursuant to § 1983.**

Probable cause for an arrest and initiated prosecution defeats an essential element of a malicious prosecution claim and is an absolute defense to a federal § 1983 claim. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007). A plaintiff must prove four elements to establish these claims: 1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; 2) that the state lacked probable cause for the prosecution; 3) that the plaintiff suffered a "deprivation of liberty, as understood in our Fourth Amendment jurisprudence," because of the legal proceeding; and 4) that the criminal proceeding was "resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010), *cited by Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017). *See also Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) ("claim that [defendant] failed to attempt to have the criminal proceedings terminated after it became apparent that [plaintiff] was not the perpetrator fails to state a claim upon which relief may be granted."); *Thompson v. Clark*, --- U.S. ---, 142 S.Ct. 1332, 1341 (2022) (Court held that a plaintiff need only show that prosecution ended without a conviction for the fourth element of this claim, but seemed to affirm the requirements that plaintiff must be seized as a result of the alleged malicious prosecution, charged without probable cause, and able to overcome qualified immunity).

The only element of this claim for which Plaintiff can produce evidence is that the federal criminal proceeding was ultimately resolved in his favor. Significantly, Det.

Yasenchack did not make, influence, or participate in the decision to prosecute Plaintiff. Nor did the Government lack probable cause for the prosecution. Plaintiff's malicious prosecution claims relate solely to his detention after the criminal complaint, which was based on an independent evaluation of the evidence and substantial probable cause.

To be liable for "participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Martin v. Bennett*, Case No. 1:19-cv-2394, 2022 WL 875246,*14 (N.D. Ohio March 24, 2022), *quoting Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493-494 (6th Cir. 2020) (conclusory allegation of a misrepresentation, taken alone, cannot establish the decision to prosecute element for malicious prosecution). The mere drafting of an allegedly misleading report, without more active participation, "qualifies only as 'passive or neutral' participation and is thus an insufficient basis for a malicious prosecution." *Martin, Id.* (insufficient evidence where only evidence was prosecutor made the decision whether to charge or continue prosecution and defendant did not have any communications or meetings with the prosecutor). *See also White v. City of Cleveland, supra.*, 2020 WL 760932, *21 (malicious prosecution claim failed because there was no evidence that the alleged actions actually influenced the plaintiff's continued prosecution and detention, and it was "not enough that an officer could reasonably foresee" that alleged misconduct would contribute to an independent decision to continue a prosecution).

In this case, Det. Yasenchack had one short telephone conversation with the prosecutor (*Yasenchack Dep.* 71:14-18). This was after a decision was made to file a federal complaint charging Plaintiff under 18 U.S.C § 922. Det. Kopchak presented the

16

case for the federal prosecutor; Det. Yasenchack did not participate in that proceeding. *Id.*, 58:15-25. Det. Yasenchack did not testify at any hearing. *Id.*, 59:4-10, 71:8-21. Nor did he participate in the actual federal criminal proceeding in any other way. *Id.*, 71:11-13. He had nothing to do with the length of time that Plaintiff was held pursuant to pretrial detention (*Ellis Dep.* 76:15-25).

As discussed above, there were sufficient facts to justify the prosecution of Plaintiff. To the extent that Det. Yasenchack's investigation may not have been absolutely *perfect*, qualified immunity allows for reasonable mistakes. Plaintiff cannot demonstrate any clearly established constitutional violations. Furthermore, Magistrate Judge Ruiz found that based on the applicable statutory factors, the Government's motion was sustained and Plaintiff's pretrial detention was warranted. (*Exhibit E*, p. 2). Det. Yasenchack did not testify at the detention hearing and bore no influence in the judicial officer's decision. In addition, Plaintiff later executed a waiver of his speedy trial rights and made several requests to continue further hearings in the matter, necessarily extending his detention while the case continued to remain open and pending (*Ellis Dep.*72:12-15, 73:5-25, 75:18-23).

For all of these reasons, Plaintiff cannot establish the elements necessary for a claim of malicious prosecution pursuant to § 1983.

