**IN THE UNITED STATES DISTRICT COURT**
**NOTHERN DISTRICT OF OHIO**
**EASTERN DIVSION**

| | | |
|---|---|---|
| WILLIAM ELLIS, | ) | CASE NO. 1:22-cv-815 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY YASENCHACK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

---

**TRIAL BRIEF**

---

Defendant Det. Jeffrey Yasenchack ("Det. Yasenchack"), pursuant to this Court's trial order

issued on November 20, 2025 (*Doc. 43, PageID #650*), hereby submits his Trial Brief in this matter.

### I.      EVIDENCE TO BE PRESENTED

This Honorable Court confirmed that the final trial on Ellis's two claims for malicious

prosecution will commence the week of April 13, 2026, beginning at 9:00 a.m. in Courtroom 19A

(*Doc. 46, PageID #667-668*).

### A. Det. Yasenchack conducts a preliminary investigation in the area surrounding Ellis's residence.

The evidence will show that on or about April 15, 2020, Det. Yasenchack of the Cleveland

Division of Police, Fifth District Vice Unit, stopped a motorcycle on East 127th Street. Det.

Yasenchack agreed not to issue a citation to Victor Payne if he could supply him with any information

or concerns about drug-related activity in the neighborhood. The motorcyclist gave him information

that indicated there was possible drug activity around Ellis's house.

Det. Yasenchack continued his surveillance around 638 East 127th Street. He watched Ellis's

home from his vehicle in May of 2020. He observed a black Ford Explorer SUV associated with Ellis

at that residence. Det. Yasenchack was able to confirm the vehicle belonged to Ellis through a police database. Because Ellis was a sexual offender, he had to register his place of residence on a database.

While watching for activity at the home, Det. Yasenchack observed several vehicles park on the street near the home. Occupants from those vehicles entered and exited Ellis's home quickly. There seemed to be an inordinate number of short-term visitors to that location.

On Tuesday, May 12, 2020, he saw a burgundy Dodge Magnum park on the street in front of Ellis's home. Two males exited the vehicle and knocked on the front door. Ellis opened the door and held the security door open while the two males entered the house. Next, a blue Saturn parked on the street. He saw a female exit the vehicle and walk to the front door of Ellis's home. She entered the house just as another vehicle pulled into Ellis's driveway. The first two males exited the home and drove away in the Dodge Magnum. After a short time inside Ellis's home, the female left Ellis's residence and drove away in her Saturn.

Det. Yasenchack stopped the third vehicle after it left Ellis's home at 638 East 127th Street; Matthew Radovanic and Vanessa Smith occupied that vehicle. Both of these individuals were inside Ellis's residence minutes before. Yasenchack discovered the occupants were in possession of narcotics, which field-tested positive for Fentanyl. He put the fentanyl in a sealed bag and submitted to a laboratory for testing. Later, forensic scientists at the Cuyahoga County Regional Forensic Laboratory, tested the narcotics and presented a report for the investigation, Case No. 2020-002394.

Radovanic admitted to Det. Yasenchak that he obtained the bag of narcotics from Ellis, whom he referred to as "Blaze." Radovanic contacted Ellis by phone several times in the past and obtained heroin from Ellis in the past.

Mr. Radovanic confirmed to Sgt. Sheehan in a recorded phone call that he indeed informed Det. Yasenchack that he obtained the narcotics from Ellis. Mr. Radovanic acknowledged that he subsequently became an informant to avoid prosecution for the drugs he possessed. He also came to

the police station and provided further information to Det. Yasenchack relating to Ellis. Law enforcement officials working for joint task force discovered the same type of drugs in Ellis's home as Det. Yasenchack recovered from Mr. Radovanic. This is confirmed by the report prepared by Brian Marosan Case No. 2020-002565, who also worked at the Cuyahoga County Regional Forensic Laboratory.

### B. The Cuyahoga County Court of Common Pleas issues a search warrant for Ellis's residence.

Det. Yasenchack drafted an affidavit for a search warrant that described the results of his investigation and submitted it to a prosecutor for review the next day on Wednesday, May 13, 2020. He continued surveillance of Ellis's home. He based his request for a search warrant, in part, on his familiarity with "the modus operandi of persons involved in the illegal distribution of controlled substances…" Significantly, Det. Yasenchack witnessed several people coming and going from Ellis's home and recovered illegal narcotics from two such persons immediately after they left Ellis's home.