### C. Plaintiff's state law claim for malicious prosecution fails as a matter of law.

The existence of probable cause for an arrest defeats a state law false arrest claim. *Wolford v. Sanchez*, 9th Dist. Lorain No. 05CA008674, 2005-Ohio-6992, ¶ 16. Lack of probable cause is an essential element for both a state law malicious prosecution claim and a false arrest claim. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, *syllabus*. All of the aforementioned reasons for the failure of Plaintiff's malicious

prosecution claim pursuant to § 1983 can also be applied to the state law claim. Det. Yasenchack did not present the initial criminal complaint. He did not participate in any of the subsequent federal proceedings to any extent. Although the criminal prosecution ended in a dismissal because of the application of the fruit of the poisonous tree doctrine, there were unquestionably sufficient facts to justify the prosecution of Plaintiff.

Moreover, the immunity statute contained in *R.C. 2744.01, et seq.,* bars Plaintiff's state law claim. The analysis of immunity for a political subdivision's employee is slightly different from that of the subdivision. *Morrison v. Warrensville Heights*, 8th Dist. No. 110234, 2022-Ohio-1489, ¶ 48 (Ohio App.), *citing Johnson v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-938, 171 N.E.3d 422, ¶ 98 (8th Dist. Ohio App.). "In contrast, *R.C. 2744.03(A)(6)* provides that an employee of a political subdivision is immune from liability '[i]n a civil action *** to recover damages for injury, death or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function' unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code."

*Morrison, Id.*, 2022-Ohio-1489, ¶ 49, *quoting Johnson*, ¶ 99. The standard for showing the second exception is high. *Id.*, 2022-Ohio-1489, ¶ 54. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to

18

perversity on the part of the tortfeasor." *Id., quoting Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (Ohio 1971). Otherwise, a risk taken must be substantially greater than that which is necessary to make the conduct negligent. *Id.*

See *Iannuzzi v. Harris*, 7th Dist. Mahoning No. 10-MA-117, 2011-Ohio-3185, ¶ 46 (where plaintiff fails to assert in a complaint that a political subdivision employee "acted with malice, bad faith, or wanton or reckless conduct, she may not now rely on such allegations to defeat" personal immunity, and a trial court errs in failing to grant summary judgment in his favor). *See also Ohio Bell Tel. Co. v. Digioia-Suburban Excavating, LLC*, 8th Dist. Cuyahoga No. 89708, 2008-Ohio-1409, ¶ 38-39.

Plaintiff did not allege in his state law claim that Det. Yasenchack made a false or misleading statement with malice, bad faith, or in a wanton or reckless manner (*Doc. 1, PageID #9*). The statements that Plaintiff allege were false or misleading are demonstratively true and confirmed by other officers. The only statement in Det. Yasenchack's application for a search warrant that can arguably be questioned is that one of Plaintiff's many prior criminal cases was not actually pending on the date it was submitted to the Judge (*Yasenchack Dep.* 41:7-24). Det. Yasenchack did not know of the change in case status at the time. Certainly, an alleged mistake of this kind cannot meet the high standard of culpability required.

Nevertheless, there is no evidence that any alleged misconduct proximately caused any of Plaintiff's alleged harms. He cannot deny that there was probable cause for the Government to proceed with at least one of the federal criminal charges filed against him. Further, a neutral magistrate determined that Plaintiff should be detained until trial (*Exhibit E*). The length of Plaintiff's detention was due to circumstances not controlled or

19

influenced by Det. Yasenchack. The Government filed this case during a global pandemic. Plaintiff waived his speedy trial rights and requested continuances (*Ellis Dep.*72:12-15, 73:5-25, 75:18-23). There is no evidence that Det. Yasenchack undertook any action in a reckless or wanton fashion to cause Plaintiff's continued detention or prosecution. Plaintiff therefore cannot establish an exception to the immunity statute.

## V.    CONCLUSION

For all of the aforementioned reasons, Det. Yasenchack respectfully moves this Honorable Court for an Order granting him summary judgment on all of Plaintiff's claims against him.

Respectfully submitted,

By:     */s/ J.R. Russell*
James R. Russell, Jr. (0075499)
Chief Assistant Directors of Law
Carli R. Young (0095433)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: JRussell2@clevelandohio.gov
*Attorneys for Defendant City of Cleveland*

## **LOCAL RULE CERTIFICATION**

This case is currently assigned to the standard track.  The Memorandum relating to the dispositive motion conforms to the page limitations as set by order from a Judicial Officer in compliance with Local Rule 7.1(f).

*/s/ J.R. Russell*
James R. Russell, Jr. (0075499)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically on the 31st day of August, 2023.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ J.R. Russell.*
James R. Russell, Jr. (0075499)

21