In addition to the findings of his recent investigation, Det. Yasenchack included a brief summary of Ellis's criminal history in the affidavit for search warrant, which included multiple prior felony and misdemeanor convictions as well as what he described as an open case pending with the Cuyahoga County Court of Common Pleas, *State v. Ellis*, Cuyahoga Case No. CR-20-648922, Failure to Comply With Order, Signal of Police Officer.

On Thursday, May 14, 2020, after reviewing the affidavit presented, Cuyahoga County Common Pleas Judge Brian McCormack found sufficient probable cause for the search of 638 East 127th Street and Ellis's vehicle for drugs and weapons. Det. Yasenchack then conducted further surveillance of his residence to confirm that Ellis continued to reside there until the execution of the search warrant on the following Monday. He discussed the preparations for the execution of the warrant with the task force.

**C.  The Joint Task Force obtains evidence establishing probable cause for Ellis's arrest and detention.**

Officers from Cleveland's Fifth District, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and Cleveland Special Weapons and Tactics Unit ("SWAT") executed the search warrant at 638 East 127th Street, Cleveland, Ohio, on Monday, May 18, 2020. Ellis and Melissa Stalker were both present when law enforcement arrived at the residence. Det. Yasenchack was present, along with several other officers, including K9 Officer Nichols and his partner Hugo, and Captain Kane.

They immediately found a separate room dedicated to a marijuana growing operation. Officer Nichols' canine partner provided alerts in the first-floor kitchen and one of the upstairs bedrooms. They discovered a fentanyl compound in a plastic bag inside Ellis's jacket in this room. This compound was sent to the Cuyahoga County Regional Forensic Laboratory for testing.

In addition, officers found digital scales with residue, magazines containing several live rounds, firearms, and ammunition. There was a loaded Smith & Wesson revolver in his bedroom. There was also a box and bag of .556 ammunition, a box of .762 ammunition, and a box of .9 millimeter ammunition in Ellis's residence. Ellis had prior felony convictions for: 1) Felonious Assault, Felony of the Second Degree, Cuyahoga Case No. CR-07-498821, 2) Gross Sexual Imposition, Felony of the Fourth Degree, Cuyahoga Case No. CR-07-495646, 3) Kidnapping, Felony of the First Degree, Cuyahoga Case No. CR-07-495646, 4) Drug Trafficking, Felony of the Fourth Degree, Cuyahoga Case No. CR-97-349373.

**D.  The United States prosecutes Ellis for two federal offenses.**

AUSA Kevin P. Pierce was the prosecuting attorney in *United States v. Ellis*, 20-cr-0302. On May 18, 2020, AUSA Pierce communicated with members of the task force relating to the warrant. He did not review or approve the warrant before it was executed. He was only aware that the task

force had a warrant before it entered Ellis's home. Because of the recovery of a firearm from Ellis's residence and the presence of drugs, AUSA Pierce authorized a complaint in the United States District Court pursuant to 18 U.S.C. § 922 for possession of a firearm by a convicted felon.

On May 28, 2020, Magistrate Judge Ruiz conducted a preliminary hearing and detention hearing in Ellis's criminal case. Det. Yasenchack did not testify at the hearings. Magistrate Judge Ruiz considered testimony about the narcotics, weapons, and ammunition found at Ellis's residence. Magistrate Judge Ruiz also found that based on the applicable statutory factors, the government's motion was warranted and sustained for Ellis's pretrial detention. The Magistrate Judge bound the case over to the Grand Jury.

AUSA Pierce presented evidence to a grand jury on June 11, 2020, and it issued a true bill for charges against Ellis for possession with intent to distribute and being a felon in possession of a firearm and ammunition under 21 U.S.C. § 841 and 18 U.S.C. § 922 and 924. Det. Yasenchack was not called as a witness before the grand jury. AUSA Pierce will testify that he cannot recall discussing the case with Det. Yasenchack at all. All of these charges arose from what officers directly observed during the search of Ellis's house on May 18, 2020.

Ellis executed a waiver of his speedy trial rights in the case. Ellis's legal counsel filed a Motion to Suppress the evidence discovered from the search of his home. The District Court in the criminal case granted the Motion to Suppress filed by Ellis on July 27, 2021 (*Doc. 65, PageID #653*). The Government could not introduce any evidence of the results of the search of Ellis's home at a trial of the criminal case. The Government filed a Motion to Continue the trial scheduled for August of 2021. The District Court granted that Motion (*Doc. 65, PageID #654*). The Government filed a Motion to Dismiss the case, without prejudice to a future re-filing. The District Court granted the Motion and dismissed the case against Mr. Ellis on August 27, 2021 (*Doc. 68, PageID #659*). Accordingly, Ellis was released from pretrial detention then.

Had Ellis been convicted of the drug count, he would have been a career offender, he could have faced at least ten years in prison under federal guidelines. AUSA sought a period of incarceration of at least three to five years. After his release, Ellis was convicted of a felony for failure to comply and served twelve months in prison. He was convicted of possession of cocaine in 2024 in a completely unrelated case and was incarcerated an additional ten months.

Since December of 2007, Ellis was sentenced to the following:

1) Gross Sexual Imposition, Felony of the Fourth Degree, Cuyahoga County Court of Common Pleas, CR-07-495646 (five years, five years of mandatory post-release control);

2) Kidnapping, With Sexual Motivation Specification, Felony of the First Degree, Cuyahoga County Court of Common Pleas, CR-07-495646 (concurrent five years, concurrent five years of mandatory post-release control);

3) Felonious Assault, Felony of the Third Degree, Cuyahoga County Court of Common Pleas, CR-07-498821 (three years, three years of post-release control, consecutive to Case No. CR-07-495646);

4) Failure to Comply With Order, Signal of Police Officer, Felony of the Fourth Degree, Cuyahoga County Court of Common Pleas, CR-20-648922 (twelve months);

5) Possession of Cocaine, Felony of the Fifth Degree, Lake County Court of Common Pleas, 23-CR-000988 (ten months).

## II.     APPLICABLE LAW

### A. Recent decisions from the Sixth Circuit should result in this Court granting judgment as a matter of law in favor of Det. Yasenchack.

"There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover." *Best v. D.C.*, 291 U.S. 411, 415, 54 S.Ct. 487 (1934). This is proper when the opening statement clearly shows, after resolving all doubts in plaintiff's favor, that it cannot succeed on plaintiff's claim. *Id.*, 415-416.

A defendant may also move for a directed verdict or motion for a judgment as a matter of law following the presentation of plaintiff's case based on qualified immunity. *Martin v. City of Eastlake*,

686 F. Supp. 620, 629 (N.D. Ohio 1988). A defendant may move for a JMOL under *Fed.R.Civ.P. 50(a)* on the basis that the plaintiff failed to prove a constitutional violation or plaintiff failed to prove sufficient facts for a clearly established violation. *Id.*; *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010). If viewing the evidence in the light most favorable to the non-moving party, the court determines that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may resolve the issue against the party, or grant a judgment on a claim "that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *Fed.R.Civ.P. 50(a)(1)(B)*; *Sykes*, 625 F.3d at 305; *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996).

Recent decisions from the Sixth Circuit since the date that this Court first considered Defendant's Motion for Summary Judgment confirm that this Court must grant Det. Yasenchack's motion for a judgment as a matter of law on the federal malicious prosecution claim based on qualified immunity. The Sixth Circuit's recent decisions show that Plaintiff's assertions about a search warrant are not sufficient to overcome qualified immunity to maintain a malicious prosecution charge. *Chancellor v. Geelhood*, 168 F.4th 388, 398 (6th Cir. 2026). The Court mentioned that even if the plaintiff could put forth a triable issue on whether the search warrant lacked probable cause, it could not be a clearly established violation of the plaintiff's constitutional rights in a malicious prosecution claim. *Id.* Just like here, the plaintiff filed "federal and state claims centered on his allegations that [the officer] lied in the search warrant affidavit and failed to disclose that lie during [plaintiff's] prosecution." *Id.*, 168 F.4th at 393.

The Court was clear that it agreed with other circuits that "it goes too far to allow a plaintiff to recover damages for a subsequent arrest or prosecution simply because an illegal search put the wheels in motion; and that is true even when the plaintiff's *own* property was the place illegally searched." *Id.*, at 399. Other courts have held "the fruit of the poisonous tree doctrine does not apply

7

in § 1983 cases***Our circuit agrees." *Id.* (*citing Codrington v. Dolak*, 142 F.4th 884, 895 (6ᵗʰ Cir. 2025). A plaintiff cannot attempt to prove the lack of probable cause to arrest and prosecute by arguing a lack of probable cause to search a home. *Id.*, at 399. The Court cited the two-century tradition of civil damage actions in America showing "that a plaintiff complaining of an illegal search could only recover damages from the search, not from '[t]he factual harms of seizure, evidentiary use, conviction, and sentence')." *Id.*, at 400. In reviewing law enforcement conduct that occurred in 2011 and a prosecution thereafter, the Sixth Circuit stated, "it is certainly not *clearly established* that an officer could be liable in such circumstances." *Id.* at 401.

Likewise, the Court held that merely asserting various damages stemming from the efforts to prosecute is not a viable § 1983 malicious prosecution action without a deprivation of liberty under the Fourth Amendment. *Adams v. Lexington-Fayette Urb. Gov't*, 154 F.4th 501, 511 (6ᵗʰ Cir. 2025). That is what creates the cause of action. The Court wrote, "[r]egarding the first element, the 'initiation' of a criminal proceeding 'generally occurs upon either the actual arrest of a person, the return of an indictment, the issuance of an arrest warrant or a summons to appear and answer criminal charges.'" *Adams*, 154 F.4th 501, 515 (*quoting* William S. Haynes, *Kentuck Jurisprudence* § 14-3(a) (1987)). "To 'continue' a criminal proceeding, an individual must 'take[] an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another' person." *Id.* (*quoting* Restatement (Second) of Torts § 655 (1977)).

Ellis cannot maintain a malicious prosecution action by arguing the only evidence that one should consider is the application for a warrant to search Ellis's residence. He seems to be arguing the merits of an abuse of process claim, disguised as one for malicious prosecution. Ellis did not have a complete cause of action for malicious prosecution at the time of the warrant. If he did, his claims would be barred by the applicable statute of limitation.

Actions brought pursuant to § 1983 are governed by the statute of limitations borrowed from the general personal injury statute in the state in which they are brought. *Davis v. Village of Moreland Hills*, No. 05-cv-2725, 2006 WL 8446799, *2 (N.D. Ohio Jul. 18, 2006). The Sixth Circuit Court of Appeals has consistently applied Ohio's two-year statute of limitations contained in R.C. 2305.10 to § 1983 claims. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Brooks v. City of Cleveland*, 795 F. Supp. 987, 1005 (N.D. Ohio 2025) (claims against employees of a political subdivision are subject to the two-year statute of limitation in *R.C. 2744.04(A)*). *See also Read v. Fairview Park*, 146 Ohio App.3d 15, 19-20, 764 N.E.2d 1079, 1082 (Ohio App. 8th Dist. 2001) (two-year limitation for abuse of process claim is two years from when claim arose). Det. Yasenchack obtained a warrant to search Ellis's home on May 14, 2020. Ellis filed his complaint more than two years later.

### B. The presence of probable cause dooms Ellis's claims.

To succeed on a malicious prosecution claim under the Fourth Amendment, a plaintiff must establish: 1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; 2) that the state lacked probable cause for the prosecution; 3) that the plaintiff suffered a "deprivation of liberty, as understood in our Fourth Amendment jurisprudence," because of the legal proceeding; and 4) that the criminal proceeding was "resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010) (*quoting Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir.2007)). Det. Yasenchak will stipulate that the proceeding was resolved in the Plaintiff's favor.

The Sixth Circuit held numerous times that "the presence of probable cause for a prosecution or pretrial detention dooms any Fourth Amendment claim." *Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021) (plaintiff's claims failed because it was clear he could not establish a constitutional violation lacking probable cause or a clearly established legal rule by case law). *See also Dibrell v.*

9

*City of Knoxville*, 984 F.3d 1156, 1164 (6th Cir. 2021) (exclusionary rule that required suppression of the drugs and money in the criminal case did not erase the fact that the drugs and money found on the plaintiff created the probable cause for his prosecution to defeat the malicious prosecution claim); *Artuso v. Felt*, Case No. 23-3035, 2024 WL 495763, *4 (6th Cir. Feb. 8, 2024) (court does not need to address these complexities when a malicious prosecution claim fails for the fundamental reason that there was probable cause for the pretrial detention).

Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *Golga v. City of North Ridgeville* , Case No. 1:25CV670, 2026 WL 662921, *4 (N.D. Ohio Mar. 9, 2026) (*citing Sykes, supra.*, 625 F.3d 294, 306). The analysis for lack of probable cause under an Ohio Malicious Prosecution claim mirrors that of one under federal law. *Id.*, 2026 WL 662921, *7.

Just like federal malicious prosecution claims, for the state law claim the want of probable cause "is the real gist of the action." *Daly v. Certo*, 2025-Ohio-293, ¶ 127, 263 N.E.3d 939, 979 (Ohio App. 4th Dist.) (*quoting Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (1921)). "The determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which he was charged." *Id.*

The Supreme Court made clear the distinction between trial rights that may lead to suppression of evidence for a criminal trial and those rights that can support § 1983 claims. *Vega v. Tekoh*, 597 U.S. 134, 141, 142 S.Ct. 2095 (2022). The plaintiff in *Vega* sought relief under § 1983 for a *Miranda* violation in an underlying criminal case, claiming that it "constitutes a violation of the Fifth Amendment right against compelled self-incrimination." *Id.* at 142. The Supreme Court unambiguously disclaimed such an interpretation, determining that *Miranda* "imposed a set of

prophylactic rules" whose purpose is "served by the suppression at trial of statements obtained in violation of *Miranda"* as opposed to suing an officer for damages under § 1983. *Id.* at 142, 151. Importantly, *"*a violation of *Miranda* is not itself a violation of the Fifth Amendment, and … we see no justification for expanding *Miranda* to confer a right to sue under § 1983." *Id.* at 152.

The exclusionary rule is not "a personal constitutional right of the party aggrieved." *Lingo v. City of Salem*, 832 F.3d 953, 958 (9th Cir. 2016) (*quoting United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613 (1974)). As such, the "government's use of illegally obtained evidence is [not] itself a constitutional concern," and does not give rise to a § 1983 claim. *Lingo*, at 960.

**C. Ellis cannot establish that Yasenchack made, influenced, or participated in the decision to prosecute any of the crimes.**

To be liable for "participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493-494 (6th Cir. 2020) (conclusory allegation of a misrepresentation, taken alone, cannot establish the decision to prosecute element for malicious prosecution where there was no evidence of furthering prosecution beyond the initial report and trial testimony). *See also Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (court determined the plaintiff could not establish that the official participated in the investigation after the plaintiff's arrest, testified for the prosecution at any stage, or "pressed" for prosecution in any non-neutral way); *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002) (only evidence was that the officer collected evidence and submitted it to the prosecutor's office).

Furthermore, an officer cannot be held accountable for a decision to prosecute simply because he turns over to the prosecution his truthful materials. *Sykes*, *supra*, at 314. A plaintiff would need to establish that the officer's falsehoods or misstatements were both "material, or necessary" to the prosecution and were made "knowingly and deliberately, or with a reckless disregard for the truth." *Id.*, at 305, 312. A recent Sixth Circuit decision in *Jones v. Naert*, 121 F. 4th 558 (6th Cir. 2024) is

11

instructive on this point. In *Jones,* the Court upheld summary judgment on the malicious prosecution claim because the plaintiff failed to present any evidence that the officer, or any alleged false statements provided by the officer, influenced the decision to prosecute her. *Id.* at 569. The reports could not have influenced the prosecutor because he independently assessed pertinent information. *Id.*

### D. Ellis cannot establish the proximate cause necessary for either malicious prosecution claim.

The reasoning from strikingly similar out of circuit cases confirm that Ellis will not be able to establish the elements necessary for his claims. *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019); *Hector v. Watt,* 235 F.3d 154 (3rd Cir. 2000). In both cases, the plaintiffs successfully litigated a suppression motion for seized drugs, and the prosecutions for both were dismissed. *Martin v. Marinez*, *supra*, at 602. Both courts concluded that the analogous common law torts could not provide a basis for the damages requested. *Id.*

The Seventh Circuit discussed the fact that a previous search later deemed unlawful for the criminal prosecution was inconsequential because the officer discovered an illegal handgun and cocaine and "the existence of probable cause for the arrest would also bar recovery on a theory of malicious prosecution." *Martin, supra*, at 598. The Court rejected plaintiff's proximate cause argument and concluded the "existence of probable cause after the initial detention foreclosed any further damages." *Id.* at 599 (*cited by Thomas v. Mayo*, Case No. 21-cv-549, 2024 WL 116424, *4 (W.D. KY Jan. 10, 2024) (no dispute there was probable cause for "subsequent prosecution for the felon in possession charge…" leading to judgment on false arrest and malicious prosecution claims and the fact that evidence "was discovered through an unreasonable search is immaterial…")

The Third Circuit indicated that "[i]f his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks." *Hector, supra*, at 154, 156. "But if his claim is treated as resembling

malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution." *Id.* The Third Circuit held that it was not "drawing into question whether the exclusionary rule was properly applied in Hector's criminal case." *Id.*, 235 F.3d at 158. "The issue we must resolve is whether Hector can continue to benefit from the exclusionary rule in his § 1983 suit and be relieved of defense costs from a prosecution that was terminated only because of the exclusionary rule." *Id.*

In *Newman v. Township of Hamburg*, the issue of an officer's alleged deliberate or reckless falsehoods related to the statements of a third-party witness in order to obtain an arrest warrant. *Id.*, 773 F.3d 769 (6th Cir. 2014). This Court determined that "no reasonable jury could find that [the officer] deliberately or recklessly mischaracterized [a witness] statement in his request for a warrant." *Id.*, at 772. This Court emphasized that a discrepancy that shows a lack of attention to detail does not amount to malicious prosecution. *Id.* This is especially true when "alleged inaccuracy does not change the probable cause calculus anyway." *Id. See also Lester v. Roberts, supra.*, 986 F.3d 599, 609 (6th Cir. 2021) (this Court did not need to analyze whether there should be a presumption of probable cause because there was ample evidence to establish probable cause).

Finally, pursuant to *R.C. 2307.60(B)(2)(b)*, an Ohio tort action is barred if the "person engaged in conduct that, if prosecuted, would constitute a felony…and that conduct was a proximate cause of the injury or loss for which relief is claimed in the tort action, regardless of whether the person has been convicted of or pleaded guilty to or has been charged with committing the felony…" *Id.* The statute specifically does not require individuals to be convicted or even charged with a felony. *Valiato v. Tartabini*, 185 N.E.3d 225, 234 (Ohio Com.Pl. 2021). The statute does not allow for any other circumstances such as plea deals that could reduce a felony to a misdemeanor. *Id.* Plaintiff's Ohio tort claims are barred because he engaged in conduct that constituted a felony and his actions were

13

the proximate cause of his alleged loss. Whether it is demonstrably showing probable cause or an intervening cause that breaks the causal chain, Ellis cannot succeed in this matter.

**E. Ellis's state law claim for malicious prosecution is also barred by statutory immunity.**

"Law enforcement officers are political subdivision employees." *Daly v. Certo*, 2025-Ohio-293, ¶ 110, 263 N.E.3d 939, 975 (Ohio App. 4th Dist.) (*quoting Hoffman v. Gallia Cty. Sheriff's Office*, 2017-Ohio-9192, 103 N.E.3d 1, ¶ 37 (Ohio App. 4th Dist.)). Under *R.C. 2744.03(A)(6)(b)*, political subdivision employees are immune from liability unless their acts or omissions are done 'with malicious purpose, in bad faith, or in a wanton or reckless manner.'" *Id.*

In *Certo*, the court of appeals held that the evidence was insufficient to establish this standard for an exception to immunity. *Id.*, at ¶ 110, 975-976. There, the evidence was the officer was involved with the initial investigation, submitted a police report, was not involved with the decision to prosecute, and did not participate after submitting the information he collected to his supervisors. *Id.* The standards of demonstrating malicious purpose, in bad faith, or in a wanton or reckless manner are high. *Id.*, ¶ 95, 972.

"Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeaser." *Morrison v. Warrensville Heights*, 2022-Ohio-1489, ¶ 54 (Ohio App. 8th Dist.) (*quoting Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35 (1971)). "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Certo, supra.*, 2025-Ohio-293, ¶ 95, 263 N.E.3d 939, 972 (*quoting Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 32, 263 N.E.3d 939, 972). Wanton misconduct is the failure to exercise any care which there is a great probability that harm will result. *Id.*

The Supreme Court of Ohio held "the actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 386, 2008-Ohio-2574, ¶ 74, 889 N.E.2d 505, 517 (*quoting Fabrey, supra.*). This is more than negligence; it is "a perverse disregard of a known risk." *Id.*, ¶ 73, 517. The standard of showing recklessness is high and a plaintiff cannot succeed where the individual's conduct does not demonstrate a disposition of perversity. *Id.*, ¶ 75, 517. Although events are at times tragic, a tragedy does not mean that the burden for showing recklessness is any different than in other cases. *Id.*, ¶ 76. A court "must apply the law without consideration of emotional ramifications and without the benefit of 20-20 hindsight." *Id.*

## III.    EVIDENTIARY ISSUES

### A.  If Ellis asserts the Fifth Amendment, inferences should be taken against him that his response would be incriminating.

"The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them…" *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551 (1976). To be sure, although the privilege against self-incrimination only applies to criminal proceedings, a witness may assert the privilege in a civil proceeding. *Cuyahoga Heights Local Sch. Dist. v. Palazzo*, 2016-Ohio-5137, 69 N.E.3d 162, 168, ¶ 22-24 (8th Dist. Ohio App.) (*citing McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16 (1924)). "The Fifth Amendment right against self-incrimination might be a shield in criminal cases, but in civil cases it can be a sword turned against the person claiming the privilege." *Id.*, at 168-169, *citing State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334, 337, 1998-Ohio-431, 691 N.E.2d 282, 284 (Ohio). "The inference exists because a witness's assertion that the answer to a question might by self-incriminating proves that the witness engaged in some incriminating activity relative to the question." *Id.*

15

**B. Other evidentiary issues were addressed in the Briefing relating to Motions in Limine.**

Defendant addressed the other evidentiary issues in this case through his Motions in Limine and Briefs in Opposition to Plaintiff's Motions in Limine. The significant evidentiary issues are addressed in the following Motions and Briefs:

1) Defendant's Motion in Limine No. 1 (Doc. No. 51): motion to exclude from evidence the opinion and order of Judge Benita Pearson granting Ellis's motion to suppress in *United States v. Ellis*, 20-cr-0302;

2) Defendant's Motion in Limine No. 2 (Doc. No. 52): motion to bifurcate and exclude evidence in the first phase of evidence solely relating to punitive damages;

3) Defendant's Motion in Limine No. 3 (Doc. No. 53): motion to exclude the opinion and order of Judge Deborah Turner granting Ellis's motion to suppress in *State v. Ellis*, Cuyahoga Case No. CR-19-637876;

4) Defendant's Motion in Limine No. 4 (Doc. No. 54): motion to exclude prior acts of Detective Yasenchack or any other Cleveland Division of Police representative testifying in this matter relating to disciplinary matters, complaints, or lawsuits;

5) Defendant's Motion in Limine No. 5 (Doc. No. 55): motion to exclude from evidence and prohibit any reference to Donald Kopchak by name;

6) Defendant's Brief in Opposition to Plaintiff's Motion to Exclude Prior Criminal Convictions;

7) Defendant's Brief in Opposition to Plaintiff's Motion to Exclude Statements of Matthew Radovanic;

8) Defendant's Brief in Opposition to Plaintiff's Motion to exclude introduction of laboratory analysis and related testimony concerning evidence seized pursuant to the execution of the May 14, 2020 search warrant.

Respectfully Submitted,


By:/s/ J.R. Russell
    ELENA N. BOOP (0072907)
    Chief Trial Counsel
    J.R. Russell (0075499)
    Chief Assistant Director of Law
    City of Cleveland, Department of Law
    601 Lakeside Avenue, Room 106
    Cleveland, Ohio 44114
    Tel: (216) 664-3727
       (216) 664-2767
    Email: EBoop@clevelandohio.gov
       Jrussell2@clevelandohio.gov
    *Attorneys for Defendant Jeffrey Yasenchack*


## CERTIFICATE OF SERVICE


The undersigned certifies that the foregoing was filed electronically on the 6th day of April, 2026.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


    /s/ *J.R. Russell*
    ELENA N. BOOP (0072907)
    J.R. Russell (0075499)
    *Attorneys for Defendant Jeffrey Yasenchack*